UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PAUL IACOVACCI,

                              Plaintiff,

          -against-

BREVET HOLDINGS, LLC, *a Delaware Limited Liability Company*, BREVET CAPITAL MANAGEMENT, LLC, *a Delaware Limited Liability Company*, BREVET SHORT DURATION PARTNERS, LLC, *a Delaware Limited Liability Company*, BREVET SHORT DURATION HOLDINGS, LLC, *a Delaware Limited Liability Company*, DOUGLAS MONTICCIOLO, *as a Member and the Majority Owner of Brevet Holdings, LLC, Chief Investment Officer of Brevet Capital Management, LLC, a Member of Brevet Short Duration Partners, LLC, a Member of Brevet Short Duration Holdings, LLC, and Individually*, MARK CALLAHAN, *as President of Brevet Capital Management, LLC, a Member of Brevet Short Duration Partners, LLC, a Member of Brevet Short Duration Holdings, LLC, and Individually*, JOHNNY LAN, *as Vice President and Head of Technology of Brevet Capital Management, LLC and Individually*, and JOHN AND JANE DOES 1 THROUGH 100,

                              Defendants.

---

Civil Case No.:
1:18-cv-08048-JFK

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S 2ND FEDERAL COMPLAINT**

Philip C. Semprevivo

BIEDERMANN HOENIG SEMPREVIVO,
A Professional Corporation

One Grand Central Place
60 East 42nd Street, Suite 660
New York, New York 10165
Tel: (646) 218-7560
Fax: (646) 218-7510
Philip.Semprevivo@lawbhs.com
*Attorneys for Defendants Brevet Holdings,
LLC, Brevet Capital Management, LLC,
Brevet Short Duration Partners, LLC,
Brevet Short Duration Holdings, LLC,
Douglas Monticciolo, and Mark Callahan*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................i-iii

PRELIMINARY STATEMENT ............................................................................. 1

STATEMENT OF FACTS ..................................................................................... 3

      A. The Pending State Court Action............................................................. 3

      B. Plaintiff's 2nd Federal Complaint Considered Alongside
         His State Court Action Amended Complaint........................................ 6

ARGUMENT ......................................................................................................... 9

I.   THIS COURT SHOULD DISMISS PLAINTIFF'S
    2ND FEDERAL ACTION ON ABSTENTION GROUNDS ............................. 9

      A. Standard of Review ............................................................................... 9

      B. The State Court Action and 2nd Federal Action Are Parallel.............. 11

      C. Application of the *Colorado River* Factors Strongly Favors Abstention ............. 13

         1.  The Controversy Involves a *Res* Subject to the State Court's Orders............ 13

         2.  This Court Is Not More Convenient than the State Court ............................. 14

         3.  The Danger of Inconsistent Outcomes from Piecemeal Litigation ................ 14

         4.  The State Court Action Has Advanced Considerably
            Relating to the Computer and Hard Drives.................................................... 17

         5.  The State Court Is Competent to
            Adjudicate Plaintiff's Federal Claims.......................................................... 18

         6.  The State Court's Procedures Are Adequate ................................................. 18

         7.  Plaintiff's 2nd Federal Action Is Vexatious and Reactive............................. 19

II.  SHOULD THE 2ND FEDERAL ACTION NOT BE DISMISSED,
    DEFENDANTS REQUEST THAT IT BE STAYED
    PENDING RESOLUTION OF THE STATE COURT ACTION................... 20

CONCLUSION ...................................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**

*Abe v. N.Y. Univ.,*
  No. 14-cv-9323 (RJS), 2016 WL 1275661 (S.D.N.Y. Mar. 30, 2016) .......... 2, 9, 10, 12, 19, 20

*Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York,*
  762 F.2d 205 (2d Cir. 1985) ........................................................................................ 14

*Bloomquist v. Brady,*
  894 F. Supp. 108 (W.D.N.Y. 1995) ............................................................................. 16

*City of New York v. Milhelm Attea & Bros., Inc.,*
  550 F. Supp. 2d 332 (E.D.N.Y. 2008) ......................................................................... 11

*Colorado River Water Conservation District v. United States,*
  424 U.S. 800 (1976) ............................................................... 9, 10, 11, 13, 14, 17, 18

*De Cisneros v. Younger,*
  871 F.2d 305 (2d Cir. 1989) ........................................................................ 15, 16, 20-21

*Dittmer v. Cnty. of Suffolk,*
  146 F.3d 113 (2d Cir. 1998) ......................................................................................... 9

*Exchange Nat'l Bank of Chicago v. Touche Ross & Co.,*
  544 F.2d 1126 (2d Cir. 1976) ...................................................................................... 11

*First Keystone Consultants Inc. v. Schlesinger Elec. Contractors,*
  862 F. Supp. 2d 170 (E.D.N.Y. 2012) ................................................................ 9, 11, 15

*Garcia v. Tamir,*
  No. 99 Civ. 0298, 1999 WL 587902(LAP) (S.D.N.Y. Aug. 4, 1999) .......................... 2, 10, 14

*Gen. Reins. Corp. v. Ciba-Geigy Corp.,*
  853 F.2d 78 (2d Cir. 1988) .......................................................................................... 16

*Gen. Star Int'l Indem. Ltd. v. Chase Manhattan Bank,*
  No. 01 CIV. 11379 (AGS), 2002 WL 850012 (S.D.N.Y. May 3, 2002) .................... 14, 15

*Kamen v. Am. Tel. & Tel. Co.,*
  791 F.2d 1006 (2d Cir. 1986) ...................................................................................... 11

*Manna v. Greenburgh No. 11 School Dist.,*
  2 F. Supp. 2d 461 (S.D.N.Y. 1998) ............................................................................. 10

*MSCI Inc., v. Jacob,*
  96 A.D.3d 637 (N.Y. App. Div. 1st Dep't 2012) ................................................. 18

*Millennium Drilling Co., Inc. v. Prochaska,*
  No. 14cv1985, 2014 WL 6491531 (S.D.N.Y. Nov. 18, 2014)................................ 17

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
  460 U.S. 1 (1983) ................................................................................................. 10

*Mouchantaf v. Int'l Modeling & Talent Ass'n,*
  942 F. Supp. 2d 284 (S.D.N.Y. 2005) .................................................................... 9

*Mourik Int'l B.V. v. Reactor Svcs. Int'l, Inc.,*
  182 F. Supp. 2d 599 (S.D. Tex. 2002) .................................................................. 13

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp,*
  108 F.3d 17 (2d Cir. 1997)................................................................................... 10

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.,*
  673 F.3d 84 (2d Cir. 2012)............................................................................... 9, 10

*Paul v. Raytex Fabrics, Inc.,*
  318 F. Supp. 2d 197 (S.D.N.Y. 2004) .................................................................... 2

*Radioactive, J.V. v. Manson,*
  153 F. Supp. 2d 463 (S.D.N.Y. 2001) .................................................................. 14

*Rose v. Vill. of Upper Nyack,*
  669 F. Supp. 654 (S.D.N.Y. 1987) ....................................................................... 18

*Shields v. Murdoch,*
  891 F. Supp. 2d 567 (S.D.N.Y. 2012) .................................................................. 10

*Spec Simple, Inc. v. Designer Pages Online LLC,*
  54 N.Y.S.3d 837 (Sup. Ct. 2017) ......................................................................... 18

*Talmor v. Talmor,*
  712 N.Y.S.2d 833 (Sup. Ct. 2000)........................................................................ 18

*Tarka v. Greenfield Stein & Senior LLP,*
  No. 00 Civ. 1262 (SAS), 2000 WL 1121557 (S.D.N.Y. Aug. 8, 2000) ................. 14

*Telesco v. Telesco Fuel & Masons' Materials, Inc.,*
  765 F.2d 356 (2d Cir. 1985)............................................................... 10, 17, 19, 20

*Ulico Cas. Co. v. Cox Mech. Contracting, Inc.,*
   No. 04 Civ. 6185(MHD), 2007 WL 2265563 (S.D.N.Y. Aug. 2, 2007) ...................... 15-16, 21

*United States v. Blake,*
   942 F. Supp. 2d 285 (E.D.N.Y. 2013) ............................................................................... 9, 17

*Woodford v. Cmty. Action Agency of Greene Cnty., Inc.,*
   239 F.3d 517 (2d Cir. 2001) ..................................................................................................... 15

**Statutes**

Fed. R. Civ. P. 12(b)(1) ............................................................................................................. 1, 11

Defendants Brevet Holdings, LLC ("BH"), Brevet Capital Management, LLC ("BCM"), Brevet Short Duration Partners, LLC ("Partners"), Brevet Short Duration Holdings, LLC ("Holdings"), Douglas Monticciolo, and Mark Callahan (collectively, the "Defendants"), by and through their attorneys Biedermann Hoenig Semprevivo, a Professional Corporation, respectfully submit this memorandum of law, together with the declaration of Philip C. Semprevivo, and the exhibits annexed thereto, pursuant to Fed. R. Civ. P. 12(b)(1), in support of Defendants' motion to dismiss the Complaint of plaintiff Paul Iacovacci ("Plaintiff" or "Iacovacci") filed under Case No. 18-cv-08048 (the "2nd Federal Action"), on abstention grounds in favor of a parallel action that has been proceeding for the past two years in the New York State Supreme Court, County of New York (the "State Court"), under Index Number 158735/2016 (the "State Court Action"). In the alternative, should this Honorable Court determine to exercise jurisdiction over Plaintiff's claims, Defendants request that this 2nd Federal Action be stayed pending the resolution of the State Court Action.

## PRELIMINARY STATEMENT

Curiously, Plaintiff's 2nd Federal Action was filed, by separate counsel, on September 4, 2018, (Ex. A), *one business day* after Plaintiff filed his complaint in Case No. 18-cv-07984 on August 31, 2018 (the "1st Federal Action"), (Ex. B), which is also pending before this Court. The 1st Federal Action and 2nd Federal Action arise from the very same set of factual allegations which underlie the pending State Court Action:[1] specifically, those facts pertaining to the Defendants' termination of Plaintiff's employment for cause, a determination which was based upon, inter alia,

---

[1]    As set forth in Defendants' Motion to Dismiss in the 1st Federal Action, the 1st Federal Action and the State Court Action are undoubtedly parallel. Plaintiff unconvincingly tries to distinguish the 1st Federal Action from the State Court Action by naming as defendants individual principals and a former employee of the State Court Defendants, rather than any of the State Court Defendants themselves.

1

Defendants' finding that thousands of confidential and proprietary documents had been stolen by Plaintiff, and then stored by him on a Computer that had been purchased and configured by Brevet to enable Plaintiff to work on occasion from home (the "Brevet Computer").  Upon this realization, it became evident to the Defendants that Plaintiff was conspiring to utilize its confidential proprietary documents to facilitate efforts to set up a competing business. Plaintiff was then terminated, and Defendants sent representatives to Plaintiff's home with a confirming communication and instructions to collect the Brevet Computer. Plaintiff advised Defendants' representatives that he would return the Brevet Computer on a later date. The Brevet Computer has since been delivered to a neutral third party, and the State Court maintains jurisdiction of the property and has issued orders regarding the retrieval of information contained on it, as well as its accompanying external hard drives (the "Hard Drives").

Plaintiff attempts to distinguish his 2nd Federal Action by limiting the causes of action therein to allegations of computer "hacking" that, although separately pled, are omitted as specific causes of action in the 1st Federal Action and State Court Action. By bringing the hacking claims in a separate 2nd Federal Action, rather than in a *single* federal action, Plaintiff attempts immunize himself from the result of dismissal reached in cases decided by this Court such as *Abe v. New York University*, No. 14-cv-9323 (RJS), 2016 WL 1275661 (S.D.N.Y. Mar. 30, 2016), *Paul v. Raytex Fabrics, Inc.*, 318 F. Supp. 2d 197 (S.D.N.Y. 2004), and *Garcia v. Tamir*, No. 99 Civ. 0298, 1999 WL 587902(LAP) (S.D.N.Y. Aug. 4, 1999). Those cases instruct that tacking on a 'federal claim' to a federal action that is otherwise parallel to a pending state court action will not save that federal action from dismissal under the abstention doctrine.  In having separate counsel file the 2nd Federal Action, Plaintiff is obviously attempting to perform an end-run around the abstention doctrine by feigning a stand-alone action in this matter. Although perhaps creative on

2

the part of the Plaintiff, the overall objectionable circumstances present in *Abe* still exist here, and this second filing should not be permitted.

Moreover, each cause of action put forth in Plaintiff's 2nd Federal Action stems from the Brevet Computer—the very same computer that is referenced extensively in the State Court Amended Complaint, (Ex. E), and which has been the centerpiece of significant motion practice in the State Court Action. Indeed, by way of so-ordered stipulations of November 29, 2017, (Ex. I), and November 5, 2018,[2] Plaintiff submitted to the State Court's jurisdiction over the Brevet Computer, the *res* on which this action is also predicated. Furthermore, it cannot be overlooked that all of the claims raised in the 2nd Federal Action could easily be adjudicated in the State Court Action.

## STATEMENT OF FACTS

### A.   The Pending State Court Action

The pending State Court Action was commenced by Plaintiff in the New York State Supreme Court, County of New York, on October 17, 2016, three (3) days after he was terminated for cause by Brevet. The Defendants/Counterclaim Plaintiffs are: Brevet Holdings, LLC ("BH"), Brevet Short Duration Partners, LLC ("Partners"), Brevet Short Duration Holdings, LLC ("Holdings"), and counterclaim Plaintiffs Brevet Capital Partners, LLC ("BCP") and Brevet Capital Holdings, LLC ("BCH") (collectively, the "State Court Defendants"). The term "Brevet" as used hereinafter will refer to BH and all BH-affiliated entities, collectively. The State Court Complaint, which was recently amended, seeks to recover certain retirement payouts that Plaintiff

---

[2]    On November 5, 2018, Justice Cohen made several significant oral rulings on the record. Our office is in the process of obtaining the transcript from November 5, 2018 hearing, and we intend to submit a copy of that transcript with the reply papers for the herein Motion

claims he would have been entitled to, had he not been terminated for cause.[3] Since its inception, the pending State Court Action has been very actively litigated:

- Defendants have already responded to three (3) sets of Interrogatory Demands and Requests for Production, and Plaintiff has responded to three (3) sets of Interrogatory Demands and four (4) sets of Requests for Production.

- Six (6) non-party depositions have been conducted, and additional non-party depositions have been noticed (topics concerning computer equipment provide to employees were covered during two (2) of these depositions);

- Numerous non-party subpoenas have been served and responded to, evidencing Plaintiff's misuse of the Brevet Computer;

- Twelve (12) motions have been filed, which have been briefed and argued before Hon. David B. Cohen, J.S.C., who has already issued orders resolving ten (10) of the (12) motions, (Ex. H), and is actively monitoring the parties' compliance with his orders.

- Numerous discovery conference and hearings have been held, (Ex. G); and

- Most notably, the State Court is proceeding with discovery and a forensic analysis of the Brevet Computer.

Central to both the State Court Action and this action is the Brevet Computer that Brevet purchased and configured to enable Plaintiff to work on occasion from home, and certain external

---

[3]      Brevet asserts counterclaims against Plaintiff for breach of contract, breach of covenant not to compete, breach of covenant of confidentiality, breach of fiduciary duties, breach of duty of loyalty, unfair competition, tortious interference with business relations, tortious interference with prospective business relationships, misappropriation of trade secrets, conversion, and unjust enrichment. These counterclaims arise from, amongst other things, Plaintiff's theft of Brevet's confidential and proprietary documents, his self-dealing, and diversion of business away from Brevet.

hard drives that Plaintiff plugged into the Brevet Computer to store files (the "Hard Drives"). Documentary evidence already disclosed demonstrates that Plaintiff stole thousands of Brevet's confidential and proprietary business documents and stored them on the Brevet Computer and Hard Drives. In November 2017, the State Court Defendants successfully moved the State Court for an order directing that the Brevet Computer and Hard Drives be turned over to a neutral computer expert to perform and distribute forensic copies of these devices to the parties (Mot. Seq. No. 001). (Ex. I).

Plaintiff's diversion tactics with respect to finalizing a protocol led the State Court Defendants, on August 23, 2018, to file a motion by Order to Show Cause to enforce the State Court's prior orders concerning the protocol (Mot. Seq. No. 009). At the hearing of this motion on November 5, 2018, Plaintiff consented to a version of a protocol that will proceed in the coming weeks, and a so-ordered stipulation to this effect was entered on the record. The State Court has further scheduled a "control date" hearing for December 18, 2018, to monitor the parties' progress on performing the Brevet Computer protocol.

On November 5, 2018, the Court granted Brevet further relief to the extent that Plaintiff was ordered to turn over all copies, in any format, of the Brevet proprietary and confidential documents he had stored on the Brevet Computer to his attorney. The State Court has also restricted Plaintiff from accessing any of these documents or information, except as may be needed to prepare with his counsel for the purposes of the State Court Action. In addition, Plaintiff has been ordered to forward to his counsel all instances of these documents existing as attachments in his personal email accounts, and to delete all such instances from his personal email accounts.

On August 24, 2018, one week prior to filing this 2nd Federal Action, Plaintiff filed a motion for leave to amend his complaint in the State Court Action (Mot. Seq. No. 010), attaching

his proposed Amended Complaint as an exhibit thereto. (Exs. D and E). State Court Defendants did not oppose that motion, and at the State Court hearing on November 5, 2018, the proposed Amended Complaint was deemed filed and served, and is now the operative pleading in the State Court Action. The Amended Complaint withdraws certain moot claims, adds causes of action for fraud and an accounting, adds as defendants Brevet Capital Partners, LLC and Brevet Capital Holdings, LLC, and most notably, restates some of the very same factual allegations recited in this matter.

Plaintiff could have added the claims raised in this 2nd Federal Action to his State Court Amended Complaint, but consciously chose not to.

**B.    Plaintiff's 2nd Federal Complaint Considered Alongside His State Court Action Amended Complaint**

Defendants summarize below the factual allegations contained in Plaintiff's 2nd Federal Complaint. For the Court's ease of reference, citations to parallel allegations in Plaintiff's State Court Amended Complaint accompany each statement.

Plaintiff alleges that he utilized a Dell desktop computer in his home, purchased by Brevet, for personal and work-related purposes (the "Brevet Computer"). (Ex. A ¶¶ 23, 27); *see also* (Ex. E ¶ 9). Plaintiff alleges that he attached two external hard drives (the "Hard Drives") to the Computer and stored most of his files on the Hard Drives. (Ex. A ¶¶ 25, 26); *see also* (Ex. E ¶ 9). Plaintiff alleges that on certain occasions and at his request, "[Defendant] Lan logged into the Computer through [Plaintiff's] LogMeIn account to assist [Plaintiff] with technical issues." (Ex. A ¶ 34); *see also* (Ex. E ¶¶ 62-63).

Plaintiff alleges that on December 18, 2015, he "underwent a substantial reconstructive surgery known as an osteotomy on his right leg. During and after the procedure, [Plaintiff] developed complications requiring further extensive treatment and hospitalization." (Ex. A ¶ 44);

6

(Ex. E ¶ 42) (verbatim). Plaintiff alleges that on January 6, 2016, while recuperating from the leg surgery, he met in-person with Defendants Monticciolo and Callahan, wherein he informed them that he intended to retire from Brevet. (Ex. A ¶ 45); *see also* (Ex. E ¶ 44). Plaintiff alleges that he confirmed his intention to retire in writing on or about January 12, 2016. (Ex. A ¶ 46); *see also* (Ex. E ¶ 45).

Plaintiff alleges that after he announced his retirement from Brevet, Defendants started a secret "campaign" to circumvent paying Plaintiff what he was contractually owed. (Ex. A ¶¶ 1-2); *see also* (Ex. E ¶¶ 5, 56). As part of this scheme, Plaintiff alleges that Defendants, without Plaintiff's knowledge or authority, hacked into his LogMeIn account to gain access to his Computer and Hard Drives. (Ex. A ¶¶ 2, 30-32, 34-36); *see also* (Ex. E ¶¶ 9, 11, 16, 59, 61, 62, 64-67, 74-76, 95, 108-113).

Plaintiff alleges that by accessing Plaintiff's Computer, Defendants were able to and did review his personal Yahoo! e-mail account and the contents therein. (Ex. A ¶¶ 1-2, 33-34, 58, 61-63, 83-89); *see also* (Ex. E ¶¶ 11, 16, 59, 61, 65, 66, 74, 95, 109-113). Plaintiff alleges that Defendants unlawfully extracted large amounts of data, including personal and privileged communications, after accessing Plaintiff's Computer and Hard Drives. (Ex. A ¶¶ 1, 2, 4, 63); *see also* (Ex. E ¶¶ 66, 76). Plaintiff alleges that on April 19, 2016, Defendants installed file deletion software on Plaintiff's home computer resulting in the deletion of Plaintiff's files. (Ex. A ¶ 67); *see also* (Ex. E ¶ 67). Plaintiff alleges that on April 23, 2016, additional files, including personal files, were deleted from one of Plaintiff's external hard drives. (Ex. A ¶ 67); *see also* (Ex. E ¶ 67).

Plaintiff alleges that these hackings occurred on approximately "two dozen occasions" after he announced his intention to retire from Brevet. (Ex. A ¶ 2); *see also* (Ex. E ¶ 12). Plaintiff alleges that Defendants engaged in these hackings to use the stolen information against Plaintiff in the

negotiations over his retirement and subsequent, related litigation. (Ex. A ¶¶ 4, 57); *see also* (Ex. E ¶ 6, 8, 9, 12, 46, 58, 59, 76, 95, 111-113).

Plaintiff alleges that on October 17, 2016, the same day he filed the State Court Action, Defendants gained access to Plaintiff's LogMeIn account with Plaintiff's knowledge or authorization. (Ex. A ¶ 53); *see also* (Ex. E ¶ 74). Plaintiff alleges that Defendants used Plaintiff's LogMeIn account to then gain access to Plaintiff's Computer and installed software called "FileZilla." (Ex. A ¶ 55); *see also* (Ex. E ¶ 75). Plaintiff describes FileZilla as "a program that, once installed, allows large quantities of files to be quickly and secretly transferred from one computer to another." (Ex. A ¶ 55); (Ex. E ¶ 75) (verbatim). Plaintiff alleges that an "unknown number" of files were taken from his home computer using this software. (Ex. A ¶ 56); *see also* (Ex. E ¶ 75). Plaintiff alleges Defendants stole this information to benefit them in Plaintiff's retirement agreement negotiations and in their defense of the State Court Action. (Ex. A ¶ 57); *see also* (Ex. E ¶ 76).

Plaintiff alleges that a forensic investigation that he undertook revealed that between January 2016 and October 2016, IP addresses associated with Defendant Brevet Capital Management, LLC accessed the Computer "on about thirty separate occasions." (Ex. A ¶¶ 65-69); *see also* (Ex. E ¶¶ 61, 67).

As demonstrated by the comparison of these two pleadings, while the 2nd Federal Complaint deals with the issue of alleged hacking in the Computer and Hard Drives, those same allegations are raised in the State Court Amended Complaint, where Plaintiff conveniently omits certain legal allegations. Instead, Plaintiff includes those claims in the instant suit.

# ARGUMENT

## I.   THIS COURT SHOULD DISMISS PLAINTIFF'S 2ND FEDERAL ACTION ON ABSTENTION GROUNDS

### A.   Standard of Review

"[A] federal court 'may abstain from exercising jurisdiction when parallel state-court litigation could result in 'comprehensive disposition of litigation' and abstention would conserve judicial resources.'" *Abe v. N.Y. Univ.*, No. 14-cv-9323 (RJS), 2016 WL 1275661, at \*5 (S.D.N.Y. Mar. 30, 2016) (quoting N*iagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (quoting *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817-18 (1976))); *see also Mouchantaf v. Int'l Modeling & Talent Ass'n*, 368 F. Supp. 2d 303, 305-06 (S.D.N.Y. 2005) (*Colorado River* doctrine is grounded in "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation" (quoting *Colorado River*, 424 U.S. at 817) (internal quotation marks omitted)).

"[I]n determining whether to apply *Colorado River* abstention, the Court must first make the threshold determination as to whether the federal and state cases are parallel." *United States v. Blake*, 942 F. Supp. 2d 284, 297 (E.D.N.Y. 2013) (citing *Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998) ("a finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under *Colorado River*"). Lawsuits are parallel if "substantially the same parties are contemporaneously litigating substantially the same issue in both forums. Complete identity of parties and claims is not required; the parallel litigation requirement is satisfied when the main issue in the case is the subject of already pending litigation." *First Keystone Consultants Inc. v. Schlesinger Elec. Contractors*, 862 F. Supp. 2d 170, 182 (E.D.N.Y. 2012) (citations and

quotation marks omitted). "[T]he close identity of issues and parties is the dispositive factor." *Manna v. Greenburgh No. 11 School Dist.*, 2 F. Supp. 2d 461, 468 (S.D.N.Y. 1998).

"Federal and state proceedings are 'parallel' for abstention purposes 'when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same.'" *Abe*, 2016 WL 1275661, at *6 (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997)). "Perfect symmetry of parties and issues is not required. Rather, parallelism is achieved where there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Abe*, 2016 WL 1275661, at *6 (quoting *Shields v. Murdoch*, 891 F. Supp. 2d 567, 577 (S.D.N.Y. 2012)) (internal quotation marks omitted).

Upon meeting the threshold determination that the federal and state court cases are parallel, courts deciding whether to abstain consider the following factors, pursuant to *Colorado River*:

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*Abe*, 2016 WL 1275661, at *6 (quoting *Niagara Mohawk*, 673 F.3d at 100-01).

An additional factor that courts consider is "the vexatious or reactive nature of . . . the federal . . . litigation." *Abe*, 2016 WL 1275661, at *6 (quoting T*elesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356, 363 (2d Cir. 1985) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 17 n.20 (1983))); *see also Garcia v. Tamir*, No. 99 Civ. 0298, 1999 WL 587902, at *8 (S.D.N.Y. Aug. 4, 1999).

"A motion to dismiss based on the abstention doctrine is also considered a motion made pursuant to [Fed. R. Civ. P.] 12(b)(1)." *City of New York v. Milhelm Attea & Bros., Inc.*, 550 F. Supp. 2d 332, 341-42 (E.D.N.Y. 2008). "[W]hen, as here, subject matter jurisdiction is challenged under Rule 12(b)(1), evidentiary matter may be presented by affidavit or otherwise." *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986) (citing *Exchange Nat'l Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1130-31 (2d Cir. 1976)).

Here, the Court should abstain from exercising its jurisdiction, because the pending State Court Action and the 2nd Federal Action are clearly parallel, and an analysis of the *Colorado River* factors weighs overwhelmingly in favor of dismissal.

## B.   The State Court Action and the 2nd Federal Action Are Parallel

The 2nd Federal Action is parallel to the pending State Court Action because "substantially the same parties are contemporaneously litigating substantially the same issue in both forums." *First Keystone*, 862 F. Supp. 2d at 182. This is particularly true if the 2nd Federal Action is considered in conjunction with the 1st Federal Action. However, even if the 2nd Federal Action is compared on its own against the State Court Action, the State Court Amended Complaint is replete with allegations that the State Court Defendants hacked into Plaintiff's Computer and Hard Drives and personal email accounts, and claims that depend upon Plaintiff proving the truth of those allegations. *See* (Ex. E ¶¶ 9, 11, 16, 59-67, 74-76, 95, 108-113). This Court and the State Court are thus both being asked to determine the same issues: whether Defendants unlawfully accessed and utilized Plaintiff's Computer, Hard Drives and Yahoo! email account.

There is also a substantial overlap in the parties to the 2nd Federal Action and State Court Action:

11

| Defendant | State Court | 1st Federal | 2nd Federal |
|---|---|---|---|
| Brevet Holdings, LLC | Yes | - | Yes |
| Brevet Capital Management, LLC | - | - | Yes |
| Brevet Short Duration Partners, LLC | Yes | - | Yes |
| Brevet Short Duration Holdings, LLC | Yes | - | Yes |
| Brevet Capital Partners, LLC | Yes | - | - |
| Brevet Capital Holdings, LLC | Yes | - | - |
| Douglas Monticciolo | - | Yes | Yes |
| Mark Callahan | - | Yes | Yes |
| Johnny Lan | - | Yes | Yes |

As seen in the above table, the two actions share in common the defendants Brevet Holdings, LLC, Brevet Short Duration Partners, LLC, and Brevet Short Duration Holdings, LLC. The 2nd Federal Action also names four (4) additional defendants that are not named in the State Court Action: Brevet Capital Management, LLC ("BCM"), Douglas Monticciolo, Mark Callahan, and Johnny Lan. Seemingly aware of the abstention doctrine and its pitfalls, Plaintiff attempts to avoid having an exact identity of parties, but "perfect symmetry of parties . . . is not required." *Abe*, 2016 WL 1275661, at *6.

BCM is prominently identified under the "Parties" section of the State Court Complaint. (Ex. E ¶ 28). Plaintiff also pleads that Brevet Holdings, LLC ("BH") is the sole member and 100% owner of BCM. (Ex. A ¶ 14). The individual defendants Mr. Monticciolo, Mr. Callahan, and Mr. Lan are all either officers or employees of Brevet, and while they are not named as defendants in the State Court Action, their names and alleged actions feature prominently in Plaintiff's State Court pleadings, (Ex. E ¶¶ 38-41, 48, 53-54, 58.k., 62-63, 69), and are the individuals through which Brevet is alleged to have acted in the State Court Action.

Because of the identity in parties and issues discussed above, the State Court Action and the 2nd Federal Action are parallel.

12

C.      **Application of the *Colorado River* Factors Strongly Favors Abstention**

      1.      **The Controversy Involves a *Res* Subject to the State Court's Orders**

As to the first *Colorado River* factor, there is a *res*, or property, subject to the State Court's Orders, which is central to discovery in the State Court Action, and which will be equally important in the 2nd Federal Action if it proceeds. Namely, the Brevet Computer and Hard Drives on which Plaintiff stored thousands of stolen confidential and proprietary documents of Brevet, and which Plaintiff claims Defendants unlawfully hacked into, deleted and stole information from. The Brevet Computer and Hard Drives has been the subject of various motions in the State Court Action and on November 29, 2017 and November 5, 2018, by way of so-ordered stipulations, Plaintiff submitted to the State Court retaining jurisdiction over this *res*.

In particular, on November 5, 2018, the State Court granted Brevet further relief to the extent that Plaintiff was ordered to turn over all copies, in any format, of the Brevet proprietary and confidential information he had stored on the Brevet Computer to his attorney, and further ordered that the protocol for the Brevet Computer and Hard Drives proceed so that the non-privileged data could be copied and distributed to the parties.

If this 2nd Federal Action is allowed to proceed, the Brevet Computer and Hard Drives would be indispensable to Plaintiff's claims therein. However, the State Court has undoubtedly assumed jurisdiction over this *res*—the Brevet Computer and Hard Drives—which is at the heart of the State Court Action. This factor overwhelmingly favors abstention. *See, e.g.*, *Mourik Int'l B.V. v. Reactor Svcs. Int'l, Inc.*, 182 F. Supp. 2d 599, 604 (S.D. Tex. 2002) ("Because Mourik's suit involves jurisdiction over res or property, there exists a substantial danger of inconsistent rulings affecting property ownership. This factor therefore weighs heavily against the administration of concurrent federal proceedings.").

### 2.     This Court Is Not More Convenient than the State Court

As to the second *Colorado River* factor, it certainly cannot be said that any convenience would be gained by the parties as a result of litigating this matter in this Court rather than the State Court. The two courthouses are both located in New York City and are located almost literally next door to one another.

### 3.     The Danger of Inconsistent Outcomes from Piecemeal Litigation

As to the third *Colorado River* factor, the danger of piecemeal litigation is the most important and often dispositive consideration in the abstention analysis. *See Colorado River*, 424 U.S. at 819, *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 211 (2d Cir. 1985); *Gen. Star Int'l Indem. Ltd. v. Chase Manhattan Bank*, No. 01 CIV. 11379 (AGS), 2002 WL 850012, at *7 (S.D.N.Y. May 3, 2002) (possibility of inconsistent results in two identical or virtually identical cases pose significant legal dilemmas); *Garcia*, 1999 WL 587902, at *5; *accord Radioactive, J.V. v. Manson*, 153 F. Supp. 2d 463, 474 (S.D.N.Y. 2001) (abstaining from jurisdiction and dismissing claims); *Tarka v. Greenfield Stein & Senior LLP*, No. 00 Civ. 1262 (SAS), 2000 WL 1121557, at *17 (S.D.N.Y. Aug. 8, 2000) (abstaining from exercising jurisdiction and dismissing claims).

"The primary concern when piecemeal litigation is involved is that parallel proceedings will lead to inconsistent and mutually contradictory determinations." *Garcia*, 1999 WL 587902, at *5 (citation and quotation marks omitted). Among other things, "questions of issue preclusion will be likely to arise among the parties that are involved in both actions," such that "additional litigation related to the preclusion issue itself" will result. *Id.*

Here, both this Court and the State Court are being asked to determine the same issues: whether Defendants unlawfully accessed and utilized Plaintiff's Computer, Hard Drives and

Yahoo! email account. *Compare* (Ex. A, *passim*), *with* (Ex. E ¶¶ 9, 11, 16, 59-67, 74-76, 95, 108-113). Certainly this piecemeal tactic by Plaintiff invites the potential of inconsistent results here.

Furthermore, the Second Circuit has explained that the risk of piecemeal adjudication is especially great where, as here, a party in one lawsuit is absent from the other. *De Cisneros v. Younger*, 871 F.2d 305, 308 (2d Cir. 1989); *First Keystone Consultants*, 862 F. Supp. 2d at 189 (quoting *Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 524 (2d Cir. 2001)). Here, again, as seen in the table below, Plaintiff's three (3) actions consist of a confusing and inconsistent patchwork of defendants:

| Defendant | State Court | 1st Federal | 2nd Federal |
|---|---|---|---|
| Brevet Holdings, LLC | Yes | - | Yes |
| Brevet Capital Management, LLC | - | - | Yes |
| Brevet Short Duration Partners, LLC | Yes | - | Yes |
| Brevet Short Duration Holdings, LLC | Yes | - | Yes |
| Brevet Capital Partners, LLC | Yes | - | - |
| Brevet Capital Holdings, LLC | Yes | - | - |
| Douglas Monticciolo | - | Yes | Yes |
| Mark Callahan | - | Yes | Yes |
| Johnny Lan | - | Yes | Yes |

Thus, any decision by this Court would have preclusive effect in the State Court Action as to some, but not all, of the defendants in the State Court Action, and vice versa. Accordingly, this is a prime example of where the danger of piecemeal litigation warrants abstention. *See Gen. Star Int'l Indem. Ltd.*, 2002 WL 850012, at *7 (quoting *Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 524 (2d Cir. 2001)) (staying the federal action in favor of the state court action and nothing that "[o]f central important in this Court's determination is the fact that the instant federal actions include only [certain defendants]" whereas the state court action included those same defendants but additional other defendants); *Ulico Cas. Co. v. Cox Mech. Contracting, Inc.*, No.

04 Civ. 6185(MHD), 2007 WL 2265563, at *6 (S.D.N.Y. Aug. 2, 2007) ("Comparison of the claims and parties in the state and federal actions indicates the risk of piecemeal litigation in this case: there are additional claims and an additional party in the state action that are absent from the federal proceedings . . . The state proceedings are more comprehensive than the federal proceedings and . . . even if this case is stayed, plaintiff will have a full opportunity to litigate liability and damages, and the state judgment could be given preclusive effect in the federal action.").

Finally, the dismissal of the 2nd Federal Action in favor of the more comprehensive State Court Action would serve the interests of judicial economy. Indeed, there is no genuine rationale to run parallel cases here.  Simply stated, it is a waste of judicial resources. *See, e.g., De Cisneros*, 871 F.2d at 308 ("reasons of wise judicial administration favor abstention in this case in order to avoid duplicative and simultaneous litigation"); *Bloomquist v. Brady*, 894 F. Supp. 108, 118 (W.D.N.Y. 1995) (citing "judicial economy [and] fairness to the litigants" in support of its decision to dismiss plaintiff's federal claim where there was a previously filed state claim involving the same parties and the same underlying facts).

Here, the similarity of the parties and the clear encompassing nature of the State Court Action over the issues in the 2nd Federal Action overwhelmingly demonstrate the impracticability and legal dilemmas if this action were to proceed. The danger of piecemeal litigation in the instant matter, therefore, weighs heavily in favor of this Court abstaining from exercising jurisdiction. *See Gen. Reins. Corp. v. Ciba-Geigy Corp.*, 853 F.2d 78, 81 (2d Cir. 1988) (rejecting plaintiffs' contention that the two actions raise different issues and finding that the "issues are inextricably linked" and stating that because the state court action "embraces all of these issues, the risk of piecemeal litigation is real and should be avoided").

16

### 4.    The State Court Action Has Advanced Considerably Relating to the Computer and Hard Drives

As to the fourth *Colorado River* factor, the chronological order in which the actions were filed strongly favors abstention because Plaintiff filed the State Court Action nearly two (2) years prior to the 2nd Federal Action. And, perhaps even more importantly, since that time, hundreds of thousands of pages of documents have been exchanged in discovery; six (6) non-party witnesses have been deposed; and twelve (12) motions have been filed. By contrast, the 2nd Federal Action has not advanced beyond the pleadings stage. *See, e.g., Millennium Drilling Co., Inc. v. Prochaska*, No. 14cv1985, 2014 WL 6491531, at *5 (S.D.N.Y. Nov. 18, 2014) (abstaining where thousands of pages "have exchanged hands and several depositions have taken place, with more scheduled over the next two months" in the state court action, whereas the federal action "has not progressed beyond the pleading stage"); *see also Telesco*, 765 F.2d at 363 (abstaining in part because the state court had "jurisdiction over the matters in this case far longer than the federal court" and because extensive proceedings had already taken place in the state actions); *Blake*, 942 F. Supp. 2d at 299 (abstaining from exercising jurisdiction under *Colorado River* because, inter alia, the state court action was commenced more than two years before the federal action and, as a result, "the parties have already exchanged written discovery and have conducted depositions").

Moreover, the progress the State Court has achieved as it relates to the preservation and investigation of the Computer and Hard Drives strongly tips the balance in favor of abstention. Plaintiff unreasonably withheld his consent to a State Court ordered protocol for the forensic investigation of the Computer and Hard Drives for an entire year, requiring the State Court Defendants to file an Order to Show Cause to enforce the State Court's orders. Finally, at the November 5, 2018 hearing on that application, Plaintiff consented to a version of the protocol that will proceed in the coming weeks and that the State Court will be monitoring for progress. The

17

foregoing demonstrates not only the importance of the Computer and Hard Drives to the State Court Action, but also the substantial progress made in investigating the claims relating to it. When compared to the progress made in the 2nd Federal Action, which claims solely relate to the Computer and Hard Drives and is merely at the pleadings stage, this factor clearly weighs in favor of abstention.

### 5.   The State Court Is Competent to Adjudicate Plaintiff's Federal Claims

As to the fifth *Colorado River* factor, while the 2nd Federal Action includes claims arising from both Federal statutes and New York State common law, the New York State Court system is more than capable to handle and adjudicate such Federal claims. *See, e.g. MSCI Inc., v. Jacob*, 96 A.D.3d 637 (N.Y. App. Div. 1st Dep't 2012) (adjudicating Computer Fraud and Abuse Act claims); *Talmor v. Talmor*, 712 N.Y.S.2d 833 (Sup. Ct. 2000) (adjudicating Federal Wiretap Act claims); *Spec Simple, Inc. v. Designer Pages Online LLC*, 54 N.Y.S.3d 837 (Sup. Ct. 2017) (adjudicating Stored Communications Act claims).   The ability of New York State Courts to adjudicate all of Plaintiff's claims, under one litigation, weighs in favor of abstention. *See Rose v. Vill. of Upper Nyack*, 669 F. Supp. 654, 658 (S.D.N.Y. 1987) ("While resolution of plaintiffs' claim . . . may depend on both state and federal . . . law, the issues involved are not without federal and state law precedent and the state courts are fully familiar with this type of litigation.").

### 6.   The State Court's Procedures Are Adequate

As to the sixth *Colorado River* factor, there is no question that the State Court's procedures are adequate to protect the Plaintiff's rights. The State Court is capable of providing Plaintiff the same remedies as this Court if he should prove his case and establish an entitlement to relief, if any.

Furthermore, with the State Court's rulings on November 5, 2018, with respect to the Brevet Computer, Hard Drives, and protocol for their production, the State Court Action is continuing to progress in significant and substantial ways.

### 7.    Plaintiff's 2nd Federal Action Is Vexatious and Reactive

Finally, as to the additional factor considered by courts performing the abstention analysis, Plaintiff's 2nd Federal Action is vexatious and reactive. *See Abe*, 2016 WL 1275661, at *6 (citing *Telesco*, 765 F.2d at 363). Prior to filing the 2nd Federal Action on September 4, 2018, Plaintiff lost numerous motions in the State Court Action:

On November 29, 2017, Plaintiff lost Motion Seq. No. 001, resulting in his being ordered to turn over the Computer and Hard Drives to a neutral expert and to submit to a data segregation protocol. (Ex. I); *see also* (Ex. K) (extending the time to comply with the 11/29/17 Order).

On April 13, 2018, Plaintiff's Motion Seq. No. 002 for declaratory judgment was denied without prejudice. (Ex. J).

On May 16, 2018, Plaintiff's Motion Seq. No. 003 for a protective order against having to produce his phone and calendar records was denied, and instead resulted in Plaintiff being ordered to produce emails and records from his phone and electronic calendar pertaining to his self-dealing. (Ex. L).

On August 1, 2018, Plaintiff's Motion Seq. No. 7 to quash State Court Defendants' subpoenas for non-party documents and depositions was denied. (Ex. M).

It is also telling that on September 5, 2018, following this string of consecutive losses, and the day after this 2nd Federal Action was filed, Plaintiff also attempted to have the State Court Action transferred away from the assigned Supreme Court Justice, Hon. David B. Cohen, to the

State Court's Commercial Division. (Ex. N). On October 2, 2018, this request, too, was denied. (Ex. O).

Furthermore, on August 24, 2018, shortly before filing his 2nd Federal Action, Plaintiff filed Motion Seq. No. 010 in the State Court Action, for leave to amend his State Court Complaint. (Ex. D). Plaintiff's August 24, 2018 proposed Amended Complaint adds new defendants and claims, and Plaintiff could have added the defendants and claims named in the 2nd Federal Action, but for whatever reason chose not to. *See* (Ex. E). Furthermore, as of November 5, 2018, the Amended Complaint is the operative pleading in the State Court Action.

Under these circumstances, the true nature of Plaintiff's 2nd Federal Action is quite plain to see. It is an attempt to forum shop or judge shop in response to results that Plaintiff does not like in the State Court Action, *the forum that he initially chose*. *See Telesco*, 765 F.2d at 363 ("The sequence of events in this case shows that the same party is plaintiff in both courts and sues in the federal court on the same cause of action after he has suffered some failures in the earlier state court action . . . With this history, it hardly seems wise to permit plaintiff to start anew in federal court"). Accordingly, as this Court did in *Abe*, it should refuse to entertain Plaintiff's attempts to forum shop. *Abe*, 2016 WL 1275661, at *10 ("In light of Plaintiff's numerous failures in the State Action, the fact that he initiated a new suit in federal court gives rise to a reasonable inference that he was merely seeking to pit the state and federal judicial systems against each other, and hoping for a better outcome in the latter.").

## II.   SHOULD THE 2ND FEDERAL ACTION NOT BE DISMISSED, DEFENDANTS REQUEST THAT IT BE STAYED PENDING RESOLUTION OF THE STATE COURT ACTION

Alternatively, should the Court deem that abstention is not warranted, and exercises its jurisdiction over this matter, Defendants request that this matter be stayed pending the resolution of the State Court Action. *See, e.g.*, *De Cisneros*, 871 F.2d at 306 (affirming district court order

staying federal litigation until parallel state cases are resolved); *Ulico Cas. Co.*, 2007 WL 2265563, at \*6 (finding that "even if this case is stayed, plaintiff will have a full opportunity to litigate liability and damages, and the state judgment could be given preclusive effect in the federal action").

## CONCLUSION

For all of the foregoing reasons, this Court should abstain from exercising its jurisdiction over this matter and dismiss Plaintiff's 2nd Federal Action in favor of the pending State Court Action, or, in the alternative, stay the 2nd Federal Action pending the resolution of the State Court Action.

Dated: New York, New York
       November 12, 2018

BIEDERMANN HOENIG SEMPREVIVO,
A Professional Corporation

By:
        Philip C. Semprevivo

One Grand Central Place
60 East 42nd Street, Suite 660
New York, New York 10165
Tel: (646) 218-7560
Fax: (646) 218-7510
Philip.Semprevivo@lawbhs.com
*Attorneys for Defendants Brevet Holdings,*
*LLC, Brevet Capital Management, LLC,*
*Brevet Short Duration Partners, LLC,*
*Brevet Short Duration Holdings, LLC,*
*Douglas Monticciolo, and Mark Callahan*

To:    All counsel of record (*via ECF*)