**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------ X
PAUL IACOVACCI,                            :
                                           :
                    Plaintiff,             :
                                           :
     -against-                             :
                                           :
BREVET HOLDINGS, LLC, a                    :
Delaware Limited Liability                 :
Company, BREVET CAPITAL                    :
MANAGEMENT, LLC, a Delaware                :
Limited Liability Company,                 :
BREVET SHORT DURATION                      :
PARTNERS, LLC, a Delaware                  :
Limited Liability Company,                 :
BREVET SHORT DURATION                      :
HOLDINGS, LLC, a Delaware                  :
Limited Liability Company,                 :
DOUGLAS MONTICCIOLO, as a                  :
member and the majority owner              :
of Brevet Holdings, LLC, Chief             :
Investment Officer of Brevet               :        No. 18 Civ. 8048 (JFK)
Capital Management, LLC, a                  :          **OPINION & ORDER**
member of Brevet Short                     :
Duration Partners, LLC, a                  :
member of Brevet Short                     :
Duration Holdings, LLC, and                :
individually; MARK CALLAHAN,               :
as President of Brevet Capital             :
Management, LLC, a member of               :
Brevet Short Duration                      :
Partners, LLC, a member of                 :
Brevet Short Duration                      :
Holdings, LLC, and                         :
individually; JOHNNY LAN, as               :
head of technology and vice-               :
president of Brevet Capital                :
Management, LLC, and                        :
individually; and JOHN and                 :
JANE DOES 1 through 10; and                :
all known corporate and other              :
entities,                                  :
                                           :
                    Defendants.            :
------------------------------ X

1

APPEARANCES

FOR PLAINTIFF PAUL IACOVACCI
     Chelsea Lin O'Donnell
     Jonathan Bolz
     Paul Matthew Krieger
     KRIEGER KIM & LEWIN LLP

FOR DEFENDANTS BREVET HOLDINGS, LLC, BREVET CAPITAL MANAGEMENT,
LLC, BREVET SHORT DURATION PARTNERS, LLC, BREVET SHORT DURATION
HOLDINGS, LLC, DOUGLAS MONTICCIOLO & MARK CALLAHAN
     Christine Isabelle Laurent
     Joseph Kim
     Philip Semprevivo
     BIEDERMANN HOENIG SEMPREVIVO, P.C.

FOR DEFENDANT JOHNNY LAN
     Daniel Seth Weinberger
     Edward William Larkin
     GIBBONS P.C.

**JOHN F. KEENAN, United States District Judge:**

Before the Court is a motion by Defendants Brevet Holdings,

LLC ("BH"), Brevet Capital Management, LLC ("BCM"), Brevet Short

Duration Partners, LLC ("Partners"), Brevet Short Duration

Holdings, LLC ("Holdings," and together with Partners, the

"Short Duration Companies"), Douglas Monticciolo

("Monticciolo"), and Mark Callahan ("Callahan") to dismiss,

pursuant to Federal Rule of Civil Procedure 12(b)(1), the

complaint filed by Plaintiff Paul Iacovacci ("Iacovacci").

Defendant Johnny Lan ("Lan") joins in the motion.  For the

reasons set forth below, the Court denies Defendants' motion to

dismiss.

## I.    BACKGROUND

2

**A. Facts**

This case is the second of two related federal actions brought in front of this Court.  Iacovacci's first federal action alleged claims for breach of fiduciary duty, breach of contract, fraud, and other related torts against Iacovacci's former employers and business partners. <u>Iacovacci v. Monticciolo</u>, No. 18 CIV. 7984 (JFK), 2019 WL 2074584, at *2 (S.D.N.Y. May 9, 2019).  The Court dismissed that case on abstention grounds based on a parallel state court action. <u>Id.</u> at *7.

This federal action arises out of the same events as Iacovacci's first federal action and state court case but relates specifically to whether the Defendants unlawfully accessed a computer and two hard drives belonging to Iacovacci. The following facts are taken from Iacovacci's complaint in this federal action.

Iacovacci is a former Managing Director of BCM, a member of the Short Duration Companies, and a member of the board of directors of Holdings. (Compl. ¶ 8.)  BH, BCM, and the Short Duration Companies are Delaware limited liability companies with their principal places of business in New York, New York. (<u>Id.</u> ¶¶ 9-12.)  All of these companies are engaged in the business of providing investment management and advisory services. (<u>Id.</u> ¶ 13.)  Despite being separate entities, BH, BCM, and the Short

3

Duration Companies (collectively, "Brevet") operate as a single enterprise under common control. (Id. ¶ 16.) Monticciolo and Callahan are residents of New York and New Jersey respectively. (Id. ¶¶ 19-20.) Monticciolo, as the Chief Investment Officer of BCM, had control over and responsibility for Brevet's daily operations. (Id. ¶ 19.) Callahan, as President of BCM, also oversaw Brevet's daily operations. (Id. ¶ 20.) Lan is a resident of New York and was Vice President and Head of Technology at BCM during the relevant time period. (Id. ¶ 21.)

In or around February 2015, Brevet purchased a desktop computer for Iacovacci's personal use, which he set up in his home. (Id. ¶ 23.) Lan configured the computer for Iacovacci and named the computer's primary account "Family" because Iacovacci's wife and children would also be using -- and indeed did use -- the computer. (Id. ¶ 24.) The computer was password protected, and Iacovacci occasionally attached two external hard drives to it, which he purchased for his personal use with his own funds. (Id. ¶ 25, 29.) He used the hard drives to store all of his personal files, including financial and tax-related documents. (Id. ¶¶ 26, 28.) When Iacovacci used the computer for Brevet-related work, he would log into the Brevet network using a remote access program called GoToMyPC, which Brevet provided. (Id. ¶ 27.) If Iacovacci was away from home but wanted to access the computer or hard drives, he would use a

program called LogMeIn, which he personally purchased and installed. (Id. ¶ 30.)  LogMeIn required the use of a username and password. (Id. ¶ 31.)

On December 18, 2015, Iacovacci underwent surgery, which ended up requiring extensive treatment and hospitalization. (Id. ¶ 44.)  Given his health issues, on January 6, 2016, Iacovacci announced to Monticciolo and Callahan that he intended to retire, whereupon they began to engage in retirement negotiations. (Id. ¶¶ 45-49.)  On October 14, 2016, however, Brevet -- instead of permitting Iacovacci to voluntarily retire -- terminated his employment, forfeiting all interests Iacovacci held in Brevet funds. (Id. ¶ 50.)

On October 17, 2016, Iacovacci sued BH and the Short Duration Companies in New York Supreme Court, New York County in a case now pending before Judge David Cohen (the "State Action"). (Semprevivo Decl., Ex. C, ECF No. 35 [hereinafter "Original State Action Compl."].)  Documents produced in that action purportedly revealed that Defendants had engaged in a "hacking campaign" against Iacovacci.  They allegedly accessed his computer and hard drives on numerous occasions between January and October 2016 without authorization. (Compl. ¶ 58.)  They, in fact, admitted in an affidavit in state court that they reviewed "hundreds" of files on Iacovacci's computer, external hard drives, and Yahoo! e-mail inbox. (Id. ¶ 60.)

After retaining a forensic expert, Iacovacci learned that Defendants' "hacking campaign" not only involved searching his devices, but, in addition, Defendants installed file deletion software on his computer and deleted numerous files, including his personal financial information, from his external hard drives. (Id. ¶ 67.) Monticciolo and Callahan allegedly directed this activity, in which Lan, who had knowledge of Iacovacci's passwords, participated. (Id. ¶ 64.)

**B. The State Action**

Iacovacci's October 17, 2016 state court action, which arose out of Iacovacci's allegedly unlawful termination, requested a declaratory judgment pursuant to N.Y. C.P.L.R. § 3001 that certain non-compete provisions imposed by Brevet were unenforceable and asserted claims against the Short Duration Companies for breach of their LLC agreements, anticipatory breach of their LLC agreements, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and conversion. (Id. ¶¶ 37-49, 50-89). He also requested the imposition of a constructive trust. (Id. ¶¶ 89-95.)

On August 24, 2018, Iacovacci filed an unopposed motion for leave to amend his complaint in state court. (Semprevivo Decl., Ex. D.) The amended complaint adds Brevet Capital Partners, LLC and Brevet Capital Holdings, LLC as defendants, and adds a claim

for fraud. (<u>Id.</u> ¶¶ 104-117.) (Semprevivo Decl., Ex. E ¶¶ 79-131, 104-117 [hereinafter " State Action Compl."].)

To date, the parties in the state court action have engaged in motion practice and discovery.  Defendants represent that the parties have conducted several depositions (including ones in Nevada and Georgia), issued numerous non-party document subpoenas, and briefed twelve different motions. (Mem. of Law in Supp. of Defs.' Mot. to Dismiss at 4, ECF No. 36 [hereinafter "Mem."].)  The state court has also ordered that Iacovacci's computer be turned over to a neutral forensic expert for analysis. (Semprevivo Decl., Ex. I.)

## C. The Federal Action

On September 4, 2018, ten days after amending his complaint in state court, Iacovacci initiated this federal action against Defendants asserting violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(a)(2)(C), the Federal Wiretap Act, 18 U.S.C. § 2511(1)(a), and the Stored Communications Act, 18 U.S.C. § 2701, based on the alleged intrusions into Iacovacci's personal computer, external hard drives, and Yahoo! e-mail address. (<u>Id.</u> ¶¶ 70-112.)  Iacovacci also asserts claims for conversion and trespass to chattels under New York common law. (<u>Id.</u> ¶¶ 97-112.) Iacovacci seeks monetary relief and an injunction restraining Defendants from using or disclosing any

materials obtained from his personal devices and email account.
(Id. at 28.)

On November 12, 2018, Defendants filed the instant motion
to dismiss pursuant to Rule 12(b)(1), arguing that Iacovacci's
state and federal court actions are parallel, and the Court
should abstain from exercising jurisdiction.

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(1), an
action must be dismissed for lack of subject matter jurisdiction
when the district court lacks the statutory or constitutional
power to adjudicate the case. Fed. R. Civ. P. 12(b)(1).  In
adjudicating a motion to dismiss for lack of subject matter
jurisdiction under Rule 12(b)(1), a court may consider matters
outside the pleadings. United States v. Blake, 942 F. Supp. 2d
285, 292 (E.D.N.Y. 2013); see also Zappia Middle E. Constr. Co.
v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000).  On a
12(b)(1) motion, the Court accepts all material factual
allegations in the complaint as true but does not necessarily
draw inferences from the complaint favorable to the
plaintiff. J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107,
110 (2d Cir. 2004) (citing Shipping Fin. Servs. Corp. v.
Drakos, 140 F.3d 129, 131 (2d Cir. 1998)).

## III.  DISCUSSION

### A. **Colorado River** Abstention

Defendants argue that this Court should abstain, pursuant to the doctrine established in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976), from exercising jurisdiction over the claims in this federal action. (Mem. at 1.)  "A motion to dismiss based on Colorado River is considered as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of Federal Rules of Civil Procedure." Stahl York Ave. Co., LLC v. City of N.Y., No. 14 CIV. 7665 ER, 2015 WL 2445071, at *7 (S.D.N.Y. May 21, 2015), aff'd, 641 F. App'x 68 (2d Cir. 2016).

The Supreme Court in Colorado River, held that "in situations involving the contemporaneous exercise of concurrent jurisdiction," a federal court, in certain "exceptional" circumstances, may abstain from exercising jurisdiction when parallel state-court litigation could result in "comprehensive disposition of litigation" and abstention would conserve judicial resources. 424 U.S. at 813, 817-18.  In deciding whether to abstain pursuant to Colorado River, courts consider six factors:

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether

the state procedures are adequate to protect the
plaintiff's federal rights.

Niagara Mohawk Power Corp. v. Hudson River-Black River
Regulating Dist., 673 F.3d 84, 100, 100-01 (2d Cir. 2012)
(quoting Woodford v. Cmty. Action Agency of Greene Cty., Inc.,
239 F.3d 517, 522 (2d Cir. 2001)).  "As an additional factor,
the Supreme Court has 'found considerable merit in the idea that
the vexatious or reactive nature of either the federal or the
state litigation may influence the decision whether to defer to
a parallel state litigation under Colorado River.'" Abe v. New
York Univ., No. 14-CV-9323 (RJS), 2016 WL 1275661, at *5-6
(S.D.N.Y. Mar. 30, 2016) (quoting Telesco v. Telesco Fuel &
Masons' Materials, Inc., 765 F.2d 356, 363 (2d Cir. 1985)).

No single Colorado River factor is decisive; instead, a
court must engage in a "carefully considered judgment[,] taking
into account both the obligation to exercise jurisdiction and
the combination of factors counselling against that exercise."
Colorado River, 424 U.S. at 818 (citation omitted); see also
Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1,
16 (1983) (explaining that the "weight to be given to any one
factor may vary greatly from case to case, depending on the
particular setting of the case").  The facial neutrality of a
factor "is a basis for retaining jurisdiction, not for yielding
it." Woodford, 239 F.3d at 522.

**B. The State and Federal Actions Are Not Parallel**

Before applying the six-factor <u>Colorado River</u> analysis, a court must make the threshold determination "that the concurrent proceedings are 'parallel.'" <u>Dittmer v. Cty of Suffolk</u>, 146 F.3d 113, 118 (2d Cir. 1998).  Federal and state proceedings are parallel if "'substantially the same parties are contemporaneously litigating substantially the same issue' in both forums." <u>First Keystone Consultants Inc. v. Schelsinger Elec. Contractors</u>, 862 F. Supp. 2d 170, 182 (E.D.N.Y. 2012) (quoting <u>Dittmer</u>, 146 F.3d at 118); <u>see also</u> <u>GBA Contracting Corp. v. Fid. & Deposit Co. of Md.</u>, No. 00 CIV. 1333 SHS, 2001 WL 11060, at *1 (S.D.N.Y. Jan. 4, 2001) (holding that parallelism does not require an exact identity of the parties; rather, "the parallel litigation requirement is satisfied when the main issue in the case is the subject of already pending litigation.").

Defendants argue that this federal action and Iacovacci's state action are parallel because they arise from "the very same set of factual allegations," which all relate to Defendants' decision to terminate Iacovacci for cause. (Mem. at 1.)  They further argue that Iacovacci's amended complaint in state court is "replete with allegations that the State Court Defendants hacked into Plaintiff's Computer and Hard Drives and personal email accounts, and claims that depend upon Plaintiff proving

the truth of those allegations." (Mem. at 11.)   "Count VI" in
the state action, for example, is "dedicated . . . to the
question of whether the alleged 'computer intrusions' constitute
fraud." (Reply Mem. of Law at 1, ECF No. 45 [hereinafter
"Reply"]; see also State Action Compl. ¶¶ 104-117).   Iacovacci's
state court claim for breach of the implied covenant of good
faith and fair dealing also depends on the alleged "computer
intrusions." (Reply 1-2; see also State Action Compl. ¶ 95.)
Thus, according to Defendants, this Court and the state court
will have "to determine the same issues:  whether Defendants
unlawfully accessed and utilized Plaintiff's Computer, Hard
Drives and Yahoo! email account." (Mem. at 11.)

Defendants also argue that this action and the state action
are parallel because there is "substantial overlap" between the
parties and, although Monticciolo, Callahan, and Lan are not
named in the state court action "their names and alleged actions
feature prominently in Plaintiff's State Court pleadings . . . ,
and [they] are the individuals through which Brevet is alleged
to have acted." (Mem. at 12.)

In response, Iacovacci argues that this federal action and
the state action are not parallel because (1) the two actions do
not have the same defendants (this action includes Monticciolo,
Callahan, Lan, and BCM); (2) the causes of action are not the
same because the state action "is essentially a state contract

law dispute, while the Federal Action is premised primarily on violations of the federal computer fraud, stored communications, and wiretap statutes"; and (3) the relief requested is different. (Pl.'s Mem. of Law in Opp. at 7, ECF No. 41.)

The Court agrees with Iacovacci that the state and federal actions are not parallel. Iacovacci does not assert any of the federal law claims that he asserts here in state court, nor would the state court necessarily have to resolve the issues raised in this federal litigation. See Frydman v. Verschleiser, 172 F. Supp. 3d 653, 664 (S.D.N.Y. 2016) (concluding federal and state actions that "shared . . . factual allegations" were not parallel where the federal action contained numerous federal law claims not included in the state court action).

Iacovacci's claims for fraud and breach of the implied covenant of good faith and fair dealing in state court do indeed touch on whether the state court defendants accessed Iacovacci's electronic devices without authorization. (See State Action Compl. ¶¶ 95-96, 107-113.) For the reasons set forth below, the Court concludes that the state court, however, need not resolve this issue to arrive at a verdict on Iacovacci's fraud and breach of the implied covenant of good faith and fair dealing claims.

Iacovacci alleges in state court that the defendants in that action breached the implied covenant of good faith and fair

13

dealing and committed fraud by "falsely represent[ing] that they
intended to accept Plaintiff's retirement." (State Action Compl.
¶ 106; id. ¶ 94 ("Defendants breached the implied covenant of
good faith and fair dealing by concocting false and pretextual
reasons for discharging and removing [Iacovacci] . . . .").)
Thus, the state court could find the defendants liable for fraud
and breach of the implied covenant of good faith and fair
dealing based solely on evidence demonstrating that they
misrepresented their intention to accept Iacovacci's retirement
and withdrawal from the Short Duration Companies and offered
false and pretextual reasons for his dismissal.  Although
Iacovacci alleges that the state court defendants "falsely
represented" that they would use his "personal passwords to
access his personal computer . . . only with [his] authority"
when in fact they used his passwords to covertly obtain his
personal documents, the state court does not necessarily have to
resolve this issue to hold the state court defendants liable for
fraud or breach of the implied covenant of good faith and fair
dealing. (Id. ¶ 108; see also id. ¶ 95 ("Defendants . . .
engage[d] Plaintiff in a charade of negotiations while illegally
using his LogMeIn personal passwords to illegally gain access to
his computer . . . .").  Thus, the state court may not resolve
the main issues in this case, which precludes a holding that the
two actions are parallel. C.f. Niagara Mohawk, 673 F.3d at 100

("'Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum.'" (quoting <u>Dittmer</u>, 146 F.3d at 118)).

In this way, this case is analogous to <u>Frydman v. Verschleiser</u>, 172 F. Supp. 3d 653 (S.D.N.Y. 2016).  There, Judge Koeltl held that federal and state actions were not parallel, even though they arose out of the same underlying facts, where the state court action contained claims for disparagement and breach of contract, and the federal action contained claims for violations of the CFAA, the Electronic Communications Privacy Act, and the Stored Communications Act. <u>Id.</u> at 659.  Judge Koeltl concluded that the state action "would not necessarily address the issue of whether [the defendant] engaged in hacking" because "[o]ther evidence may be adduced" to prove the state law claims "without any proof of the alleged hacking." <u>Id.</u> at 664. Accordingly, Defendants' motion to dismiss this case on abstention grounds is denied because the state and federal actions are not parallel.

## C. The <u>Colorado River</u> Factors Weigh Against Abstention

Even if the state and federal actions were parallel, the Court would still deny the motion because a majority of the <u>Colorado River</u> factors weigh against abstention.

### 1. Whether the Federal Court Has Assumed Jurisdiction Over a Res

As this Court decided in the earlier related federal action, there is no property over which the state court has exercised exclusive jurisdiction.[1] See Iacovacci, 2019 WL 2074584, at *6.  Accordingly, this factor is neutral and weighs against abstention. See Woodford, 239 F.3d 517 at 522.

### 2. Relative Convenience of the Federal Forum

This courthouse and New York Supreme Court are next door to each other.  There is no additional inconvenience to any party in having to litigate here.  "When, as here, dismissing the case would not result in a substantial net gain in convenience, this factor does not favor dismissal." King v. Hahn, 885 F. Supp. 95, 98 (S.D.N.Y. 1995).

### 3. Avoidance of Piecemeal Litigation

This factor weighs only modestly in favor abstention -- if at all.  "[W]here 'the federal and state actions are based on the same underlying facts, there is some risk of an inconsistent result.'" Frydman, 172 F. Supp. 3d at 665 (quoting Dalzell Mgmt.

---

[1] Defendants argue that this action does indeed involve property over which the state court has exercised jurisdiction because the defendants in the state court action have brought counterclaims for conversion, breaches of fiduciary duties, and unjust enrichment "that arise from Plaintiff's stealing of their property." (Reply at 4.)  The state court defendants' counterclaims, however, seek "recovery of money or for an injunction compelling or restraining action by [Iacovacci]." Penn Gen. Cas. Co. v. Commonwealth of Pennsylvania ex rel. Schnader, 294 U.S. 189, 195 (1935). (See Semprevivo Reply Affirmation, Ex. T at 45, ECF No. 44 (requesting monetary damages and an injunction prohibiting Iacovacci from using any of Brevet's proprietary information).)  They do not, therefore, require the court to have exclusive "jurisdiction over any res or property." Moses H. Cone, 460 U.S. at 19 (1983).

Co. v. Bardonia Plaza, LLC, 923 F. Supp. 2d 590, 600 (S.D.N.Y. 2013)).  Here, however, there is a limited risk of inconsistent or duplicative outcomes because the state court action does not "seek[] a determination of any of the federal claims" at issue here. Id. at 665.  Moreover, if the state court arrives at any determination in a final judgment as to whether the defendants in that action accessed Iacovacci's personal devices with or without proper authority, "this Court would give [that judgment] the appropriate preclusive effect." Id.; see also Abe v. New York Univ., No. 14-CV-9323 (RJS), 2016 WL 1275661, at *7 (S.D.N.Y. Mar. 30, 2016) ("[T]he mere existence of parallel federal and state suits does not, without more, warrant abstention, particularly where 'the nature of the parallel actions is such that principles of res judicata and collateral estoppel should be effective to prevent inconsistent outcomes.'" (quoting CVR Energy, Inc. v. Wachtell, Lipton, Rosen & Katz, No 14-cv-6566 (RJS), 2014 WL 7399040, at *4 (S.D.N.Y. Dec. 29, 2014)).)  Accordingly, this factor does not weigh strongly in favor of abstention. Frydman, 172 F. Supp. 3d at 665.

**4. Relative Advancement of Proceedings in Each Forum**

Iacovacci sued the state court defendants nearly two years prior to commencing this federal action. (See Original State Action Compl.)  The Supreme Court, however, "has made clear that 'priority should not be measured exclusively by which complaint

was filed first, but rather in terms of how much progress has been made on the two actions.'" Millennium Drilling Co. v. Prochaska, No. 14CV1985, 2014 WL 6491531, at *5 (S.D.N.Y. Nov. 18, 2014) (quoting Moses H. Cone, 460 U.S. at 21).  Discovery in state court has been ongoing, and Judge Cohen has been actively working to resolve several discovery disputes, including issuing an order mandating Iacovacci's computer and external hard drives be delivered to an expert for analysis. (Semprevivo Decl., Exs. I, K.)  The parties have also engaged in document discovery and conducted numerous non-party depositions. (Mem. at 4.) Iacovacci himself stated in a letter to the Administrative Justice in the Supreme Court, New York County that over "160,000 pages have been produced" in the state action. (Semprevivo Decl., Ex. N at 4.)  By contrast, discovery in this action has not yet commenced.  Accordingly, this factor weighs in favor of the Court abstaining from its exercise of jurisdiction over this case. See Millennium Drilling Co., 2014 WL 6491531, at *5 ("[I]n the Texas Action over 100,000 pages of documents have exchanged hands and several depositions have taken place . . . .  Trial is set to begin in March 2015.  By contrast, this lawsuit has not progressed beyond the pleading stage.  Given the relative advancement of the Texas Action, this factor weighs in favor of abstention."); see also Paul v. Raytex Fabrics, Inc., 318 F. Supp. 2d 197, 198 (S.D.N.Y. 2004) (abstaining upon finding that

the parallel state court action, which had commenced nine months earlier, had already proceeded into discovery).

### 5. Whether Federal Law Provides Rules of Decision

"When the applicable substantive law is federal, abstention is disfavored." Niagara Mohawk, 673 F.3d at 102.  Here, Iaocvacci's claims, with the exception of his claims for conversion and trespass to chattels, arise under federal law. Accordingly, this factor weighs strongly against surrendering jurisdiction. Moses H. Cone, 460 U.S. at 26 ("[T]he presence of federal-law issues must always be a major consideration weighing against surrender.").

### 6. Whether State Procedures Are Adequate to Protect Plaintiff's Federal Rights

"In assessing the adequacy of the state court forum, the court must determine whether the 'parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties.'" Millennium Drilling Co., 2014 WL 6491531, at *5 (S.D.N.Y. Nov. 18, 2014) (quoting Moses H. Cone, 460 U.S. at 28.).  Here, there is "no serious question that the state action can adequately protect [Iacovacci's] procedural and substantive rights and provide a fair forum that will promptly resolve the parties' claims." Dalzell Mgmt. Co., 923 F. Supp. 2d at 602. Nevertheless, "the ability of the state court to adequately

protect Plaintiff's interests only makes this factor neutral," and, accordingly, it cannot be used to support the Court's abstention from exercising its jurisdiction. Id.; see also Dunkin' Donuts Franchised Rests. LLC v. Rijay, Inc., No. 06 CIV 8237 WCC, 2007 WL 1459289, at *6 (S.D.N.Y. May 16, 2007) ("[T]he sixth factor -- whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction -- is consequential only when the answer is negative and thus weighs in favor of federal jurisdiction.").

### 7. Analysis of the Factors

Here, there are only two factors that weigh in favor of the Court exercising its discretion to abstain from deciding the federal action:  the avoidance of piecemeal litigation and the relative advancement of the state court case.  These two facts, however, are not enough on their own to overcome "the heavy presumption favoring the exercise of federal jurisdiction." Dalzell Mgmt. Co., 923 F. Supp. 2d at 602.  This is particularly true when there is another factor -- the presence of federal law -- that weighs strongly against abstention. Moses H. Cone, 460 U.S. at 26.  Accordingly, even if the state and federal actions were parallel, this Court would still be required to deny Defendants 12(b)(1) motion.

### IV.   CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is DENIED.  The Clerk of Court is respectfully directed to terminate the motions pending at docket entries 34 and 37.

**SO ORDERED.**

Dated:       New York, New York
             May  9  , 2019

                              *John F. Keenan*
                              _____
                              John F. Keenan
                              United States District Judge