UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------
                                                :
PAUL IACOVACCI,                                 :
                                                :
                    Plaintiff,                  :
                                                :          18cv8048
        -against-                               :
                                                :          OPINION & ORDER
BREVET HOLDINGS, LLC, a Delaware                :
Limited Liability Company, *et al.*,            :
                                                :
                    Defendants.                 :
                                                :
---------------------------------------------------------------

WILLIAM H. PAULEY III, Senior United States District Judge:

        Plaintiff Paul Iacovacci moves to dismiss the Amended Counterclaims of Defendants Brevet Holdings, LLC ("BH"), Brevet Capital Management, LLC ("BCM"), Brevet Short Duration Partners, LLC ("BSDP"), Brevet Short Duration Holdings, LLC ("BSDH"), Douglas Monticciolo, and Mark Callahan (collectively "Defendants")[1] pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. First, Iacovacci contends that this Court should abstain from exercising jurisdiction over Defendants' counterclaims pursuant to Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976). Second, if abstention is unwarranted, Iacovacci avers that Defendants' counterclaims for misappropriation of trade secrets under New York law and the Defend Trade Secrets Act ("DTSA") fail as a matter of law. For the following reasons, Iacovacci's motion is denied.

---

[1]     Defendant Johnny Lan has not asserted any counterclaims, and he is not implicated by Iacovacci's motion to dismiss.

## BACKGROUND

I. The State Action

In October 2016, Iacovacci commenced an action in New York Supreme Court (the "State Action") asserting state law claims arising out of his termination by Brevet. In the State Action, Iacovacci alleges that after he announced his retirement, Brevet engaged in a fraudulent scheme to deprive him of payments under certain agreements and prevent him from obtaining future business opportunities in the financial industry. (Weiss Decl., ECF No. 116, Ex. 1 ("State Action Compl."), at 3.) He also alleges that Brevet impermissibly accessed his personal home computer, external hard drives, and Yahoo! email account. (State Action Compl., at 4.) Brevet then terminated Iacovacci and took possession of his interests in BSDP and BSDH. (State Action Compl., at 5.)

Initially, Iacovacci brought the State Action against BH, BSDP, and BSDH. Later, he amended the State Action complaint to add two additional defendants: Brevet Capital Partners, LLC and Brevet Capital Holdings, LLC. In response, the State Action defendants asserted sixteen counterclaims against Iacovacci, twelve of which remain: (1) breach of contract; (2) breach of covenant not to compete; (3) breach of covenant of confidentiality; (4) breach of fiduciary duty; (5) breach of duty of loyalty; (6) unfair competition; (7) tortious interference with business relations; (8) tortious interference with prospective business relations; (9) misappropriation of trade secrets; (10) conversion; (11) trespass to chattels; and (12) unjust enrichment. (See generally Weiss Decl., Exs. 2, 3.)

Not to be outflanked, in October 2019, Iacovacci moved to amend the State Action complaint to add—among others—Monticciolo and Callahan as defendants. The state

court granted the motion in part, permitting Iacovacci to bring claims against Monticciolo and Callahan for breach of loyalty and breach of fiduciary duty. (ECF No. 127, Ex. 2.)

II.  The Federal Action

Iacovacci filed this action on September 4, 2018, alleging violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C), the Federal Wiretap Act, 18 U.S.C. § 2511(1)(a), and the Stored Communications Act, 18 U.S.C. § 2701. He also asserts claims for conversion and trespass to chattels under New York common law. Defendants moved to dismiss, arguing that this action is duplicative of the State Action under the Colorado River abstention doctrine. Judge Keenan denied that motion, finding that the two actions are not parallel. Indeed, while the State Action primarily involves Iacovacci's termination, Iacovacci's claims in this case are rooted in Defendants' hacking of his computer, hard drives, and email. See Iacovacci v. Brevet Holdings, LLC, 2019 WL 2085989, at *5 (S.D.N.Y. May 13, 2019) ("[T]he state court may not resolve the main issues in this case, which precludes a holding that the two actions are parallel."). Defendants moved for reconsideration and reargument, which this Court denied.[2] Iacovacci v. Brevet Holdings, LLC, 2019 WL 2992165, at *4 (S.D.N.Y. July 9, 2019).

Defendants assert ten counterclaims against Iacovacci: (1) breach of contract; (2) breach of covenant not to compete; (3) breach of covenant of confidentiality; (4) breach of fiduciary duty; (5) breach of duty of loyalty; (6) unfair competition; (7) tortious interference with business relations; (8) tortious interference with prospective business relations; (9) misappropriation of trade secrets; and (10) violation of the DTSA. Of those ten counterclaims,

---

[2]   On May 31, 2019, this action was randomly reassigned to this Court.

seven are brought exclusively by BCM, two are brought by BCM, Monticciolo, and Callahan, and one is brought by all Brevet-affiliated entities named in the complaint.

## DISCUSSION

I. Legal Standard

"A motion to abstain is considered as a motion to dismiss for lack of subject matter jurisdiction pursuant to [Federal] Rule [of Civil Procedure] 12(b)(1)." Wilmington Tr., Nat'l Ass'n v. Estate of McClendon, 287 F. Supp. 3d 353, 360 (S.D.N.Y. 2018) (quotation marks omitted). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the [pleading] . . . as true[] and draw all reasonable inferences in favor of the party asserting jurisdiction." Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014). A court may "refer[] to evidence outside of the pleadings." Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000).

On a motion to dismiss under Rule 12(b)(6), a court accepts all facts alleged in a counterclaim as true and construes all reasonable inferences in the counterclaim-plaintiff's favor. ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co., 553 F.3d 187, 196 (2d Cir. 2009). The counterclaim must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation marks omitted). To survive a motion to dismiss, the court must find the counterclaim rests on factual allegations that "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Iqbal, 556 U.S. at 678 ("The plausibility

standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." (quotation marks omitted)). "A court presented with a motion to dismiss under both Rule 12(b)(1) and Rule 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction." Encarnacion v. RMS Asset Mgmt. LLC, 2018 WL 4572240, at *2 (S.D.N.Y. Sept. 24, 2018) (quotation marks omitted); see also Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990).

II.     Colorado River Abstention

Iacovacci contends that this Court should abstain from exercising jurisdiction over Defendants' counterclaims under Colorado River because they mirror those asserted in the State Action. As a general principle, "federal courts have a 'virtually unflagging obligation' to exercise their jurisdiction." Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist., 673 F.3d 84, 100 (2d Cir. 2012) (quoting Colo. River, 424 U.S. at 817). Accordingly, "as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the [f]ederal court having jurisdiction." Colo. River, 424 U.S. at 817 (quotation marks omitted). Nevertheless, a federal court may in "exceptional circumstances" abstain from exercising jurisdiction "when parallel state-court litigation could result in 'comprehensive disposition of litigation' and abstention would conserve judicial resources." Niagara Mohawk Power Corp., 673 F.3d at 100 (quoting Colo. River, 424 U.S. at 813, 817–18). The doctrine is to be applied "in a pragmatic, flexible manner with a view to the realities of the case at hand." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 21 (1983). Further, the "burden of persuasion rest[s] on the

5

party opposing the exercise of federal jurisdiction." Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York, 762 F.2d 205, 210 (2d Cir. 1985).

In determining whether to abstain under Colorado River, courts weigh the following six factors:

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

Niagara Mohawk Power Corp., 673 F.3d at 100–01 (quoting Woodford v. Cmty. Action Agency of Greene Cty., Inc., 239 F.3d 517, 522 (2d Cir. 2001)). "The weight to be given to any one factor may vary greatly from case to case." Moses H. Cone Mem'l Hosp., 460 U.S. at 16; see also Niagara Mohawk Power Corp., 673 F.3d at 101 (noting that "none of the[] factors alone is necessarily determinative" of the abstention analysis (quotation marks omitted)). When applying the factors, the "balance [must be] heavily weighted in favor of the exercise of jurisdiction." Moses H. Cone Mem'l Hosp., 460 U.S. at 16. "[T]he facial neutrality of a factor is a basis for retaining jurisdiction, not for yielding it." Woodford, 239 F.3d at 522.

A. Whether the Counterclaims are Parallel

Before engaging in the six-factor Colorado River analysis, a court must make the threshold determination "that the concurrent proceedings are 'parallel.'" Dittmer v. Cty. of Suffolk, 146 F.3d 113, 118 (2d Cir. 1998). Proceedings are parallel where "substantially the same parties are contemporaneously litigating substantially the same issue in another forum." Niagara Mohawk Power Corp., 673 F.3d at 100 (quotation marks omitted). "Complete identity of parties and claims is not required; the parallel litigation requirement is satisfied when the main

6

issue in the case is the subject of already pending litigation." GBA Contracting Corp. v. Fid. & Deposit Co. of Md., 2001 WL 11060, at *1 (S.D.N.Y. Jan. 4, 2001); see also Shields v. Murdoch, 891 F. Supp. 2d 567, 577 (S.D.N.Y. 2012) ("Perfect symmetry of parties and issues is not required." (quotation marks omitted)). "Any doubt regarding the parallel nature of a federal and state action should be resolved in favor of the exercise of federal jurisdiction." Shields, 891 F. Supp. 2d at 577 (quotation marks omitted).

Defendants' counterclaims are parallel to the State Action counterclaims. Indeed, the actions involve "substantially the same parties." Dittmer, 146 F.3d at 118. Five of the Defendants here are defendants in the State Action: BH, BSDP, BSDH, Monticciolo, and Callahan. While BCM is not a defendant in the State Action, it is wholly owned by BH, which is a State Action defendant. (See Am. Answer with Countercls., ECF No. 79 ("Am. Countercls."), ¶ 14.) And courts within this circuit have concluded that parallelism can exist even where there is some asymmetry among parties to concurrent actions. See Cong. Talcott Corp. v. Roslin, 1996 WL 499337, at *3 (S.D.N.Y. Sept. 4, 1996) (staying action under Colorado River where "the defendants [were] not the same, [but] they [were] closely related"); see also Sitgraves v. Fed. Home Loan Mortg. Corp., 265 F. Supp. 3d 411, 413 (S.D.N.Y. 2017) ("Although [plaintiff] argues the actions are not parallel because Freddie Mac is a party here but not in the State Action, she cannot contest that BANA is substantially the same as Freddie Mac."); Pabco Constr. Corp. v. Allegheny Millwork PBT, 2013 WL 1499402, at *2 (S.D.N.Y. Apr. 10, 2013) (finding parallelism even though parties in concurrent state and federal cases were not "strictly identical" because "complete identity of parties is not required").

Additionally, the counterclaims in both actions involve "substantially the same issue[s]." Dittmer, 146 F.3d at 118. Of Defendants' ten live counterclaims, nine are asserted in

7

the State Action, albeit by different parties.  The counterclaims in both actions are predicated on Iacovacci's alleged disloyal conduct as a Brevet employee and misappropriation of Brevet's trade secrets.  Notably, as Iacovacci observes, many of the factual allegations underlying Defendants' counterclaims are lifted almost word-for-word from the State Action counterclaims.  (Compare, e.g., Am. Countercls. ¶¶ 59–65, with Weiss Decl., Ex. 2 ¶¶ 71–77.)  Courts have found parallelism where claims in concurrent state and federal proceedings contain similar factual overlap.  See, e.g., Pabco Constr. Corp., 2013 WL 1499402, at *2 (finding parallelism where the concurrent actions "concern[ed] substantially the same dispute" but were "not carbon copies of each other"); Garcia v. Tamir, 1999 WL 587902, at *3 (S.D.N.Y. Aug. 4, 1999) (concluding that a "difference in recovery . . . [did] not render the actions fundamentally different" where "[i]n both actions[] the issues concern[ed] the alleged failure of defendants to pay overtime and minimum wages").

In response, Defendants contend that their DTSA counterclaim distinguishes the two actions.  And even though the State Action defendants bring a counterclaim for misappropriation of trade secrets under New York law, Defendants insist that "the difference in remedies available under the two [causes of action] are significant."  Gudge v. 109 Rest. Corp., 118 F. Supp. 3d 543, 547 (E.D.N.Y. 2015).  Specifically, Defendants argue that the DTSA permits recovery of attorneys' fees, 18 U.S.C. § 1836(b)(3)(D), whereas New York common law generally does not, Levine v. Infidelity, Inc., 770 N.Y.S.2d 83, 84 (App. Div. 2003).  According to Defendants, this distinction in remedies precludes a finding of parallelism under Woodford, 239 F.3d at 524.  There, the Second Circuit cited the availability of attorneys' fees for certain federal claims in rejecting the district court's decision to abstain under Colorado River.

Woodford, 239 F.3d at 525 ("Awards of attorneys' fees are not available on the claims asserted in the state-court actions, and hence the relief available is not the same.").

However, Woodford is distinguishable from this case. In Woodford, the Second Circuit did not discuss the availability of attorneys' fees in the context of parallelism. Instead, it did so when assessing the district court's analysis of the sixth Colorado River factor—that is, the adequacy of the state forum in protecting the claimant's rights. Woodford, 239 F.3d at 525. Moreover, in Woodford, there was little overlap in the claims asserted in the purportedly concurrent lawsuits. 239 F.3d at 523–24 ("[N]one of the claims asserted in the state actions is a federal claim, none of the common-law claims is asserted in the present actions, and neither plaintiff's actions present identical issues."). And "even if different relief is sought in the two actions, or the claims are not exactly the same, they are parallel as long as the causes of action are comprised of the same essential issues." Garcia, 1999 WL 587902, at *3; see also Potente v. Capital One, N.A., 2018 WL 1882848, at *4 (E.D.N.Y. Apr. 19, 2018) ("It is not necessarily the relief sought that determines whether actions are parallel."); Stahl York Ave. Co., LLC v. City of New York, 2015 WL 2445071, at *9 (S.D.N.Y. May 21, 2015) ("While the forms of relief sought by plaintiff in this case and the state action are not perfectly coextensive—here, [plaintiff] seeks money damages in addition to injunctive and declaratory relief—the cases are undoubtedly parallel for the purposes of the Colorado River abstention doctrine.").

B. Colorado River Factors

Since the counterclaims are parallel, this Court must assess the six Colorado River factors.

9

i. Jurisdiction Over a Res

The parties agree that neither the state court nor this Court has control over a res. This factor is neutral and therefore weighs against abstention. Woodford, 239 F.3d at 522.

ii. Relative Convenience of the Federal Forum

Similarly, the parties agree that this Court and the state court are equally convenient forums. Accordingly, this factor "favor[s] retention of jurisdiction." Woodford, 239 F.3d at 523.

iii. Avoidance of Piecemeal Litigation

"By far the most important factor" in the Colorado River abstention analysis is the "'clear federal policy . . . [of] avoidance of piecemeal adjudication.'" Moses H. Cone Mem'l Hosp., 460 U.S. at 16 (alterations in original) (quoting Colo. River, 424 U.S. at 819). This factor is a "paramount consideration" when a failure to abstain may result in "inconsistent disposition[s]" that "would breed additional litigation on assertions of claim and issue preclusion." Arkwright-Boston, 762 F.2d at 211. With that said, "the Supreme Court has held that [the] 'mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction.'" Vill. of Westfield v. Welch's, 170 F.3d 116, 123 (2d Cir. 1999) (quoting Colo. River, 424 U.S. at 816). And since "any case involving parallel proceedings presents a risk of duplicative litigation or a rush to judgment, the existence of those risks can weigh only modestly in favor of dismissal; otherwise dismissals pursuant to Colorado River would be the rule, not the exception." In re Asbestos Litig., 963 F. Supp. 247, 253 (S.D.N.Y. 1997) (quotation marks omitted).

Judge Keenan previously concluded that Iacovacci's claims in this action— premised on Defendants' alleged computer hacking and not the underlying employment

dispute—create a risk of piecemeal litigation with the State Action. Iacovacci, 2019 WL 2085989, at *6. Surely Defendants' counterclaims—premised on predominantly the same facts and theories as those in the State Action—present a similar risk. See Goldentree Asset Mgmt., L.P. v. Longaberger Co., 448 F. Supp. 2d 589, 594 (S.D.N.Y. 2006) ("The existence of nearly identical claims in two different suits results in needless duplication of proceedings . . . ."). Defendants respond that this factor cannot favor abstention because piecemeal litigation is inevitable given Iacovacci's choice to litigate in two forums. They offer Kshel Realty Corp. v. City of New York to support that proposition. 2003 WL 21146650, at *5 (S.D.N.Y. May 16, 2003). But Defendants' argument is unpersuasive. In Kshel, in addition to the federal action, there were "at least *five* pending state actions"—a far cry from the single state action here. 2003 WL 21146650, at *5 (emphasis added). Accordingly, the third Colorado River factor favors abstention.

### iv. Relative Advancement of Proceedings in Each Forum

The fourth Colorado River factor is the relative advancement of the concurrent proceedings. In assessing this factor, "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." Moses H. Cone Mem'l Hosp., 460 U.S. at 21; see Millennium Drilling Co., Inc. v. Prochaska, 2014 WL 6491531, at *5 (S.D.N.Y. Nov. 18, 2014) (fourth factor favored abstention where "over 100,000 pages of discovery ha[d] exchanged hands" in the state action and the federal action "ha[d] not progressed beyond the pleading stage").

The State Action was filed approximately two years before this action. Additionally, the State Action parties have exchanged over 270,000 pages of discovery, litigated over twenty motions, and deposed at least six witnesses. (Weiss Decl. ¶ 5.) In contrast, no

11

discovery had occurred in this action at the time Iacovacci filed his motion. (Weiss Decl. ¶ 6.) Yet, Iacovacci concedes that discovery in the State Action has slowed considerably because of disputes over the computer and hard drives at issue. This Court sees no reason why much of the State Action discovery cannot simply be reproduced in this action, especially given this Court's recent imposition of a streamlined discovery protocol. Thus, the fourth Colorado River factor only slightly favors abstention.

### v. Whether Federal Law Provides Rules of Decision

"When the applicable substantive law is federal, abstention is disfavored." De Cisneros v. Younger, 871 F.2d 305, 309 (2d Cir. 1989). "The absence of federal issues does not strongly advise dismissal, unless the state law issues are novel or particularly complex." Vill. of Westfield, 170 F.3d at 124; see also De Cisneros, 871 F.2d at 308–09. However, while the "absence of federal issues does not require the surrender of jurisdiction, it does favor abstention where 'the bulk of the litigation would necessarily revolve around the state-law . . . rights of [numerous] . . . parties." Gen. Reinsurance Corp. v. Ciba-Geigy Corp., 853 F.2d 78, 82 (2d Cir. 1988) (alterations in original) (quoting Moses H. Cone Mem'l Hosp., 460 U.S. at 23 n.29). Here, as noted above, nine out of Defendants' ten counterclaims are governed by state law, but they do not pose particularly novel or complex issues. "Accordingly, this factor favors dismissal, although it does not do so strongly." Iacovacci v. Monticciolo, 2019 WL 2074584 at *7 (S.D.N.Y. May 9, 2019) (quotation marks omitted); see also Potente, 2018 WL 1882848, at *6 ("The instant complaint contains both federal and state law claims, with only one cause of action based on federal law. . . . Where, as here, the state law issues do not appear to be particularly complex or novel, the balance in favor of abstention is only slight." (citation omitted)).

### vi. Whether State Procedures Can Protect Counterclaim-Plaintiffs' Rights

"When reviewing the sixth Colorado River factor, a federal court must determine whether the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." Dalzell Mgmt. Co. v. Bardonia Plaza, LLC, 923 F. Supp. 2d 590, 601–02 (S.D.N.Y. 2013) (quotation marks omitted). "If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all." Moses H. Cone Mem'l Hosp., 460 U.S. at 28. However, "the adequacy of the state forum does not weigh heavily in favor of dismissal pursuant to Colorado River." Dalzell, 923 F. Supp. 2d at 602 (quotation marks omitted); see also Dunkin' Donuts Franchised Rests. LLC v. Rijay, Inc., 2007 WL 1459289, at *6 (S.D.N.Y. May 16, 2007) ("The fact that the state court is competent to adjudicate plaintiff's claims is largely irrelevant.").

Here, this Court is somewhat skeptical that the state court can adequately protect BCM's rights for two reasons. First, as the parties indicated at oral argument and in supplemental filings, there is debate concerning whether the DTSA counterclaim could even be brought in state court. Compare Lamont v. Conner, 2019 WL 1369928, at *7 (N.D. Cal. Mar. 26, 2019) ("The [DTSA] builds upon the Espionage Act of 1996 and provides exclusive original jurisdiction to the District Courts."), with Allstate Ins. Co. v. Jewell, 2019 WL 3526703, at *4 (W.D. Ky. May 21, 2019) ("The undersigned has found no indication that Congress affirmatively divested state courts of jurisdiction to hear claims under the DTSA."), and 1-800 Remodel, Inc. v. Bodor, 2019 WL 856399, at *2 n.3 (C.D. Cal. Jan. 28, 2019) ("[T]here is no indication that federal courts have exclusive jurisdiction over DTSA . . . claims." (emphasis removed)). Second, while this Court is mindful that BCM is wholly owned by BH, BCM is technically not a

party to the State Action. And this Court is hesitant to deprive a counterclaim-plaintiff of a forum to litigate its claims. As such, this factor does not weigh in favor of abstention.

       vii.   Assessment of Factors

In sum, three Colorado River factors weigh in favor of abstention (the third, fourth, and fifth) and three factors are neutral or weigh against abstention (the first, second, and sixth). This Court concludes that, on balance, the three factors favoring abstention are insufficient to outweigh the "heavy thumb on the retaining-federal-jurisdiction side of the scale." Cong. Talcott Corp., 1996 WL 499337, at *5. Iacovacci's motion to dismiss pursuant to Rule 12(b)(1) is denied.[3]

III.   Motion to Dismiss Trade Secret Counterclaims under Rule 12(b)(6)

Iacovacci next argues that this Court should dismiss Defendants' counterclaims for misappropriation of trade secrets under the DTSA and New York law pursuant to Rule 12(b)(6). This argument lacks merit.

To state a claim for misappropriation under the DTSA, a plaintiff must allege that it possessed a trade secret that the defendant misappropriated. 18 U.S.C. § 1836(b)(1). The elements for a misappropriation claim under New York law are fundamentally the same. See N. Atl. Instruments, Inc. v. Haber, 188 F.3d 38, 43–44 (2d Cir. 1999). Since "[t]he requirements are similar," courts have found that a "[c]omplaint sufficiently plead[ing] a DTSA claim . . . also

---

[3] As the parties acknowledge, courts in this circuit sometimes consider the "vexatious or reactive" nature of the state or federal action in conducting a Colorado River analysis. Abe v. New York Univ., 2016 WL 1275661, at *9 (S.D.N.Y. Mar. 30, 2016). However, the Second Circuit has "never formally cited this factor in its enumeration of the relevant considerations under Colorado River." Linens of Europe, Inc. v. Best Mfg., Inc., 2004 WL 2071689, at *5 n.5 (S.D.N.Y. Sept. 16, 2004). In any event, this factor is neutral, as Iacovacci and Defendants have each engaged in gamesmanship in this action and the State Action. Indeed, as noted above, Iacovacci recently sought to add Monticciolo and Callahan as State Action defendants—a tactic that this Court perceives as an attempt to create symmetry between the concurrent lawsuits. And, in an ironic twist, Defendants previously moved to dismiss this action on Colorado River grounds. The positions advanced by Defendants in that motion arguably contradict Defendants' current attempt to defeat Iacovacci's motion to dismiss.

states a claim for misappropriation of trade secrets under New York law." ExpertConnect, LLC v. Fowler, 2019 WL 3004161, at *7 (S.D.N.Y. July 10, 2019). "[D]istrict courts often rely on cases discussing misappropriation under New York law to analyze DTSA claims." ExpertConnect, 2019 WL 3004161, at *4 n.1.

    A.  <u>Possession of Trade Secrets</u>

The DTSA defines "trade secret" to include "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes," so long as: (1) "the owner thereof has taken reasonable measures to keep such information secret"; and (2) "the information derives independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3). Although there is "no heightened pleading requirement on actions brought under the DTSA," Tesla Wall Sys., LLC v. Related Cos., L.P., 2017 WL 6507110, at *10 (S.D.N.Y. Dec. 18, 2017), "district courts in this circuit routinely require that plaintiffs plead their trade secrets with sufficient specificity to inform the defendants of what they are alleged to have misappropriated." Medidata Sol., Inc. v. Veeva Sys. Inc., 2018 WL 6173349, at *3 (S.D.N.Y. Nov. 26, 2018).

New York courts consider the following factors in determining whether information qualifies as a trade secret:

> (1) the extent to which the information is known outside of [the] business; (2) the extent to which it is known by employees and others involved in [the] business; (3) the extent of measures taken by [the business] to guard the secrecy of the information; (4) the value of the information to [the business] and to [its] competitors; (5) the amount of effort or money expended by [the business] in

>developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc., 920 F.2d 171, 173 (2d Cir. 1990) (citation omitted).[4]  "These factors are guideposts, not elements, and it is not necessary to plead every single factor to state a claim."  LivePerson, Inc. v. 24/7 Customer, Inc., 83 F. Supp. 3d 501, 514 (S.D.N.Y. 2015).

Here, Defendants allege that the purportedly misappropriated trade secrets include: (1) non-public sourcing information for over 2,000 clients; (2) business-specific non-disclosure agreements; and (3) certain specifically identified documents, such as "Brevet's Direct Lending Presentation," "Brevet's Valuation Methodology, Principles and Procedures," "Brevet's Deal Scoring Template," and "Brevet's Underwriting and Closing Guidelines."  (Am. Countercls. ¶¶ 18, 49–53.)  Although Iacovacci contends that the above materials are "a hodgepodge of generic categories of routine information," (Mem. of Law in Supp. of Pl.'s Mot. to Dismiss, ECF No. 117, at 22 n.5), these types of documents and information can constitute trade secrets.  See, e.g., N. Atl. Instruments, Inc., 188 F.3d at 44 ("A customer list developed by a business through substantial effort and kept in confidence may be treated as a trade secret . . . ." (quotation marks omitted)); Medidata Sol., Inc., 2018 WL 6173349, at *3 ("The Complaint sufficiently identifies the trade secrets at issue. It specifies numerous specific categories of information relating to its software, marketing and business plans."); Tesla Wall Sys., 2017 WL 6507110, at *10 ("Tesla's complaint . . . pleads numerous specific categories of [trade secret] information, such as 'technical data, internal pricing information, work product, research, engineering designs,' etc.").

---

[4]     As Defendants observe in their opposition, at least one court in this district has foregone a formal assessment of the six factors in finding that a complaint plausibly stated claims for misappropriation under the DTSA and New York law.  See ExpertConnect, 2019 WL 3004161, at *4–7.

An assessment of the above six factors bolsters the conclusion that Defendants have adequately pled trade secrets.  For example, Defendants claim that the allegedly misappropriated sourcing network contained "non-public information," (Am. Countercls. ¶ 16), to which not even Iacovacci had complete access, (Am. Countercls. ¶ 20 ("[A]s a Managing Director of BCM and Member of the LLCs, [Iacovacci] was entrusted with access to some, but not all, of this information.")).  Defendants took steps to protect the putative trade secrets by using—among other things—a "firewall" and "log-in and password protect[ion]."  (Am. Countercls. ¶ 19.)  Moreover, Defendants represent that they "expended considerable resources, both financial and in personnel time, developing this non-public information," which is an "extremely valuable asset[] of the company."  (Am. Countercls. ¶¶ 16–17.)  These claims are sufficient to defeat a motion to dismiss.  See, e.g., Medidata Sols., Inc., 2018 WL 6173349, at *4 ("The Complaint plausibly alleges that the trade secrets derive independent economic value from being kept secret. The Complaint alleges that Medidata spent a great deal of time and money, $500 million, developing its technology, [and] that Medidata went to great lengths to protect its confidential business information."); Bancorp Servs., LLC v. Am. Gen. Life Ins. Co., 2016 WL 4916969, at *11 (S.D.N.Y. Feb. 11, 2016) (plaintiff adequately pled trade secret where "it ha[d] a proprietary accounting methodology" that it "took measures to guard" and "spent five years and $10 million to develop").

B. Misappropriation

Defendants adequately allege misappropriation by Iacovacci.  Defendants allege that Iacovacci stole Brevet's sourcing network information and forwarded several documents to his personal email and disseminated them.  (Am. Countercls. ¶¶ 49, 52.)  Defendants also allege that Iacovacci modified other Brevet documents, ostensibly for his own use.  (Am. Countercls. ¶

17

53.) Additionally, Defendants claim that Iacovacci attempted to execute business transactions using Defendants' trade secrets. (Am. Countercls. ¶¶ 41, 140). Again, these allegations are sufficient at this stage. See Medidata Sols., Inc., 2018 WL 6173349, at *4 (finding that complaint sufficiently alleged misappropriation where defendant employees allegedly "sent documents containing trade secrets to their personal emails"); AUA Private Equity Partners, LLC v. Soto, 2018 WL 1684339, at *7 (S.D.N.Y. Apr. 5, 2018) (concluding that complaint plausibly alleged misappropriation under DTSA where defendant was "alleged to have uploaded AUA trade secrets from her work laptop to her personal cloud-based storage without AUA's permission and in direct violation of the confidentiality agreements that she signed").

Iacovacci counters that the DTSA counterclaim should be dismissed because Defendants only allege acts of misappropriation occurring before the statute's enactment. Critically, the DTSA only applies to acts of misappropriation occurring on or after its enactment on May 11, 2016. Tesla Wall Sys., 2017 WL 6507110, at *10. Yet, Defendants specifically allege that "Iacovacci's unlawful activity continued up until his termination on October 14, 2016." (Am. Countercls. ¶ 45.) Iacovacci maintains that this allegation is conclusory, as it fails to specify what "unlawful activity" he committed post-May 2016. To support his point, Iacovacci relies on out-of-circuit case law holding that absent "facts about when post-enactment use occurred . . . [a] plaintiff has failed to state a claim under the DTSA." Cave Consulting Grp., Inc. v. Truven Health Analytics Inc., 2017 WL 1436044, at *5 (N.D. Cal. Apr. 24, 2017). The problem for Iacovacci, however, is that courts within this circuit have suggested otherwise. See Tesla Wall Sys., 2017 WL 6507110, at *10 ("Tesla clearly alleges that 'Defendants' misappropriation of Tesla's trade secrets is ongoing.'"); Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc., 2016 WL 5338550, at *6 (S.D.N.Y. Sept. 23, 2016) ("[A]s

18

[d]efendants allege that Syntel continues to use its Intellectual Property to directly compete with [defendants], the wrongful act continues to occur after the date of the enactment of DTSA."); but see Zirvi v. Flatley, 2020 WL 208820, at *9 n.9 (S.D.N.Y. Jan. 14, 2020) (favorably citing Cave Consulting Grp. and dismissing DTSA claim where "there [were] no plausible allegations that any relevant pre-enactment conduct continued after May 11, 2016"). Given that Defendants allege Iacovacci's misappropriation continued until his termination in October 2016, this Court concludes that Defendants have adequately pled their DTSA counterclaim.

## CONCLUSION

For the foregoing reasons, Iacovacci's motion to dismiss is denied. The Clerk of Court is directed to terminate the motion pending at ECF No. 115.

Dated: February 3, 2020
New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.