September 17, 2020

**By ECF**

The Honorable William H. Pauley III
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street, Room 1920
New York, NY 10007

                Re:  *Iacovacci v. Brevet Holdings, LLC et al.*, No. 18-cv-8048-WHP

Dear Judge Pauley:

      Pursuant to the Court's Individual Practices, the parties write jointly to inform the Court that they have been unable to reach agreement regarding the identified categories of documents for which Plaintiff has proposed that Defendants conduct targeted searches.

**Plaintiff's Position**

      Consistent with the Court's instructions at the August 4 conference (Tr. 37-38), Plaintiff has conferred with Defendants regarding categories of targeted document searches to be conducted as a supplement to Defendants' keyword searches of their documents under the operative Joint Document Search Protocol (Dkt. 162-1). Specifically, Plaintiff asked Defendants to investigate whether they have specific locations where they keep key categories of targeted material relevant to key aspects of the parties' claims and defenses, to ascertain what burden, if any, is associated with collecting documents from such locations. Since the August 4 conference, Defendants have strung the process along and refused even to investigate whether they can identify locations where they keep these relevant categories of documents.

      The categories of documents Plaintiff seeks through targeted searches involve relevant materials pertaining to (i) Plaintiff's employment with and departure from Brevet; (ii) Brevet's hacking of Plaintiff's computer and electronic devices; (iii) Brevet's contentions that certain documents have proprietary or trade-secret status; (iv) Brevet's purported "regulatory compliance" justification for their hacking; and (v) financial information relevant to Brevet's motives for wrongfully terminating Plaintiff. For example, Plaintiff has asked Defendants to investigate whether they have identified locations where they keep the following relevant materials, among other categories:

- Minutes, resolutions, memoranda or formal communications regarding Plaintiff's withdrawal or departure from Brevet, retirement, purported just discharge or lawsuit.

- Records of Brevet's remote access or monitoring of Plaintiff's non-Brevet email accounts, LogMeIn account, and home computer (Dell OptiPlex) or other electronic devices and storage devices.

- Brevet's Trade Secret Policies and Procedures, including any notification to, training of, or acknowledgement by Brevet's employees concerning such policies.

If Brevet keeps such documents in identifiable locations, documents from those locations should be collected and produced as part of the document discovery process. Defendants should not have any issue answering the straightforward question of whether they can identify such locations as a part of the good-faith process of discovery meet-and-confer. Yet for more than a month now, Defendants have avoided answering this basic question.

Targeted document searches are likely to be an important and appropriate supplement to Defendants' keyword searches to locate key evidence, including because keyword searches can be "under-inclusive in light of the inherent malleability and ambiguity of spoken and written English." *Sedona Conf. Best Practices Commentary*, 8 SEDONA CONF. J. 189, 201 (2007). For example, Defendants use a "Global Relay" computer system, and reports from that system are likely relevant to the computer hacking and monitoring issues in this case—but the keyword search process may not adequately capture such reports. Defendants, however, should be able to identify and produce such reports with minimal burden through targeted searches. However, Defendants' cooperation in stating whether they can locate such targeted categories is essential—and Defendants have simply refused to provide that basic level of cooperation.

Plaintiff has also asked Defendants to answer, at the very least, for any categories they refuse to investigate, their substantive reasons for refusing to do so. Defendants have refused to engage with Plaintiff's targeted categories even on that level. Instead, Defendants have referred broadly to their prior formulaic objections to the underlying document requests. But those objections, such as that an underlying request was "duplicative" or "vague," often do not apply to the targeted search categories and do not illuminate why Defendants would refuse to investigate. Defendants criticize Plaintiff for posing these targeted search requests "late" in the discovery process—but Plaintiff posed the search categories in early June and promptly followed up with supplemental discovery requests to avoid any debate about whether these categories of documents had been formally requested—all well before the Court instructed the parties to meet and confer about these categories at the August 4 conference, and well in advance of the document discovery cutoff. Defendants further criticize Plaintiff for not narrowing its proposed list of targeted search categories even further, but that criticism is misplaced, as the meet-and-confer history demonstrates and as summarized below.

Following the Court's instruction at the August 4, 2020, conference that the parties meet and confer concerning Plaintiff's proposed targeted searches, Plaintiff contacted Defendants that same day to schedule a call. Defendants demanded, prior to any meet and confer, that Plaintiff provide Defendants a "matrix" showing the underlying document demands that covered Plaintiff's requests for the targeted materials. Explaining that we were certainly willing to provide such a matrix, we also explained that we were "hopeful that the process of meeting and conferring over targeted searches was for purposes of discussing the level of burden in targeting each of these categories," consistent with the Court's remarks at the conference. Ex. 4 at 4. Defendants indicated that they would not engage without a matrix. *Id.* at 2-3. To avoid needless dispute, Plaintiff promptly provided one. *Id.* at 1-2.

Defendants were not prepared to discuss Plaintiff's proposed targeted searches on the parties' scheduled August 10 meet and confer, but on a follow-up call later that day, the parties discussed a general process for targeted searches, whereby Defendants would ask the individuals with relevant knowledge at Brevet to identify locations where the identified categories of documents exist, to evaluate any undue burden in collecting and producing the responsive, non-

privileged documents from those locations. With the benefit of that information, the parties would then seek to address any such burden claims collaboratively, including by revising, narrowing, or removing targeted search categories as appropriate.

On August 13, Plaintiff provided, at Defendants' request, a revised list of proposed targeted search categories, redrafted from its June 5 list to reflect that Plaintiff was seeking to identify whether for any given specifically targeted category of documents, there is a location within Brevet where the enumerated category of documents would likely exist. Ex. 2. Plaintiff's revised proposed targeted searches are considerably narrowed, eliminating requests for "All documents related to" or "All documents concerning" various issues, "All training and guidance," "All policies and procedures," and so forth, instead seeking discrete categories of documents Plaintiff reasonably expects may be found in readily identifiable locations.

Exhibit 3 illustrates Plaintiff's narrowing of its original targeted search proposal.

Despite Defendants' representations that they would confer with their client as to whether the documents requested exist in identifiable locations, one month later, Defendants have backtracked and refused to take that basic step for nearly all of the categories Plaintiff has identified, necessitating the Court's intervention.

In addition to refusing to identify whether locations exist in order to assess burden claims, there are several categories where Brevet has not claimed burden but has simply refused to produce the requested information irrespective of burden. Brevet's refusals are unwarranted, and Brevet should be directed to produce the requested information:

- Defendants refuse to conduct targeted searches for organizational and financial documents on the grounds that they are irrelevant. But those documents are plainly relevant, including to show Defendants' motives for hacking Plaintiff's home computer to find a pretextual basis to wrongfully terminate him in order to avoid paying him the significant amounts he was otherwise owed. (While this information is subject to ongoing motion practice in the state court action, Index No. 158725/2016, it is also subject to discovery in the instant action since it is relevant to Plaintiff's federal claims.)

- Defendants have refused to identify anyone at Brevet who was responsible for analyzing Brevet's regulatory compliance program, other than its Chief Compliance Officer, on the grounds that the request is "not targeted." Ex. 5 at 4. There is no reason to believe, however, that responsibility for analyzing Brevet's regulatory compliance program was so diffuse that the identification of responsible individuals is not a targeted request.

- With respect to Brevet's Form ADVs and Form PFs, Defendants have stated that they "have produced what we are willing to produce," but when asked to identify what they are withholding, merely referred back to objections and responses which do not answer that question.

Defendants' intransigence is undermining the meet and confer process.[1] The information Plaintiff has been seeking would plainly facilitate the process by informing any claim of burden.

---

[1] In addition to evading Plaintiff's basic questions as to these targeted search categories, Defendants have also been avoiding disclosing the Noncustodial and Custodial document

3

Defendants, however, have refused even to investigate what, if any, burden would be associated with conducting Plaintiff's requested targeted searches. Plaintiff respectfully requests that the Court direct Defendants to investigate whether they maintain specific locations of documents responsive to each of Plaintiff's targeted search requests set forth in Exhibit 1 hereto.

**Defendants' Position**

The justification proffered by Plaintiff for the belated addition of 27 additional categories of documents for "targeted collection" — after the parties had negotiated search terms for months — was supposedly to help to identify specific collections of documents that might not otherwise be included in the locations searched or might not be captured by the application of the search terms.  However, that explanation did not justify the sweeping categories proposed by Plaintiff in June (Ex. D-1), and does not justify either Plaintiff's August 13 proposal (Ex. D-2) or its most recent version, proffered on September 16 (Ex. 1).  Though Exhibit 1 seems to remove some categories from the August 13 version, including the categories about which Plaintiff complains at p.3 above, those that remain are still not narrowly focused, as Defendants have repeatedly requested.  (To the extent Plaintiff seeks some sort of action from the Court with respect to those categories not in Exhibit 1, we note that Defendants have already produced some of the requested information and have asserted objections to producing more, and that the issue of further financial discovery has been fully briefed and will be heard in the state court action on September 22.)  In addition to refusing to narrow the additional categories, Plaintiff is simply attempting to end-run proper discovery procedures by ignoring both the production Defendants have already made (and agreed to make) and the objections Defendants have asserted to the discovery requests that supposedly support these categories.

First, most of Plaintiff's categories cannot properly be viewed as targeted.  During the August 4 status conference, the Court expressed skepticism about whether the categories were actually targeted.  *See* ECF 162-2, Tr. 3:16-4:2. Though the Court declined to do a piece-by-piece analysis of all of Plaintiff's 27 additional categories, it was plain that many of Plaintiff's categories were of the same type:  broad, all-encompassing, not targeted, and nowhere taking into account what has previously been produced.

Pursuant to the Court's direction that the parties meet & confer over these categories, Defendants proposed to Plaintiff during the parties' August 10 telephone call that *if* Plaintiff's counsel would narrow the additional categories to specific targeted requests, Defendants' counsel could then consider whether to ask individuals with relevant knowledge to identify locations that might hold documents covered by those redrafted requests.  The important elements of this proposal were (i) Plaintiff would prepare new, narrowly-focused requests for documents, taking into account

---

locations they are required to identify under the operative Joint Document Search Protocol. *See* Dkt. 162-1 at 1-2 (listing locations Defendants are required to identify); Dkt. 163 (Court's endorsement); Ex. 5 at 4 (Sept. 4: "We do not intend to provide piecemeal responses on this. When we have a complete identification of the locations from which material has been collected, we will provide it to you."). Defendants were instructed to collect from these sources at the August 4 conference—and should have been investigating and collecting from them much earlier than that. Defendants' continued failure to identify such locations raises serious concerns about the status of Defendants' document discovery.

4

what Defendants had already produced or would be producing in response to the massive number and scope of search terms; and (ii) Defendants would consider those requests to the extent that they might lead to documents that would not reasonably be expected to be covered by the search terms that the parties had already negotiated and submitted to the Court.

Defendants' counsel also explained that any agreement would have to resolve all of the pending disputes, *i.e.*, that Defendants were not willing to agree to a subset of Plaintiff's additional requests unless Plaintiff was willing to reframe all of the requests as narrow, targeted categories. Defendants' counsel understood Plaintiff's counsel to have accepted this suggestion during the August 10 meet and confer, until Plaintiff backtracked and then mischaracterized the parties' discussions in Plaintiff's one-sided "joint" letter to the Court on August 12, 2020.  *See* ECF No. 162 at 1 (Plaintiff "separate report[]").

Subsequently, Plaintiff sent what Plaintiff described as "a subset of the categories from the proposed [June 5] protocol." Ex. D-3.  However, instead of reframing the categories as focused, targeted descriptions (as the parties had discussed), and instead of doing the work of seeing what Defendants had already produced, the "updated" categories were and are simply reiterations of the same overbroad categories that Plaintiff had propounded in June.

To take just one example, in the June 5 Protocol (Ex. D-1), Plaintiff propounded the category:

> All documents related to Brevet's monitoring of other Brevet employees' or members' electronic communications or devices from 2009 to the present, including any Global Relay reports reflecting such monitoring, and all records relating to the purchase of home-use computers for any Brevet employees from 2009 to the present.

*Id.* at 12.

In the "updated" August 13 and September 16 proposals, Plaintiff included substantively the **same request**:

> Records of Brevet's monitoring of other Brevet employees' or members' electronic communications or devices: (i) Global Relay reports reflecting such monitoring, and (ii) records relating to the purchase of home-use computers for any Brevet employees.

Ex. D-2, Category 2f; Ex. 1, Category 2e.

Neither the former nor the "revised" versions of this category could be described as targeted; they are both significantly overbroad.  Moreover, Plaintiff offers no explanation as to why this category would locate documents not already captured by the parties' search terms.  It seems apparent that Plaintiff is not content with the search terms he accepted and simply wants to expand Defendants' obligations beyond the agreed-upon scope.

Further demonstrating that this category is not a "targeted" request is that it essentially repeats verbatim Plaintiff's document request 119, which seeks: "All reports (including Global Relay reports) reflecting Brevet's monitoring, observing, viewing, checking, or tracking of other Brevet employees' or members' electronic communications or devices from 2009 to the present, and all records relating to the purchase of home-use computers for any Brevet employees from 2009 to

5

the present." Ex. D-4 (Dfts' R&Os to Pltf's 5th RFPs) at 15.  The artful deletion of the word "all" does not convert this to a targeted search.

In fact, most of these broad categories are already embraced by discovery requests propounded by Plaintiff, to which Defendants have duly responded and/or objected.  In many instances, Defendants have already produced responsive, relevant documents.  To the extent Defendants have produced responsive material, or agreed to do so through the search term protocol, there is no grounds upon which to impose further production obligations.

Defendants can hardly be expected to agree to produce, under the guise of "targeted" searches, categories of documents as to which they have already asserted objections (including objections to Plaintiff's Fifth Set of Requests, which were served *after* Plaintiff's June 5 draft protocol containing the "additional categories").  The Court emphasized at the August 4 conference the importance of proper discovery procedures when it asked whether Plaintiff had "previously communicated its desire for these documents in a discovery request." Tr. 35:21-24.  Though Plaintiff responded that "these categories corresponded to several requests that [Plaintiff] made" (Tr. 36:7-12), that response was inaccurate:  Plaintiff only served discovery requests that would embrace a number of these categories — including *all* of the categories in Plaintiff's Financial Information section — *after* the June 5 draft protocol.

Even Plaintiff acknowledges this, based on the matrix that Plaintiff provided to Defendants — the same matrix which Plaintiff represented to the Court it *already* had and which this Court asked Plaintiff to provide (Tr. 36:7-12, 36:25-37:2). That matrix shows that seven out of twenty-seven categories were served as document requests only from Plaintiff's Fifth Set of RFPs (which range from nos. 109 to 122).  *See* Ex. 4 at 1-2 (Aug. 7 email, 11:17 a.m.).  Though Plaintiff has now removed many of the categories of documents that corresponded to the Plaintiff's 5th RFPs (*e.g.*, the LLC Agreements), Defendants submit that at least three more categories were captured solely by the Fifth Set of RFPs and none prior, *i.e.*, item 4 under Computer Infiltration Materials, items 3 & 5 under Regulatory Compliance.  *See also* Ex. 1, Categories 2e, 4c & 4e.

To the extent Defendants have asserted objections to the additional categories, the ordinary procedure would require Plaintiff to address those objections before pressing for responsive documents.  It is inappropriate to simply repeat these requests, cloaked as categories to *supplement* search terms, without even acknowledging Defendants' position.

Defendants submit that Plaintiff's repeated refusal to narrow the "additional categories" and continued insistence on overly broad, open-ended discovery requests, without regard to what has already been produced and what will be produced through the agreed-upon search terms, and without seeking to address or overcome Defendants' objections to the underlying requests, warrants rejection of Plaintiff's application.  While Defendants remain willing to consider reasonable requests for specific documents that might not be identified or produced under the joint search protocol, the categories as suggested thus far by Plaintiff do not meet that standard and should be rejected.

Respectfully,

| | |
|---|---|
| */s/ Jason Cyrulnik* | */s/ Colin A. Underwood* |
| Jason Cyrulnik<br>ROCHE CYRULNIK FREEDMAN LLP<br>99 Park Avenue, Suite 1910<br>New York, New York 10016<br>(646) 970-7512<br>jcyrulnik@rcfllp.com | Colin A. Underwood<br>REED SMITH LLP<br>599 Lexington Avenue<br>New York, NY 10022-7650<br>(212) 549-0418<br>cunderwood@reedsmith.com |

cc: Counsel of record (by e-filing)