UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL IACOVACCI,<br><br>          Plaintiff,<br><br>  v.<br><br>BREVET HOLDINGS, LLC, *et al.*,<br>           Defendants. | Case No. 1:18-cv-08048-WHP |

## **<u>Reply Declaration of David J. Cibrian</u>**

  I, David J. Cibrian, hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that:

  1. I submit this reply declaration in further support of the motion to quash the subpoena ad testificandum for my deposition in this matter.

  2. Mr. Iacovacci states that I "was a regular participant in Brevet's weekly meetings, where [he] presented updates on [his] work sourcing transactions for Brevet's transactions for Brevet's short duration loan business." (Iacovacci Decl. [Docket No. 178] ¶ 2.) Although I did attend weekly meetings, I have no detailed recollection of Mr. Iacovacci's specific activities with respect to "Brevet's short duration loan business." As stated in my first affirmation, I had no direct relationship with or responsibility over Mr. Iacovacci. (Cibrian Decl. [Dkt. No. 172] ¶ 2), and thus no reason to track or follow his activities.

  3. Mr. Iacovacci states that he "expects" that I have "personal knowledge of Brevet's practices and policies with respect to monitoring electronic devices and employee accounts". (Iacovacci Decl. ¶ 3.) That statement is misleading: I do not have any knowledge of Brevet's practices and policies beyond what is stated in the written manuals and policies that

1

Brevet provides all employees. I was not involved in developing, implementing, monitoring or reviewing any practices or procedures with respect to electronic devices and employee accounts, and there is nothing that I have to contribute on that subject.

4. Mr. Iacovacci states that he "expects" that I have "personal knowledge of … Brevet's practices with respect to its regulatory compliance". (*Id.*) This is also misleading. I have no unique knowledge of regulatory compliance policies beyond the general policies stated in writing for all Brevet employees. Although regulatory compliance is an important area for all financial sector companies, I had no particular responsibility for Brevet's policies and practices in this area and I was not a member of or had any supervisory authority over the legal or compliance departments at Brevet.

5. Mr. Iacovacci further "expects" that I have "personal knowledge of … [his] role and work at Brevet, and [his] performance during the time that Defendants now claim [he] was underperforming and purportedly disloyal; and the ways in which Defendants described [his] work and performance both before and after terminating [his] employment." (*Id.*) This is not correct. As stated in my initial declaration, I was personally acquainted with Mr. Iacovacci, but I had no direct reporting relationship with him or responsibility over him. (Cibrian Decl. ¶ 2.) Nor was I involved with or have any first-hand knowledge of the facts concerning his work performance or termination, including Brevet's response to Mr. Iacovacci's allegations after his termination. (*Id.* ¶ 3.) I had no discussions or communications of any kind with others at Brevet concerning the decision to terminate him, the reasons for terminating him, or any actions taken in connection with that termination.

6. Mr. Iacovacci also states that I have "first-hand knowledge of [his] work performance, including the volume and quality of the transactions [he] sourced for Brevet", and

that I have "knowledge of how the various individual defendants communicated about [his] performance, both before [he] indicated [his] desire to retire, during the separation process, and after [he] was wrongfully terminated." (Iacovacci Decl. ¶ 4.) Again, this is not correct. Because I had no responsibility for Mr. Iacovacci or his work, I have no unique knowledge or recollection concerning his activities, and no one communicated with me concerning his performance or his termination. I was only generally aware of his sourcing activities and certain transactions that he attempted to bring to the firm. Put simply, I have no independent information of relevance to Mr. Iacovacci's termination or of his work performance.

7. Mr. Iacovacci states that I "was also aware of the regulatory compliance practices at Brevet, including purported regulatory practices and procedures that governed monitoring of executive devices (including [mine]." (Iacovacci Decl. ¶ 5.) This is misleading. All Brevet employees understood that Brevet has recordkeeping and reporting obligations, and that information stored on work devices such as computers would be kept by and could be accessed by Brevet. That is as far as my recollection extends, however. I was not responsible for regulatory compliance or information technology at Brevet; nor was I responsible for the "regulatory practices and procedures that governed monitoring of executive devices." I thus have no firsthand knowledge of these issues beyond what was stated to all employees.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Dated: Longboat Key, Florida
October 19, 2020

_____
DAVID J. CIBRIAN