

Reed Smith LLP
599 Lexington Avenue
New York, NY 10022-7650
+1 212 521 5400
Fax +1 212 521 5450
reedsmith.com

**Louis M. Solomon**
Direct Phone: +1 212 549 0400
Email: lsolomon@reedsmith.com

January 4, 2022

**Via ECF**

The Honorable Mary Kay Vyskocil
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

**Re:** *Iacovacci v. Brevet Holdings, LLC, et al.*, 18-cv-08048

Dear Judge Vyskocil:

All Defendants ("Brevet" or "Defendants") respectfully submit this pre-motion letter in accordance with the Court's Individual Civil Practice Rule 4(A)(i) to request a pre-motion conference for Brevet's motion to exclude the reports of Plaintiff Paul Iacovacci's ("Iacovacci") purported experts Erik Rasmussen, Jane Jarcho, and Neil Librock as inadmissible under Federal Rule of Evidence 702; *Daubert v. Merrell Dow Pharm., Inc.*, and its progeny. Brevet will bring this motion in conjunction with its anticipated Motion for Summary Judgment. *See Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 68 (S.D.N.Y. 2001) (where "a proffer of expert testimony is excluded as inadmissible pursuant to FRE 702, the court must make the summary judgment determination on a record that does not include that evidence."); ECF Nos. 242-245, 250-254. Iacovacci does not consent to Brevet's Daubert Motion.

### Background

Rasmussen offered the opinion that the Dell Optiplex Computer provided by Brevet for Iacovacci's use at home (the "Computer") was a personal device (Rasmussen Rpt. ¶ 8); Jarcho offered opinions responding to Brevet's expert Ken Joseph's opinions concerning SEC regulatory and compliance issues (Jarcho Rpt. at 3); and Librock offered opinions on the trade secrets that Iacovacci misappropriated from Brevet prior to his termination (Librock Rpt. ¶ 8).

### Summary of Proposed Motion

Witness qualifications are a "threshold matter" to be determined before reaching the testimony itself. *Vale v. United States*, 673 F. App'x 114, 116 (2d Cir. 2016). Under FRE 702, "the party seeking to admit expert testimony must show by a preponderance of the evidence that: (i) the expert is qualified, (ii) the testimony is based on sufficient data, (iii) the testimony is the product of reliable methods reliably applied, and (iv) the testimony is relevant and will assist the jury." *In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig.*, 341 F. Supp. 3d 213, 239-40 (S.D.N.Y. 2018), *aff'd*, 982 F.3d 113 (2d Cir. 2020). Further, expert testimony must meet "exacting standards of reliability" (*Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000)), and is "inadmissible as unreliable where it

The Honorable Mary Kay Vyskocil  
January 4, 2022
Page 2

consists of conclusory and speculative opinions, or where it lacks foundation." *Vale*, 673 F. App'x at 116.

As explained below, Iacovacci's experts fall short of this standard because they are not qualified to opine on the subjects they purport to be experts in, and the opinions they offer are not the product of any reliable methodology.

**Rasmussen**

Rasmussen is not qualified to opine on the purported personal nature of the Computer:

- Rasmussen has never before been called or qualified as an expert to offer a similar opinion. Rasmussen Dep. 38:12-56:16, 48:23-49:6.
- Rasmussen admitted that it was uncommon at his current job to determine "whether a computer is a personal computer or a business computer." *Id.* 17:15-18.
- Rasmussen has never taken any classes on computer science, and has no experience in dealing with the personal nature of computers. *Id.* 23:4-26:22, 30:2-20, 30:21-31:1, 33:7-34:9, 35:6-11, 36:1-37:16.

Rasmussen's report should be excluded because his opinion is not the product of reliable methodology. Contrary to the findings in his report, Rasmussen admitted that:

- When Brevet gave Iacovacci the Computer, Brevet repossessed the previous computer issued by Brevet that Iacovacci had been using at home. Rasmussen Dep. 68:15-69:6.
- Brevet always had access to the Computer. *Id.* 71:2-72:14, 73:1-74:6.
- Many of the digital artifacts that Rasmussen identified as "overwhelmingly personal" in his report also have a business purpose. *Id.* 88:12-94:15.
- He never spoke to Iacovacci, never asked Iacovacci about his use of the computer and never asked Iacovacci's family members about their use of the Computer. *Id.* 69:10-13, 86:7-88:11.
- Iacovacci did not breach any of Brevet's computer policies or procedures in his use of the Computer and his use of the Computer was consistent with Brevet's policies. *Id.* 139:8-141:1.

**Jarcho**

Jarcho's rebuttal opinions on whether Brevet's actions were consistent with its regulatory obligations owed to the SEC and under the Investment Advisers Act of 1940 (the "Act") should be excluded because they are not the product of reliable methodology:

- While Jarcho opined on Brevet's regulatory obligations to retain the documents on the Computer based on the nature of those documents, she did not review any of the documents to reach her conclusions. Jarcho Dep. 74:21-75:1.
- While Jarcho opined that Brevet had no regulatory obligation to retain any records on the Computer, she only considered the Books and Records provision of the Act and failed to take into account other provisions of the Act. *Id.* 69:7-12

The Honorable Mary Kay Vyskocil  
January 4, 2022
Page 3

- While Jarcho opined that Brevet purportedly "should have known" the limited nature of the documents contained on the Computer, she failed to examine even one of those documents and failed to take into account the scope of Iacovacci's responsibilities at Brevet. *Id.* 74:21-75:1; 80:13-81:15.
- While Jarcho purported to offer expert testimony on Brevet's affirmative defense relating to the interrelationship between the Act and Iacovacci's claims under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C), she admitted that she had no expertise in the CFAA and was not offering a legal opinion on whether the Act provides an affirmative defense under the CFAA. *Id.* 102:18-103:11.

**Librock**

Librock is not qualified to opine on Brevet's trade secrets:

- Librock did not recall being involved with trade secrets in his prior experience in the consumer lending industry. Librock Dep. 61:5-18
- Librock has never been engaged as an expert on issues of confidentiality. *Id.* 61:24-62:10.
- Librock has never worked at, or on behalf of, a hedge fund or a "private fund." *Id.* 64:24-65:7, 66:2-4.
- Librock has no knowledge of the issues faced by an entity trying to identify qualified investors to invest in a limited offering. *Id.* 70:13-19.
- Librock has no personal experience with EB-5 loans and cannot say whether Brevet's transaction documents for EB-5 loans are, or are not, unique. *Id.* 81:2-17, 83:18-23.

Librock's report is not the product of reliable methodology:

- Librock did not research the value of the information that Brevet claims are trade secrets. Librock Dep. 78:11-18.
- Librock did not collect other sources that contain the same information that Brevet considers trade secrets, and could not identify publicly available information that duplicated the information in Brevet's documents. *Id.* 86:19-87:10, 89:13-21, 90:11-18.
- Librock did not compare Brevet's policies and procedures to those of other hedge funds. *Id.* 118:9-22.
- Librock did not review Brevet's valuation methodology or loan documents. *Id.* 128:5-12, 130:16-131:1.

Very truly yours,


/s/ Louis M. Solomon
Louis M. Solomon