```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:_____         │
│ DATE FILED:___2/23/2022____          │
└─────────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PAUL IACOVACCI,

                          Plaintiff,

                -against-

BREVET HOLDINGS, LLC et al.,

                        Defendants.

1:18-cv-08048-MKV

ORDER ON DISCOVERY DISPUTES

MARY KAY VYSKOCIL, United States District Judge:

       A post-discovery conference was scheduled for this matter on January 11, 2022.  In anticipation of that conference, the parties filed, on December 10, 2021, a joint status letter. (December 10 Letter [ECF No. 240]).  In that letter, Plaintiff asserted, for the first time, that several discovery items remained unresolved between the parties.  Plaintiff had not raised any of these issues with the Court prior to the close of fact discovery in this case on October 7, 2021, or the December 3, 2021 expert discovery cutoff.  [ECF No. 233].

       During the telephonic post-discovery conference, the Court instructed the parties to file a joint letter with respect to any unresolved discovery disputes.  [ECF No. 262].  The parties filed that letter on January 19, 2022, (Jt. Ltr. [ECF No. 267]), and with it, an application to keep under seal an exhibit attached to that letter, [ECF No. 266].  Plaintiff asserts that two discovery requests remain outstanding: (1) Plaintiff's request for the materials from an investigation that Plaintiff contends was conducted by the law firm Greenberg Traurig on behalf of Defendants into Plaintiff's alleged misappropriation of trade secrets; and (2) Plaintiff's request that its expert be allowed to examine the configuration of two of Defendants' work computers.

## I.     Greenberg Traurig Investigation

Plaintiff first requests that Defendants produce materials from an investigation conducted by the law firm Greenberg Traurig on behalf of Defendants into Plaintiff's alleged misappropriation of trade secrets (the "Greenberg Traurig Investigation").  (Jt. Ltr. at 2). Plaintiff contends that the materials from this investigation were put into issue by Doug Monticciolo, the founder and CEO of Defendant Brevet Holdings, LLC, when he testified about them at his deposition and that therefore, Defendants cannot assert that these materials are privileged.  (Jt. Ltr. at 2).  Plaintiff argues that Defendants cannot both assert that the contents of these materials are subject to attorney client privilege, while also using them to bolster Defendants' assertions that Plaintiff misappropriated trade secrets.  (Jt. Ltr. at 2).

A district court has broad discretion in deciding whether to re-open discovery.  *Forte v. City of New York*, No. 16-CV-560 (VSB), 2021 WL 878559, at *2 (S.D.N.Y. Mar. 8, 2021); *Tatintsian v. Vorotyntsev*, No. 1:16-CV-7203-GHW, 2021 WL 780139, at *4 (S.D.N.Y. Jan. 27, 2021) ("A district court has broad discretion in deciding whether good cause exists to amend the scheduling order and reopen discovery."  (quoting *Young v. Sw. Airlines Co.*, No. 14-cv-1940 (LDH)(RLM), 2016 WL 3257008, at *2 (E.D.N.Y. May 4, 2016)); *Krawec v. Kiewit Constructors Inc.*, No. 11 CIV. 0123 LAP, 2013 WL 1104414, at *8 (S.D.N.Y. Mar. 1, 2013) ("The decision to re-open discovery is within a district court's discretion.).  As a general rule, discovery should only be re-opened if the movant can show that "despite its having exercised diligence, the applicable deadline set in the court's scheduling order could not reasonably have been met."  *Forte*, 2021 WL 878559, at *2 (quoting *Tatintsian*, 2021 WL 780139, at *5); *Saray Dokum v. Madeni Aksam Sanayi Turizm A.S.*, 335 F.R.D. 50, 52 (S.D.N.Y. 2020) ("To satisfy the good cause standard 'the party must show that, despite its having exercised diligence, the

applicable deadline could not have been reasonably met.'" (quoting *Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp. 2d 527, 536 (E.D.N.Y. 2010)).  In addition, in deciding whether good cause exists to reopen discovery, courts may consider:

> the moving party's explanation for failing to comply with the scheduling order and diligence in seeking a modification to the schedule, the importance and relevance of the expert testimony to the case, whether the party seeking the additional discovery has had an adequate opportunity for discovery, prejudice to the party opposing the request, and imminence of trial.

*Forte*, 2021 WL 878559, at *2 (quoting *Rubik's Brand Ltd. v. Flambeau, Inc.*, 329 F.R.D. 55, 58 (S.D.N.Y. 2019)).

As a preliminary matter, Plaintiff does not explain in the joint letter why it waited until after the close of discovery to raise this issue with the Court.  At the post-discovery conference, Plaintiff asserted that the deposition where this "independent investigation" was first raised occurred in November, that Plaintiff promptly asked Defendants for the materials from this investigation at the deposition, and that Plaintiff then promptly notified the Court of Defendants failure to provide this material in the December 10 Letter.  (Post-Discovery Conference Transcript ("Tr.") [ECF No. 263] at 9:4–21).  However, the depositions cited to in the parties' joint letter occurred on October 7, 2021 and November 1, 2021.  [ECF No. 267-1, at 2, 13].  Plaintiffs therefore had well over a month to raise this issue with the Court.  In the Order dated August 17, 2021, in which this Court scheduled the deadlines for discovery and the Post-Discovery Conference, the Court directed that

> [s]hould any discovery disputes arise, the parties must meet and confer in an attempt to resolve the dispute.  If they cannot do so, the issue must be brought to the Court's attention well in advance of the fact discovery deadline.  The fact discovery deadline will not be extended to accommodate the resolution of discovery disputes.

[ECF No. 233].  Moreover, this Court's individual rules clearly state that

> parties should seek relief with respect to discovery in sufficient time
> to obtain a ruling and any further discovery that is ordered in
> advance of the discovery cutoff.  If a party waits until near the close
> of discovery to raise an issue that could have been raised earlier, the
> party is unlikely to be granted the relief that it seeks, let alone more
> time for discovery.

*See* Individual Rules, § 3(D).  As such, Plaintiff was clearly on notice that he was obligated to

raise this issue with the Court before discovery closed.  Plaintiff's request to re-open discovery is

therefore untimely and the Court denies Plaintiff's request for this reason.

Even were Plaintiff's request timely, Plaintiff is still not entitled to the relief he seeks.  In

the joint letter, Plaintiff represents that at the time of Mr. Monticciolo's deposition, Plaintiff's

"counsel immediately requested materials concerning the Greenberg investigation."  (Jt. Ltr. at

2).  However, Plaintiff does not provide a citation to where on the record he made this request

and, after a careful review of the transcript, it is clear that Plaintiff never made such a request.

Instead, Plaintiff merely requested that the "engagement letter with Greenberg Traurig" be

produced.  (Joint Letter Exhibit 1 ("Monticcilo Tr.") [ECF No. 267-1] 556:15–557–2).  Plaintiff

cannot make a new discovery request *after* the close of discovery.  Moreover, Defendants aver

that no such engagement letter exists and that they so advised Plaintiff.  (Jt. Ltr. at 5).  As such,

Plaintiff's request for production of the materials from the Greenberg Traurig investigation is

denied for this independent reason.

Finally, the Court has carefully reviewed the transcript of Mr. Monticciolo's deposition

and concludes that Mr. Monticciolo did not waive any privilege with respect to the Greenberg

Traurig investigation.  Plaintiff cites to two statements that Mr. Monticciolo made that Plaintiff

contends constituted a waiver of privilege.  First, Mr. Monticcilo testified in his deposition that

Defendants had hired Greenberg "to confirm the magnitude, the depth, the complexity, the

implications, the clarity of the theft and/or the regulatory violations."  (Jt. Ltr. 2).  Plaintiff also

cites to Mr. Monticciolo's testimony that Greenberg confirmed that Plaintiff committed "a material breach." (Jt. Ltr. 2).

However, in his deposition, Mr. Monticciolo did not bring up the Greenberg Traurig investigation in support of any contention that Plaintiff misappropriated assets at issue in Defendants' counterclaims in this Court and in the parallel state court action. Mr. Monticciolo's statement that Defendants hired Greenberg "to confirm the magnitude, the depth, the complexity, the implications, the clarity of the theft and/or the regulatory violations" was with respect to Defendants' decision to "terminate" Plaintiff, not in relation to any alleged misappropriation of information. (*See* Monticciolo Tr. 504:3–23). Defendants' decision to "terminate" Plaintiff is not at issue in this case because Plaintiff's Complaint in this case is confined to allegations of computer hacking, not any wrongful termination claim. (*See* Compl. [ECF No. 11]). Mr. Monteciollo's statement that "an independent investigation" confirmed that Plaintiff committed "a material breach" also does not waive any privilege with respect to the Greenberg Traurig investigation because that statement was not in response to any question about the Greenberg Traurig investigation. (Monticciolo Tr. 337:7–14). It is clear from the deposition transcript that the use of the phrase "independent investigation" in that context referred to Defendants' internal investigation of Plaintiff, not an investigation conducted by Greenberg Traurig. Indeed, it is clear from the transcript that Mr. Monticciolo was unfamiliar with the results of any investigation by Greenberg Traurig. He repeatedly stated that he did not recall reviewing any findings related to the Greenberg Traurig investigation. (*See* Monticciolo Tr. 557:3-13, 571:9-17, 557:18-558:2). As such, Mr. Monticciolo never waived any privilege with respect to an investigation by Greenberg Traurig.

As Defendants acknowledge however, privilege cannot be use simultaneously as a sword and a shield.  (Jt. Ltr. 4).  As such, while Defendants need not produce the product of any investigation by Greenberg Traurig, it also may not rely on that investigation as a defense at trial. *See United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991).

## II.    Computer Inspection

Plaintiff also raises an issue with respect to a demand to inspect Defendants' current work computers.  (Jt. Ltr. 3).  The parties have advised the Court that, prior to the close of discovery, they had been negotiating a procedure to allow Plaintiff to inspect both the physical appearance and the configuration of Defendants' work computers.  (Jt. Ltr. 3, 5).  Plaintiff contends that information from this inspection would further his argument that the computer that Plaintiff had at his home, and which Defendant's allegedly hacked, was a "home" computer and not a "work" computer that belonged to Defendants.  (Jt. Ltr. 3).  There is a dispute over whether Plaintiff's expert should be allowed to examine not only the physical appearance of the computer, but also the configuration of the computer or whether Plaintiff's expert could only be allowed to observe (1) the markings and insignia on two of Defendants' work computers and (2) the boot up process of one of Defendants' work computers.  (Jt. Ltr. 3, Jt. Ltr. Exhibit C [ECF No. 267-3]).  Plaintiff requests that he be allowed to have his expert "examine the configuration of the 'representative' computers Brevet is offering for inspection" to determine "whether and how [Defendants] may have changed the computers' configuration since [Plaintiff] requested inspection."  (Jt. Ltr. 3).

Plaintiff's request here is again untimely.  Plaintiff concedes that the discussions for the inspection of the computer occurred as early as September 2021.  (Jt. Ltr. 3).  Defendants' last correspondence with Plaintiff on this issue was an email Defendants sent on October 19, 2021, in which Defendants offered to allow Plaintiff's expert to observe a work computer being turned on

and logged into.  (Jt. Ltr. Exhibit 3).  In that email, Defendants asked Plaintiff to identify any additional information that Plaintiff would need and to explain the relevance of that information to the case.  (Jt. Ltr. Exhibit 3).  Plaintiff never responded to this email and never raised this issue with the Court until nearly two months later, and several days *after* the close of discovery, in its December 10 letter.  Such dilatory conduct is in direct contravention of the Court's individual rules and its scheduling order.  As such, this request to re-open discovery for this discovery issue is untimely and denied.

Moreover, Plaintiff's request to inspect the configuration of these work computers has no probative value.  Plaintiff claims that it needs this data to determine "whether and how [Defendants] may have changed the computers' configuration since [Plaintiff] requested inspection." (Jt. Ltr. 3).  However, Defendants already concede that since Plaintiff's termination, the computer installed in his office was reconfigured and repurposed.  (Jt. Ltr. 5).

Although Plaintiff never responded to Defendants' October 19, 2021 email offering for Plaintiff's expert to observe the boot up process for one of its computers, the Court will allow discovery to be re-opened for this purpose if Plaintiff decides to accept this offer.

## CONCLUSION

IT IS HEREBY ORDERED that on or before March 8, 2022, Plaintiff shall file a letter advising the Court as to whether he will inspect Defendants' computers as agreed to by Defendants in their October 19, 2021 email.  Should Plaintiff agree to Defendants' offer, the parties are directed to arrange for Plaintiff's expert to observe and record this process on or before March 31, 2022.  On or before April 7, 2022, the parties are directed to file a joint letter advising the Court as to whether the inspection has occurred.  The Court will then proceed to

7

schedule briefing on the parties' motions for summary judgment and motions to exclude expert testimony.

IT IS FURTHER ORDERED that Plaintiff's request for the materials from the Greenberg Traurig investigation is DENIED.  Defendants need not turn over the product of any investigation by Greenberg Traurig, but may not rely on that investigation as a defense at trial.

IT IS FURTHER ORDERED that Plaintiff's request that his expert be allowed to examine the configuration of the computers Defendants offer for inspection is otherwise DENIED.  The motion to seal Exhibit 1 of the parties' joint letter is GRANTED.

The Clerk of Court is respectfully requested to close docket entry 266.

**SO ORDERED.**

**Date:  February 23, 2022**
      **New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**