UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL IACOVACCI,<br><br>        Plaintiff,<br><br> -against-<br><br>BREVET HOLDINGS, LLC, *et al*.,<br><br>        Defendants. | 1:18-cv-8048-MKV |

# DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO EXCLUDE EXPERT TESTIMONY

Louis M. Solomon
Colin A. Underwood
Traci S. Rea
REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
Tel.: (212) 549-0400
Lsolomon@reedsmith.com
*Attorneys for Defendants*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT...................................................................................................................................1

I.  PLAINTIFF'S ARGUMENTS WITH RESPECT TO THE WEIGHT AND
    ADMISSIBILITY OF EVIDENCE ARE MISPLACED .......................................................1

II. RASMUSSEN'S TESTIMONY DOES NOT MEET THE *DAUBERT*
    STANDARD..........................................................................................................................2

    A.  Rasmussen's Testimony Is Not Relevant and Will Not Assist the Trier of
        Fact..........................................................................................................................2

    B.  Rasmussen Is Not Qualified to Opine on the Nature of the Computer...................3

    C.  Rasmussen's Testimony Is Not the Product of Reliable Methodology ..................4

III. LIBROCK'S TESTIMONY DOES NOT MEET THE *DAUBERT* STANDARD .............6

    A.  Librock Is Not Qualified to Opine on the Confidentiality of Brevet's
        Information .............................................................................................................6

    B.  Librock's Testimony Is Not the Product of Reliable Methodology .......................7

IV. JARCHO'S TESTIMONY DOES NOT MEET THE DAUBERT STANDARD ..............9

    A.  Jarcho's Testimony is Not the Product of Reliable Methodology..........................9

    B.  Jarcho's Testimony Will Not Assist the Trier of Fact ..........................................10

CONCLUSION..............................................................................................................................10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Amorgianos v. Amtrak*,
    303 F.3d 256 (2d Cir. 2002).................................................................................................2

*Cargill, Inc. v. Sears Petroleum & Transp. Corp.*,
    334 F. Supp. 2d 197 (N.D.N.Y. 2004)..................................................................................9

*Daubert v. Merrell Dow. Pharm., Inc.*, 509 U.S. 579 (1993) ........................................................1

*Dreyer v. Ryder Automotive Carrier Group, Inc.*,
    367 F. Supp. 2d 413 (W.D.N.Y. 2005).................................................................................4

*Economist's Advocate, L.L.C. v. Cognitive Arts Corp.*,
    No. 01 Civ. 9468 (RWS), 2004 U.S. Dist. LEXIS 21805 (S.D.N.Y. Oct. 29, 2004) ...............8

*Fernandez v. Cent. Mine Equip. Co.*,
    670 F. Supp. 2d 178 (E.D.N.Y. 2009) .................................................................................6

*Kass v. W. Bend Co.*,
    158 F. App'x 352 (2d Cir. 2005) ..........................................................................................2

*In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig.*,
    341 F. Supp. 3d 213 (S.D.N.Y. 2018), *aff'd*, Coning v. Bayer Pharma AG, 982 F.3d
    113 (2d Cir. 2020)............................................................................................................1, 2

*Montefiore Med. Ctr. v. Am. Prot. Ins. Co.*,
    No. 00 Civ. 3235 (LTS)(MHD), 2003 U.S. Dist. LEXIS 7986 (S.D.N.Y. May 14,
    2003) ....................................................................................................................................1

*Primavera Familienstiftung v. Askin*,
    130 F. Supp. 2d 450 (S.D.N.Y. 2001)..................................................................................4

*Ruggiero v. Warner-Lambert Co.*,
    424 F.3d 249 (2d Cir. 2005).................................................................................................2

*U.S. v. Ray*,
    No. 20-cr-110 (LJL), 2022 U.S. Dist. LEXIS 18056 (S.D.N.Y. Feb. 1, 2022) .........................4

*Water Pollution Control Auth. v. Flowserve US, Inc.*,
    782 Fed. Appx. 9 (2d Cir. 2019)...........................................................................................5

*Wiener v. AXA Equitable Life Ins. Co.*,
    No. 16 Civ. 04019 (ER), 2019 U.S. Dist. LEXIS 42783 (S.D.N.Y. Mar. 15, 2019).................6

**PRELIMINARY STATEMENT**

Defendants ("Defendants" or "Brevet") have shown why this Court should exclude Iacovacci's experts' testimony as irrelevant, unqualified, and unreliable. Iacovacci's response attempts to distract from that dispositive proof by re-purposing his experts' curricula vitae and raising meritless arguments relating to the weight of evidence to muddle the facts that prove their analyses unreliable. The Court should reject these arguments and grant Brevet's motion to exclude Iacovacci's experts' testimony in its entirety.

All capitalized terms not defined herein derive from Brevet's moving brief. Numbered exhibits refer to the exhibits annexed to the parties Joint Exhibit List. Lettered exhibits refer to the exhibits annexed to the Declaration of Colin A. Underwood, dated May 3, 2022.

**ARGUMENT**

**I.   PLAINTIFF'S ARGUMENTS WITH RESPECT TO THE WEIGHT AND ADMISSIBILITY OF EVIDENCE ARE MISPLACED**

It is true (if irrelevant here) that the factfinder is generally tasked with assessing the weight of evidence, including expert opinions. This Court must first perform its "gatekeeping" function to determine whether the proffered testimony is supported by a sufficient factual foundation and is the product of reliable methods, reliably applied. *In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig.*, 341 F. Supp. 3d 213, 239-40 (S.D.N.Y. 2018), *aff'd sub nom.*, *Coning v. Bayer Pharma AG*, 982 F.3d 113 (2d Cir. 2020). This gatekeeping role is facilitated via FRE 104(a), which empowers courts to determine the relevancy of preliminary facts. *See Daubert v. Merrell Dow. Pharm., Inc.*, 509 U.S. 579, 592-93 (1993); *Montefiore Med. Ctr. v. Am. Prot. Ins. Co.*, 2003 U.S. Dist. LEXIS 7986, *4 (S.D.N.Y. May 14, 2003) (proponent "must demonstrate admissibility to the satisfaction of the Court under Rule 104(a) by establishing scientific or technical reliability by a preponderance of the proof"). A key

- 1 -

component of the Court's reliability analysis requires the Court to assess whether there is an "analytical gap" between the data used and the opinion proffered. *Amorgianos v. Amtrak*, 303 F.3d 256, 266-67 (2d Cir. 2002). That is, the Court must ensure that an expert's conclusions are supported by the facts they purport to rely on. *See Kass v. W. Bend Co.*, 158 F. App'x 352, 353 (2d Cir. 2005) (affirming exclusion of expert testimony where conclusion drawn was "unsupportable" by facts cited). An expert can only bridge such an analytical gap by citing "published studies that support his or her conclusion," *Coning*, 982 F.3d at 124, or utilizing "reliable scientific methods" to reach an opinion. *Id.*

Iacovacci seeks to evade gatekeeping scrutiny by insisting that Brevet's arguments merely go to the weight of his experts' opinions rather than their admissibility (Opp. 8, 13, 15, 17), and that Brevet is simply "quarreling" with their conclusions (*id.* 8, 13). To the contrary, Brevet showed that the experts' testimony should be excluded as, *inter alia*, unreliable under *Daubert* and its progeny (Br. 4, 7-11, 15-21). Brevet's arguments concerning this unreliability do not attack the weight to be afforded the proffered opinion testimony, but whether the trier of fact should hear those opinions at all. *See Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 255 (2d Cir. 2005) (rejecting argument that flaws in expert's analysis go to "weight" and affirming order excluding expert's testimony where an "analytical gap" existed between data relied on and opinion offered). The analytical gap between the facts the experts purportedly considered and their opinions cannot meet the *Daubert* standard and their testimony should be excluded.

## II.     RASMUSSEN'S TESTIMONY DOES NOT MEET THE *DAUBERT* STANDARD

### A.     Rasmussen's Testimony Is Not Relevant and Will Not Assist the Trier of Fact

Iacovacci contends that Rasmussen's testimony "refutes Defendants' arguments that they were somehow authorized" to access the Computer (Opp. 4) and that the Computer "belonged to Brevet" (*id.*), but at the same time (in his opposition to summary judgment) admits that

ownership of the Computer is not determinative (ECF No. 324 at 11).  More significantly, Rasmussen's ultimate conclusion that the "acquisition, configuration, markings, usage and monitoring" of the Computer "were consistent with it ***being a personal computer***" (Ex. 33 at 7 (emphasis added)) bears no relation to whether or not Brevet's access to the Computer was authorized — and Rasmussen makes absolutely no effort to suggest that it does.

Under the CFAA, the relevant inquiry is whether Brevet was authorized to access the Computer, not how Iacovacci used it.  Rasmussen admitted that he was offering no opinion whatsoever as to the ***ownership*** of the Computer (Ex. 15 Tr. 13:9-11, 16:3).  Even Iacovacci only suggests that Rasmussen's testimony would assist the factfinder in assessing "whether the computer ***was set up and used*** as a personal computer or a Brevet computer" (Opp. 4 (emphasis added)) — which does not address the key issue of authorization.  Accordingly, Rasmussen's testimony is not relevant and would not assist the trier of fact.

### B. Rasmussen Is Not Qualified to Opine on the Nature of the Computer

Iacovacci cannot escape the simple fact that Rasmussen has never offered this kind of opinion.  Iacovacci cites to nine pages of Rasmussen's deposition testimony where he discusses criminal investigations, drafting search warrants, and calculating restitution for victims of crimes to support his contention that Rasmussen "has been called on to evaluate whether a device appeared to be company owned" (Opp. 4 (citing Ex. 15 Tr. 17:23-26:22)).  However, nowhere in the cited testimony does Rasmussen identify a scenario in which he was called upon to perform an analysis and offer an opinion such as he offers here.  Iacovacci's recitation of Rasmussen's qualifications (Opp. 6-7) are belied by Rasmussen's own unsurprising admissions:  he has no knowledge, skill, experience, training, or education sufficient to qualify him as an expert in determining the personal nature of a computer (Br. 7 (citing Ex. 15)).  Given this dearth of relevant experience, the Court should deem Rasmussen unqualified.  *See Dreyer v. Ryder*

*Automotive Carrier Group, Inc.*, 367 F. Supp. 2d 413, 430 (W.D.N.Y. 2005) (experience alone may qualify a witness as an expert, but only where that experience has "direct relevance to the issues in the case"; expert excluded).

### C. Rasmussen's Testimony Is Not the Product of Reliable Methodology

Brevet showed that Rasmussen's testimony is unreliable for three independent reasons. First, Iacovacci cannot adequately connect Rasmussen's experience to his analysis or conclusions. An expert who relies on experience to form opinions "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *U.S. v. Ray*, 2022 U.S. Dist. LEXIS 18056, *29 (S.D.N.Y. Feb. 1, 2022) (citations omitted). Iacovacci's Opposition (Opp. 4, 6-7) does nothing more than "offer credentials rather than analysis," *Primavera Familienstiftung v. Askin*, 130 F. Supp. 2d 450, 529 (S.D.N.Y. 2001) (citation omitted), to distract the Court from Rasmussen's defective analysis. As explained above (*see supra* Point II.B.), Rasmussen is not qualified to opine on the nature of the Computer. Thus, he cannot simply rely on his experience (or lack thereof) to support his conclusions.

Second, Rasmussen's blatantly self-serving theory that the way a device is used is determinative of whether that device is personal or business is a classic "analytical gap" (*see supra* Point I). Specifically, Iacovacci cannot identify any testable, workable, or recognized methodology for determining whether a device is "personal" (as that term is used by Rasmussen) or what the significance of that determination might be (Br. 7-8). Instead, Rasmussen made a series of unsupported, untestable assertions about the Computer (Br. 10) based on his own observations alone (*id.* 8). As Brevet's expert noted, this framework would lead to absurd results where an employee could convert any company-owned and issued device to a personal one merely by how the employee chooses to use it (Ex. 172 ¶ 34).

Third, Iacovacci's contention that Rasmussen's failure to consider key facts should be reserved for cross-examination (Opp. 8) again misstates the *Daubert* standard. As discussed in Brevet's moving brief, a failure to investigate or consider relevant facts is sufficient grounds to exclude expert testimony (Br. 11 (citing *Water Pollution Control Auth. v. Flowserve US, Inc.*, 782 Fed. Appx. 9, 13 (2d Cir. 2019))). Tellingly, Iacovacci does not meaningfully address the key facts Rasmussen ignored: (i) upon receiving the Computer, Iacovacci gave back the previous computer that Brevet had provided for him to use at home; (ii) nearly all of the programs cited by Rasmussen as evidence of the "personal" nature of the Computer are, in fact, business programs or consistent with business activity (as even Rasmussen himself admitted); and (iii) Iacovacci used the Family Account on the Computer for business purposes (Br. 10-11). Rasmussen also admitted that he did not consider whether Brevet treated any other computers differently than the Computer (*id.*).

Furthermore, Iacovacci's assertion that "Rasmussen was clear that the actual usage and monitoring of the [Computer] was consistent with Brevet's policies on *personal* devices, and *inconsistent* with Brevet's policies on 'Company Computers'" (Opp. 7) is entirely fabricated: Rasmussen made no distinction whatsoever between Brevet's personal and business device when he testified that Iacovacci's use of the Computer had not breached *any* of Brevet's policies (*see* Br. 8-9). Likewise, Iacovacci's criticisms of Shanmugam's testimony (Opp. 8 n.1) are based on false premises. Shanmugam, a rebuttal expert, identified a slew of facts that Rasmussen failed to account for, and conclusions Rasmussen drew that were not supported by evidence (Ex. 172 ¶¶ 15-50). Shanmugam considered how the Computer was used, identifying evidence showing that Iacovacci used it for Brevet work purposes (Ex. 172 ¶¶ 35-43 & Exs. 3-6 thereto). In sum, Rasmussen's testimony should be excluded as unreliable.

## III. LIBROCK'S TESTIMONY DOES NOT MEET THE *DAUBERT* STANDARD

### A. Librock Is Not Qualified to Opine on the Confidentiality of Brevet's Information

Librock purports to opine about general matters involving the supposed "commercial lending industry" based solely on his experience (Ex. 25 at ¶ 8). Brevet does not dispute that Librock may be generally aware of certain principles reflected in Brevet's policies, or the loan programs Brevet participates in. But Librock cannot purport to opine on issues regarding the direct lending hedge fund industry and Iacovacci cannot salvage Librock's lack of qualification.

For instance, Iacovacci regurgitates Librock's professional experience in his self-invented "commercial lending industry" — which Librock conveniently defined broadly enough to include both the consumer lending arena, in which he has experience, and other areas in which he has none, with no explanation or justification as to why his knowledge of the narrow field should apply to the broader one (Ex. 18 at 13:9-15). This presentation of "credentials rather than analysis" attempts to mask Librock's lack of relevant experience. Iacovacci's contention (without evidentiary support or explanation) that Librock's experience is "closely related" to Brevet's space (Opp. 12) must be rejected. That an expert may have experience in a general area does not render him an expert on a discreet subject that may tangentially relate to that area (Br. 13-14 (citing *Wiener v. AXA Equitable Life Ins. Co.*, 2019 U.S. Dist. LEXIS 42783, *21-22 (S.D.N.Y. Mar. 15, 2019); *Fernandez v. Cent. Mine Equip. Co.*, 670 F. Supp. 2d 178, 184 (E.D.N.Y. 2009))). Simply put, the Court has no basis to conclude that any experience Librock gained from working in the field of residential mortgages, consumer credit cards, and auto loans qualifies him to opine on what is confidential in Brevet's field of hedge fund direct lending.

Iacovacci also incorrectly asserts that "Librock explained that none of the information that he used at Wells Fargo was labeled a trade secret — including much of the information

- 6 -

contained in Brevet's purported trade secrets" (Opp. 12 n.2). Librock never tried to compare any of Wells Fargo's materials to Brevet's, admitted that he did not deal with trade secrets at Wells Fargo (Ex. 18 Tr. 61:5-18), and has never even been engaged as an expert on confidentiality issues (*id.* 61:20-62:10).

The balance of Iacovacci's Opposition fails to address Librock's lack of relevant knowledge or experience, including that he has no expertise regarding the work product or disclosures hedge funds generate (*id.* 138:18-20), identification or solicitation of qualified investors (*id.* 70:13-19, 100:23-101:4), investment management in the context of limited offerings (*id.* 70:21-72:2), EB-5 loans (*id.* 81:2-17, 82:20-24, 97:5-12) — let alone his admission that he did not know whether Brevet's EB-5 transaction documents are unique (*compare* Ex. 18 Tr. 83:18-23 *with* Ex. 25 ¶¶ 35, 43, 51). Librock should be excluded as unqualified.

### B. Librock's Testimony Is Not the Product of Reliable Methodology

Iacovacci glosses over the many examples of Librock's failure to take relevant evidence into account, which render his opinions unreliable. Librock purports to opine on specific Brevet documents and methodologies, but admitted that he did not research or review Brevet's loan documents, methodologies, or other pertinent information, and, despite his lack of personal experience with this type of work product, did not perform independent research to support his conclusions (Br. 16-18). Librock also offered specific opinions about Brevet's "track record" (Ex. 25 ¶ 33), despite admitting ignorance as to what a "track record" is, and what it means to describe or disclose it (Br. 17-18). Iacovacci also pays short shrift to Librock's abject failure to actually research or review Brevet's valuation methodology and loan documents (Ex. 18 Tr. 128:5-12, 130:16-131:1; 78:11-18; 118:9-22), or the EB-5 lending marketplace (*id.* 97:5-12) despite opining on those very materials and subjects. This failure to consider relevant evidence presents an "analytical gap" showing the unreliability (not weight) of Librock's testimony (*see*

*supra* Point I).

Iacovacci takes issue with Brevet's use of the phrase "nothing more than words," arguing that Librock can properly rely on his experience to form his opinions (Opp. 15). In fact, Brevet attacked Librock's nebulous, invented terms "commercial lending industry," "reasonable practitioner," and "knowledgeable professional" as "nothing more than words," because Librock made no attempt to define or qualify them. Of course, these terms carry no specific legal or practical meaning (and Iacovacci concedes as much by not addressing Brevet's actual argument (*see* Br. 15-16)). Consequently, Librock's testimony as it relates to these invented standards is untestable and cannot describe how the facts (or lack thereof) underlying his opinion link to his conclusions (Br. 16 (citing *Economist's Advocate, L.L.C. v. Cognitive Arts Corp.*, 2004 U.S. Dist. LEXIS 21805, at *5 (S.D.N.Y. Oct. 29, 2004))).

Iacovacci again resorts to invention, contending that Brevet "fallaciously" asserted that certain documents do not apply to its activities (Opp. 16). The only fallacy at play is Librock's un-researched and unsupported assertion that the "Customer Due Diligence Requirements for Financial Institutions," and Interagency Statement *apply* to Brevet (Ex. 25 at ¶¶ 27(e), 53). They do not (Br. 18). That Librock would mistakenly conclude that this regulatory guidance applies to Brevet goes directly to the unreliability of his analysis. Similarly, Brevet never asserted that Librock "stopped working in 2012" (Opp. 12 n.2), but only pointed out that, per Librock's CV, he has not worked *in the consumer lending industry* since 2012 (Br. 15). Finally, Iacovacci's ridiculous assertion that Brevet contended that "trade secrets are not properly the subject of expert testimony" (Opp. 14) is yet another fiction. The quote comes from a case Brevet cited for the point that the ultimate legal question of what is or is not a trade secret is not the province of experts, but rather is left to the trier of fact (Br. 15 (citing *Cargill, Inc. v. Sears Petroleum &*

*Transp. Corp.*, 334 F. Supp. 2d 197, 251, 250 n.42 (N.D.N.Y. 2004))). Moreover, whether Brevet established its trade secrets is entirely separate from the admissibility of Librock's testimony. Librock's testimony should be exlcuded as unreliable.

### IV. JARCHO'S TESTIMONY DOES NOT MEET THE DAUBERT STANDARD

#### A. Jarcho's Testimony is Not the Product of Reliable Methodology

Iacovacci's opposition seeks to walk back and narrow Jarcho's proffered opinions: "Jarcho opines that Brevet was not obligated or authorized under the Advisers Act . . . to hack into Iacovacci's computer following his" termination (Opp. 2). In reality, Jarcho's opinions as laid out in her expert report are overreaching, inexplicably broad, and are made without consideration of relevant evidence (Br. 19-21). The flagrant flaw in Jarcho's analysis is obvious: Jarcho opines that (i) the documents contained on the Computer were not covered by the Books and Records Rule and, even if they were, (ii) the Advisers Act does not permit Brevet to access the Computer — based solely on her review of the allegations in the pleadings and without even glancing at a single document contained on the Computer (Ex. A Tr. 74:21-75:1).

Iacovacci erects another meritless argument in characterizing Brevet's position on this point as "remarkable" because Brevet has cited no case where an expert was excluded for assuming allegations in pleadings to be true. The "remarkable" element of Jarcho's testimony is that she would opine on specific Brevet documents without reviewing them. Her opinions are not limited to the unproven allegations of pleadings; they purport to go far beyond the Answer and Counterclaims. Iacovacci likewise avoids defending Jarcho's misguided "three-legged stool" analogy that, according to Jarcho, "you can't sort of pull . . . apart" (Br. 19 (citing Ex. A at 75:22-76:24)). As Brevet showed, this analogy is based on faulty and unsubstantiated assumptions that make plain that Jarcho did not consider all relevant facts in rendering her opinion (Br. 19-21). As such, Jarcho's opinion should be excluded as unreliable.

**B.     Jarcho's Testimony Will Not Assist the Trier of Fact**

Jarcho purports to opine on Brevet's regulatory record-keeping obligations, and makes conclusions about the nature of specific Brevet documents as they relate to Brevet's affirmative defenses, all without reviewing a single document (Ex. 139 at 1 n.1).  She concludes that "nothing in the Advisers Act requires or permits the unauthorized access of a computer system for the purpose of satisfying the Act's record-keeping requirements" (Ex. 139 at 3), but admits that she offers no legal opinion on the interaction between the federal securities laws and the CFAA (Ex. A Tr. 103:2-7).  Iacovacci feigns ignorance as to how this conclusion relates to Brevet's affirmative defense relating to the interrelationship between the Advisers Act and Iacovacci's claims under the CFAA (Opp. 20).  Brevet established that this testimony must be excluded as constituting a legal conclusion (Br. 21-22).

## CONCLUSION

Defendants request that the Court grant their motion to exclude Iacovacci's experts' testimony in its entirety.

| | |
|---|---|
| Dated: New York, New York<br>June 29, 2022 | Respectfully submitted,<br><br>REED SMITH LLP<br><br>By: */s/ Louis M. Solomon*<br>Louis M. Solomon<br>599 Lexington Avenue<br>New York, New York 10022<br>(212) 549-0400<br>Lsolomon@reedsmith.com<br>*Attorneys for Defendants* |