UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL IACOVACCI, | 1:18-cv-8048-MKV |
| Plaintiff, | |
| -against- | |
| BREVET HOLDINGS, LLC, *et al*., | |
| Defendants. | |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT DISMISSING PLAINTIFF'S CLAIMS**

Louis M. Solomon
Colin A. Underwood
Traci S. Rea
REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
Tel.: (212) 549-0400
Lsolomon@reedsmith.com
*Attorneys for Defendants*

**<u>TABLE OF CONTENTS</u>**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ........................................................................................................................3

I.    PLAINTIFF HAS NO CFAA CLAIM FOR THE COMPUTER (COUNT I) ...................3

      A.    Plaintiff Has No Evidence Sufficient to Meet the Statutory Loss Threshold ..........3

      B.    Brevet's Policies Authorized Access .......................................................................4

      C.    Brevet's Regulatory Obligations Authorized Access ...............................................6

II.   PLAINTIFF HAS NO CFAA CLAIM FOR EXTERNAL DRIVES (COUNT II) .............7

III.  PLAINTIFF HAS NO CLAIMS FOR YAHOO EMAIL ACCESS (COUNTS III-
      V) .............................................................................................................................7

      A.    Plaintiff Has No CFAA Claim for Access to Yahoo Server (Count III) ................8

      B.    Plaintiff Has No Claim Under the Federal Wiretap Act (Count IV) ......................8

      C.    Plaintiff Has No Claim Under the Stored Communications Act (Count V) ............8

IV.   PLAINTIFF HAS NO CONVERSION CLAIM (COUNT VI) .........................................9

V.    PLAINTIFF HAS NO TRESPASS TO CHATTELS CLAIM (COUNT VII) ................10

CONCLUSION ....................................................................................................................10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Broker Genius, Inc. v. Seat Scouts LLC*,
No. 17-cv-8627 (SHS), 2018 U.S. Dist. LEXIS 81185 (S.D.N.Y. May 14, 2018) ...................................................................................................................9

*Creative Computing v. Getloaded.com LLC*,
386 F.3d 930 (9th Cir. 2004) ........................................................................................8

*Estate of Detwiler v. Offenbecher*,
728 F. Supp. 103 (S.D.N.Y. 1989).................................................................................6

*Deutsch v. Human Res. Mgmt.*,
No. 19-CV-5305 (VEC), 2020 U.S. Dist. LEXIS 65926 (S.D.N.Y. Apr. 15, 2020) ..........................................................................................................................5

*Dreni v. PrinterOn Am. Corp.*,
486 F. Supp. 3d 712 (S.D.N.Y. 2020)..........................................................................4

*Fischkoff v. Iovance Biotherapeutics, Inc.*,
339 F. Supp. 3d 408 (S.D.N.Y. 2018)..........................................................................9

*Gemmink v. Jay Peak Inc.*,
807 F.3d 46 (2d Cir. 2015) ...........................................................................................2

*Iacovacci v. Brevet Holdings, LLC*,
No. 1:18-cv-08048-MKV, 2022 U.S. Dist. LEXIS 31812 (S.D.N.Y. Feb 23, 2022) ..........................................................................................................................4

*John Wiley & Sons, Inc. v. DRK Photo*,
998 F. Supp. 2d 262 (S.D.N.Y. 2014)..........................................................................4

*Madden v. Creative Servs.*,
872 F. Supp. 1205 (W.D.N.Y. 1993) ..........................................................................10

*Mount v. PulsePoint, Inc.*,
No. 13 Civ. 6592 (NRB), 2016 U.S. Dist. LEXIS 112315 (S.D.N.Y. Aug. 17, 2016) ....................................................................................................................8, 10

*Nexans Wires S.A. v. Sark-USA, Inc.*,
166 Fed. App'x 559 (2d Cir. 2006)...............................................................................3

*Rubloff Dev. Grp., Inc. v. SuperValu, Inc.*,
   863 F. Supp. 2d 732 (N.D. Ill. 2012) ...................................................................10

*Saunders Ventures, Inc. v. Salem*,
   797 F. App'x 568 (2d Cir. 2019) ............................................................................4

**Statutes**

15 U.S.C.S. § 80b-4 ......................................................................................................6

18 U.S.C. § 1030(e)(1).................................................................................................7

18 U.S.C. § 2701(a) ......................................................................................................9

**Rules**

Fed. R. Civ. P. 26(b)(4)(D) ..........................................................................................4

**Regulations**

17 C.F.R. § 275.204-2...................................................................................................6

## **PRELIMINARY STATEMENT**

Defendants ("Defendants" or "Brevet") have shown ("Br.") that this Court has before it undisputed facts sufficient to dismiss Plaintiff's claims.  Plaintiff's opposition ("Opp.") strives to create the illusion of disputed factual issues, but neglects the undisputed <u>material</u> facts.

On the CFAA claims, Plaintiff cannot meet the statutorily required $5,000 in damages, particularly because he withheld evidence until summary judgment.  Brevet showed (Br. 6-12):

- Plaintiff asserted privilege to refuse discovery into damages information.

- Plaintiff did not produce a single damages document during discovery.

- Plaintiff's post-discovery damages proffer (ECF 286-4), even if considered, reflects litigation expenses done at the direction of counsel, not damages under the statute.

Plaintiff does not and cannot refute any of these facts.

Similarly, Brevet showed that it was authorized to access the Computer, under both its policies and its regulatory obligations.  Brevet showed that Brevet's policies define "Company computers and related equipment and software" as items Brevet "provided for use in connection with work performed for the Company" (D117) and that the Computer meets this definition (Br. 12-13).  In response, Plaintiff cites to purported disputed facts concerning the Computer's ownership (*e.g.*, Opp. 2-3, 13), but both parties agree that ownership is not at issue now (Opp. 11, Br. 12).  The barrage of irrelevant facts seems designed to hide Plaintiff's key admissions confirming that Brevet's policies authorized it to access the Computer:

- "Brevet gave Iacovacci [the Computer]"; "Brevet paid for the computer" (Opp. 2).

- "Iacovacci at times also used [the Computer] for work purposes" (Opp. 2; D41-D42).

- Brevet installed on the Computer "Brevet-purchased software, including Microsoft Outlook, Word, Excel, PowerPoint, and Kapersky Antivirus" (D31).

- "Brevet paid for Iacovacci's home internet access" (D38).

Brevet showed its policies acknowledge personal use of Company computers; and that Brevet's

1

policies authorized it to access even personal devices (Br. 15-16), policies Plaintiff ignores.

As the party with the burden of proof, Plaintiff "'must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact.'" *Gemmink v. Jay Peak Inc*., 807 F.3d 46, 48 (2d Cir. 2015) (affirming summary judgment) (Opp. 7).  Plaintiff attempts to distract this Court from the key issue of authorization by emphasizing legal irrelevancies, such as when, how, and why Brevet accessed the Computer.  For example, he states that Brevet accessed the Computer in the "wee hours" on October 17-18, 2016 (Opp. 1, 11-12) and wrongly implies Brevet did so in reaction to Plaintiff filing his state court complaint hours earlier (Opp. 1, 4), when Plaintiff did not serve Brevet until November 2016 (ECF 286-5; Ex. 114 ¶ 9); he lies about Brevet's reasons for accessing the Computer (Opp. 18), knowing Brevet's evidence shows it did so to comply with its regulatory obligations (Ex. 138 ¶ 6); he speculates that Johnny Lan "guess[ed]" Plaintiff's password, citing to information from another day not tied to Lan (Opp. 5), while ignoring Plaintiff's admission that Lan had the password (Br. 16, P26); and he states that Brevet accessed "privileged" documents (Opp. 1, 5, 12, 18, 24), even though he "'never submitted the allegedly privileged material, in camera or otherwise'" to the state court (Br. 17, Ex. 180 at 24).  Brevet's authority is not affected by these atmospherics.

Plaintiff's CFAA claim for the External Devices also fails because his improper damages proffer does not show $5,000 for these devices; and because he cites no case permitting splitting CFAA claims between such devices and the computers they were attached to.

Plaintiff asserts three claims (CFAA, Federal Wiretap Act ("FWA"), and Stored Communications Act ("SCA")) premised on the assumption that Brevet went into Plaintiff's Yahoo email account on Yahoo's own server.  But Plaintiff has zero evidence of such access. Instead, he merely speculates that Brevet accessed his Yahoo email based on "CPU usage" (Opp.

6, 20-23).  Plaintiff's own expert admitted that CPU usage simply means a browser was active –

he had no evidence that the Yahoo website was accessed at all, let alone by Brevet (*infra* p. 7).

Those claims have additional failings, including lack of $5,000 in loss (CFAA), Plaintiff's

inability to show Brevet intercepted any Yahoo email "contemporaneously" with its transmission

(FWA), and Plaintiff's failure to show that Brevet "obtained" an "electronic communication"

when it simply took a photograph of a screen showing a list of emails (SCA).

      This Court can and should dismiss Plaintiff's claims as a matter of law.

<u>**ARGUMENT**</u>

I.      **PLAINTIFF HAS NO CFAA CLAIM FOR THE COMPUTER (COUNT I)**

      A.      **Plaintiff Has No Evidence Sufficient to Meet the Statutory Loss Threshold**

      Plaintiff's inability to prove that he can meet the CFAA jurisdictional loss threshold of

$5,000 warrants summary judgment.  *Nexans Wires S.A. v. Sark-USA, Inc.*, 166 Fed. App'x 559,

562-63 (2d Cir. 2006) (affirming summary judgment for failure to show CFAA statutory loss).

      Plaintiff miscites (Opp. 6, 7, 8, 9) the lone "evidence" he proffered during discovery as to

damages:  a single initial interrogatory response where he simply speculated that his "anticipated

damages" "may include" "damages in excess of $35,000," swore to "supplement this response as

additional information becomes available through fact and expert discovery," and objected that

the "information sought may be derived from documents to be produced in this litigation" (ECF

286-2 at 7-8).  Yet he produced zero additional information, zero documents showing actual,

rather than anticipated, damages.  Plaintiff claimed privilege and produced no documents in

response to Brevet's requests for damages documents (ECF 286-3 at Nos. 4, 36).  Tellingly, he

does not refute that he withheld the Demirkaya Invoice until after the close of discovery.

      Plaintiff now claims that Demirkaya was a "fact" witness (Opp. 9), ignoring that Plaintiff

has only ever referred to Demirkaya as an "expert" (*see* Br. 7).  Consulting experts are not

subject to deposition.  Rule 26(b)(4)(D).  Indeed, even at Plaintiff's deposition last fall,

Plaintiff's counsel refused to let Plaintiff testify concerning Demirkaya, asserting privilege

regarding "experts that were retained at the direction and acting at the direction of counsel" (Ex.

1 at 188:23-189:4).  Plaintiff would have had no basis to refuse to answer deposition questions

(or to withhold documents) were Demirkaya actually a "fact" witness.  Plaintiff cannot, after the

close of discovery and having asserted privilege, proffer the strategically withheld evidence in

opposition to summary judgment.  *John Wiley & Sons, Inc. v. DRK Photo*, 998 F. Supp. 2d 262,

269 n.4 (S.D.N.Y. 2014); *Iacovacci v. Brevet Holdings, LLC*, 2022 U.S. Dist. LEXIS 31812 *16

(S.D.N.Y. Feb 23, 2022) (Br. 9; *see also* Resps. to D95-D104).

Even were the substance of Plaintiff's prejudicially belated proffer considered, Plaintiff's

characterization of Demirkaya as "acting at the direction of counsel" (Ex. 1 at 188:23-189:4) and

Plaintiff's refusal to answer questions on privilege grounds demonstrates that Demirkaya's work

comprised "litigation-related expenses [that] do not qualify as 'losses' under the CFAA."  *Dreni

v. PrinterOn Am. Corp.*, 486 F. Supp. 3d 712, 736 (S.D.N.Y. 2020) (Vyskocil, J.) (granting

summary judgment on CFAA claim).  Plaintiff cites an inapposite case, where the client – not

counsel – "engaged" and "paid" the expert, and counsel was merely "present on phone calls

between the investigators and the client."  *Saunders Ventures, Inc. v. Salem*, 797 F. App'x 568,

570, 573 (2d Cir. 2019) (Opp. 10).  Here, it is admitted that counsel "retained" and "direct[ed]"

Demirkaya, and that Plaintiff had not "hired" or "paid" Demirkaya (Ex. 1 at 186:6-16, 188:23-

189:4).  Further, there is no evidence that Plaintiff ever spoke directly with Demirkaya, with or

without the presence of counsel.  Plaintiff's litigation expenses are not CFAA losses.

### B.    Brevet's Policies Authorized Access

Plaintiff's conclusion that Brevet was unauthorized to access the Computer is contrary to

the undisputed facts.  Brevet provided the Computer and related equipment and software to

Plaintiff "for use in connection with work performed for" Brevet, and Plaintiff used the

Computer for Brevet work (Br. 12-13; Opp. 2; D31, D38, D41-D42).  That is all that is required

to make the Computer a "Company computer" under Brevet's policies (D117 ("Company

computers and related equipment and software" are items Brevet "provided for use in connection

with work performed for the Company")).  Brevet thus had the authority to access the Computer:

> Brevet reserves the right to review, read, access or otherwise monitor all electronic
> documents (i.e., word processing documents, spreadsheets, databases and computer
> files of all other kinds) and messages (including, but not limited to, e-mail, voice mail,
> instant messages and any other means of electronic communications) that are stored or
> processed on Brevet's computers or other equipment, including but not limited to,
> such documents and messages which do not directly relate to Brevet's business.

(Ex. 113 at 39-40; Br. 13-14.)  "Plaintiff has not explained why [Brevet] would automatically

lose authorization to access an employee's work-related device (even if . . . personally owned as

a matter of property law) when employment comes to an end."  *Deutsch v. Human Res. Mgmt*.,

2020 U.S. Dist. LEXIS 65926, *9 n.9 (S.D.N.Y. Apr. 15, 2020).  The question is whether Brevet

had authorized access "to the device."  *Id*. *7.  The answer is yes.  Brevet's quoted policy has no

"employee" limitation to authorization.  The fact that Plaintiff took no steps to limit Brevet's

access, such as by changing the password, is further evidence of Brevet's authorization (Br. 16).

Plaintiff cites no CFAA case requiring that Brevet show Plaintiff "agreed to be bound by

the Handbook" (Opp. 13), and the cases he does cite are inapposite (*see* ECF 316 at 4-6).  The

*Deutsch* case found no CFAA violation even though the employer did not have a policy

expressly permitting remote access, "nor did they ever ask for Plaintiff's consent to access or

'wipe' her phone" – which had been used for work – after the plaintiff had accepted other

employment and cleaned out her desk.  2020 U.S. Dist. LEXIS 65926 at *3, *4, *9-10.

Brevet's authority existed even if the Computer were a "personal device" under Brevet's

policies (which it is not), because even former employees are required to "allow the Firm to remove Firm information and remove or disable any Firm-provided software and service from" personal devices (Ex. 32 § 8; Br. 15-16).  Here, all Brevet did was back-up information.

Plaintiff's obligations regarding Brevet's confidential and proprietary materials applied after his employment and membership ended.  As a founding member of the Short Duration companies, Plaintiff had many continuing obligations, including returning Brevet proprietary and confidential materials (Exs. 93, 94 § 7.2), and the Employee Handbook similarly imposed post-employment obligations regarding Brevet's information (Ex. 113 at 28, 33; Br. 14-15).  Brevet had requested that Plaintiff return the Computer upon his termination, but Plaintiff did not (D60-D66).  It would make a mockery of employment policies if protections that companies rely on could be thwarted by an employee ending his employment and exercising ownership over the company's materials on the grounds that a "former employee" is freed from all obligations.

C.     **Brevet's Regulatory Obligations Authorized Access**

There is also no genuine dispute that Brevet was authorized to access the Computer pursuant to, *inter alia*, the Advisors Act § 204 (15 U.S.C.S. § 80b-4) and 17 CFR § 275.204-2. Plaintiff cites no authority in arguing that Brevet did not act in accordance with its regulatory obligations (Opp. 16-17), relying solely on the testimony of his purported expert, Jane Jarcho (Opp. 17).  Brevet, in contrast, has presented undisputed facts showing that Brevet's regulatory obligations authorized access to the Computer (D135-D143), and case law demonstrating Brevet's responsibility to back-up the Computer (Br. 18-19).  Since Plaintiff is unable to establish the existence of disputed facts, Brevet is entitled to summary judgment on Plaintiff's CFAA claim.  *See Estate of Detwiler v. Offenbecher*, 728 F. Supp. 103, 140 (S.D.N.Y. 1989) (granting summary judgment where "ample undisputed facts" contradicted expert opinion).

Brevet's access was authorized; the CFAA claim should be dismissed.

## II.     PLAINTIFF HAS NO CFAA CLAIM FOR EXTERNAL DRIVES (COUNT II)

Plaintiff's CFAA claim for the External Drives is not viable.  Such drives are not stand-alone computers subject to a separate CFAA claim, but are part of computers when "directly operating in conjunction with" a computer.  18 U.S.C. § 1030(e)(1).  Plaintiff cites no case (Opp. 18) permitting separate CFAA claims for external drives and the computer it was attached to.

Nor can Plaintiff meet the $5,000 loss threshold for any separate CFAA claim for the External Drives (*see supra* Point I.A).  Further, the Demirkaya Invoice shows only $4,887.50 for the External Drives (Br. 20, ECF 286-4), and Plaintiff points to no other applicable entry (Opp. 19 n.10).  Also, any Brevet access was authorized.  Brevet is entitled to summary judgment.

## III.    PLAINTIFF HAS NO CLAIMS FOR YAHOO EMAIL ACCESS (COUNTS III-V)

Plaintiff cannot show that Brevet accessed Yahoo's email server or obtained information from it.  Plaintiff repeatedly equates "CPU usage" with access to the Yahoo server (Opp. 6, 20-23).  His expert made clear, however, that there was no such equivalence.  Instead, such usage only means "the Chrome Browser was active" during the 25.5 hours from 1 AM on Oct. 17, 2016 to just after 2:30 AM on Oct. 18, 2016 (Ex. 171 ¶ 89, Ex. 17 at 24:2-25:14).  Plaintiff's expert could not say what websites were visited, and had no evidence that Lan accessed Yahoo:

> Q:      You aren't offering an opinion on any websites that were visited by the Chrome browser during that period, correct?
>
> A.      That is correct.
>
> Q.      Do you have any evidence that Johnny Lan while he was accessing the Dell OptiPlex computer visited the Yahoo mail account website?
>
>              MS. FRUCHTER:  Objection to form.
>
> A.      No, I do not.  [Ex. 17 at 25:16-24].

Plaintiff affirmatively asserts that Chrome was "already opened" to Yahoo "when Lan logged in" to the Computer, and that Lan only took a photo of the screen (Br. 21; Ex. 17 at 40:15-19).

Thus, Plaintiff's speculation does not raise a disputed issue of fact concerning Brevet's access to the Yahoo server, and summary judgment is appropriate on Counts III-V.  Brevet discusses below additional reasons each of Plaintiff's three Yahoo-related claims should be dismissed.

### A.      Plaintiff Has No CFAA Claim for Access to Yahoo Server (Count III)

Plaintiff cannot show either unauthorized access or loss.  In addition to the reasons set forth in Point I, Plaintiff cannot show $5,000 in loss related to the Yahoo server.  Even if the Demirkaya Invoice were admissible, only three entries reference Yahoo, totaling $2,375 (ECF 286-4), and Plaintiff points to no other applicable entry (Opp. 19).  Nor does Plaintiff cite any case permitting aggregation of losses across different computers/servers.  *Creative Computing v. Getloaded.com LLC*, 386 F.3d 930, 933 (9th Cir. 2004) (Opp. 19) (only aggregating accesses to "truckstop.com's server"); *see Mount v. PulsePoint, Inc.*, 2016 U.S. Dist. LEXIS 112315, *26-27 & n.4 (S.D.N.Y. Aug. 17, 2016) (noting aggregation limited to "'a particular computer'").

### B.      Plaintiff Has No Claim Under the Federal Wiretap Act (Count IV)

Brevet has shown that Plaintiff's FWA claim fails as a matter of law because Plaintiff cannot show that Brevet "contemporaneously" intercepted any of Plaintiff's protected communications (Br. 21-22).  Plaintiff does not dispute this requirement – he simply ignores it.

Plaintiff admitted that the only alleged "interception" was a digital photo Lan took (Resp. to D89, citing Ex. 182).  The photo altogether undermines Plaintiff's FWA claim; it shows that there were no contemporaneous communications available, as the most recent email shown was from October 5, 2016 – two weeks earlier (*see* Br. 22).  Plaintiff offers no fact disputing this, no identification of any communication Brevet intercepted contemporaneously with its transmission (*see* Opp. 21).  As such, Brevet is entitled to summary judgment on Plaintiff's FWA claim.

### C.      Plaintiff Has No Claim Under the Stored Communications Act (Count V)

Plaintiff's opposition cannot rescue his meritless SCA claim for the following reasons.

First, Plaintiff asserts, without support, that the photo of the Yahoo email screen "shows numerous emails that Brevet viewed" (Opp. 22, citing ECF 325-1).  On the contrary, that photo does not show that Lan viewed any emails; it is simply a photograph of an email folder, not of any email (ECF 325-1).  Plaintiff cites no case holding that such a photograph satisfies the statutory requirement that Plaintiff show that Brevet "obtain[ed] . . . access to a wire or electronic communication while it is in electronic storage".  18 U.S.C. § 2701(a).  (Relatedly, Brevet never contended that "the SCA does not apply to open emails" (Opp. 22); rather, Brevet clarified that Plaintiff's SCA claim does not apply to emails stored locally on the Computer (Br. 22).)  The record is devoid of any evidence that Brevet obtained, altered, or prevented Plaintiff from accessing any cognizable communication from Plaintiff's Yahoo account (Br. 22-23).  Second, Plaintiff again cites "CPU usage," but has no evidence that Lan accessed the Yahoo server (*see supra* p. 7).  Finally, any access by Brevet was authorized (Br. 12-19).

## IV.   PLAINTIFF HAS NO CONVERSION CLAIM (COUNT VI)

Neither Brevet's access to the Computer nor its backing-up of documents supports Plaintiff's conversion claim.  Conversion requires the "'*complete* exclusion of the rightful possessor.'"  *Broker Genius, Inc. v. Seat Scouts LLC*, 2018 U.S. Dist. LEXIS 81185, *14 (S.D.N.Y. May 14, 2018).  Plaintiff has no evidence that he would have been unable to access the Computer during the back-up (Opp. 24).  Lan testified only that Lan did not know whether Plaintiff knew how to end the back-up, not that the back-up could not have been ended (Ex. 3 at 205:4-24).  Plaintiff cannot show complete exclusion from the Computer during the back-up.

Contrary to Plaintiff's argument (Opp. 24), the majority rule is that copying/backing up cannot support a conversion claim.  *Fischkoff v. Iovance Biotherapeutics, Inc.*, 339 F. Supp. 3d 408, 415 (S.D.N.Y. 2018) (dismissing conversion claim based on copying of electronic files)

(collecting cases).  Plaintiff claims Brevet allegedly backed-up "privileged" documents (Opp. 24), yet he never proved privilege (Br. 17).  Even so, "no decisional authorities support [Plaintiff's] theory that privileged attorney-client information may be the subject of an action for conversion in New York."  *Madden v. Creative Servs.*, 872 F. Supp. 1205, 1210 (W.D.N.Y. 1993) (dismissing conversion claim); *cf. Rubloff Dev. Grp., Inc. v. SuperValu, Inc*., 863 F. Supp. 2d 732, 751 (N.D. Ill. 2012) (Opp. 24) (non-NY law; court assumed "that originals were taken").

## V.    PLAINTIFF HAS NO TRESPASS TO CHATTELS CLAIM (COUNT VII)

Plaintiff fails to show actual harm to the Computer (Br. at 24-25 (citing cases)), a standard even Plaintiff's cases (Opp. 25) require.  Plaintiff cites no evidence that Brevet's back-up or use of FileZilla software adversely affected the Computer; Plaintiff was unaware of Brevet's access for well over a month (Opp. 6, citing Complaint ¶ 58).  Brevet's use of FileZilla cannot be distinguished from the tracking cookies in *Mount*, 2016 U.S. Dist. LEXIS 112315, *1, *28-29 (Br. 25), which absent "particularized allegations of diminished device performance" could not support a trespass claim.  *Id*. *29.  The same is true here.

## CONCLUSION

Defendants request that the Court grant summary judgment dismissing Plaintiff's claims.

Dated: New York, New York
        June 29, 2022

Respectfully submitted,

REED SMITH LLP

By: */s/ Louis M. Solomon*
Louis M. Solomon
599 Lexington Avenue
New York, New York 10022
(212) 549-0400
Lsolomon@reedsmith.com
*Attorneys for Defendants*