UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PAUL IACOVACCI,

                     Plaintiff,

        -against-

BREVET HOLDINGS, LLC, *et al.*,

                    Defendants.

Case No. 1:18-cv-08048 (MKV)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

Table of Authorities ................................................................................................. ii

Argument ................................................................................................................ 1

    I.  Defendants Cannot Establish Liability on Their Counterclaims ........................................ 1

        A.      Breach of Covenant (Second and Third Counterclaims) ....................................... 1

        B.      Breach of Duty (Fourth and Fifth Counterclaims)................................................. 2

        C.      Trade Secrets (Sixth, Ninth, and Twelfth Counterclaims)..................................... 3

        D.      Tortious Interference (Seventh and Eighth Counterclaims) ................................... 6

    II.  Defendants Have Not Shown Any Damage Caused by Iacovacci ................................... 7

    III. Brevet's Twenty-Third Affirmative Defense Fails............................................................. 9

Conclusion .............................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Am. Preferred Prescription, Inc. v. Health Mgmt., Inc.*,
  678 N.Y.S.2d 1 (N.Y. App. Div. 1998) ................................................................... 6

*AmTrust N. Am., Inc. v. KF&B, Inc.*,
  2020 WL 5503479 (S.D.N.Y. Sept. 11, 2020) ......................................................... 9

*Apple Mortg. Corp. v. Barenblatt*,
  162 F. Supp. 3d 270 (S.D.N.Y. 2019) ..................................................................... 2

*Atari, Inc. v. Games, Inc.*,
  164 F. App'x 183 (2d Cir. 2006) ............................................................................. 5

*Atari, Inc. v. Games, Inc.*,
  2005 WL 447503 (S.D.N.Y. Feb. 24, 2005) ........................................................... 5

*Big Vision Priv. Ltd. v. E.I. DuPont De Nemours & Co.*,
  1 F. Supp. 3d 224 (S.D.N.Y. 2014) ......................................................................... 4

*Big Vision Priv. Ltd. v. E.I. DuPont De Nemours & Co.*,
  610 F. App'x 69 (2d Cir. 2015). .............................................................................. 4

*Brown v. St. Paul Travelers Cos.*,
  331 F. App'x 68 (2d Cir. 2009) ............................................................................... 1

*Cowan v. City of Mt. Vernon*,
  95 F. Supp. 3d 624 (S.D.N.Y. 2015) ....................................................................... 4

*Data Device Corp. v. W.G. Holt, Inc.*,
  2020 WL 7024312 (E.D.N.Y. Nov. 30, 2020) ......................................................... 5

*Enzo Biochem, Inc. v. Amersham PLC*,
  981 F. Supp. 2d 217 (S.D.N.Y. 2013) ..................................................................... 7

*Erickson Beamon Ltd. v. CMG Worldwide, Inc.*,
  2014 WL 3950897 (S.D.N.Y. Aug. 13, 2014) ....................................................... 10

*Faldetta v. Lockheed Martin Corp.*,
  2000 WL 1682759 (S.D.N.Y. Nov. 9, 2000) ........................................................... 6

*Fox v. Bd. of Trs. of SUNY*,
  42 F.3d 135 (2d Cir. 1994) ...................................................................................... 9

*Haas v. Delaware & Hudson Ry. Co.*,
  282 F. App'x 84 (2d Cir. 2008) ............................................................................... 7

*Iacovacci v. Brevet Holdings, LLC*,
    159 N.Y.S.3d 674 (N.Y. App. Div. 2022) ............................................................ 5

*In re Residential Cap., LLC*,
    2012 WL 5386151 (Bankr. S.D.N.Y. Nov. 1, 2012) ............................................ 7

*Kanciper v. Suffolk Cty. SPCA, Inc.*,
    722 F.3d 88 (2d Cir. 2013) .................................................................................... 5

*Keystone Fruit Mktg. v. Brownfield*,
    2006 WL 1873800 (E.D. Wash. July 6, 2006) .................................................... 1

*Keystone Fruit Mktg. v. Brownfield*,
    352 F. App'x 169 (9th Cir. 2009) ........................................................................ 1

*Kronenberg v. Katz*,
    872 A.2d 568 (Del. Ch. 2004) .............................................................................. 2

*Leary v. Al-Mubaraki*,
    2019 WL 4805849 (S.D.N.Y. Sept. 30, 2019) .................................................... 1

*Linkco, Inc. v. Fujitsu Ltd.*,
    230 F. Supp. 2d 492 (S.D.N.Y. 2002) ................................................................ 5

*Lobosco v. N.Y. Tel. Co./NYNEX*,
    751 N.E.2d 462 (N.Y. 2001) ................................................................................ 1

*Marshall v. Switzer*,
    900 F. Supp. 604 (N.D.N.Y. 1995) ...................................................................... 9

*Mastercraft Decorators, Inc. v. Orlando*,
    356 F. Supp. 3d 259 (W.D.N.Y. 2018) ................................................................ 1

*Miloscia v. B.R. Guest Holdings, LLC*,
    942 N.Y.S.2d 484 (N.Y. App. Div. 2012) ............................................................ 2

*New York ex rel. Spitzer v. St. Francis Hosp.*,
    94 F. Supp. 2d 423 (S.D.N.Y. 2000) .................................................................. 8

*Pacific Controls v. Cummins*,
    2021 WL 446725 (S.D.N.Y. 2021) ...................................................................... 8

*PaySys Int'l v. Atos Se*,
    2016 WL 7116132 (S.D.N.Y. 2016) .................................................................... 4

*Pryce v. N.Y.C. Transit Auth.*,
    2018 WL 6340777 (N.Y. Sup. Ct. Dec. 5, 2018) ................................................ 2

*Ridinger v. Dow Jones & Co.*,
    651 F.3d 309 (2d Cir. 2011) ................................................................................ 1

*Scott v. Harris*,
  550 U.S. 372 (2007) ........................................................................................................ 10

*TechnoMarine SA v. Jacob Time, Inc.*,
  2013 WL 5231471 (S.D.N.Y. July 16, 2013) ................................................................. 9

*Town & Country Linen Corp. v. Ingenious Designs LLC*,
  2021 WL 4892857 (S.D.N.Y. Oct. 19, 2021) ................................................................. 6

*Town & Country Linen Corp. v. Ingenious Designs LLC*,
  556 F. Supp. 3d 222 (S.D.N.Y. 2021) ........................................................................... 6

*Weinstock v. Columbia Univ.*,
  224 F.3d 33 (2d Cir. 2000) ............................................................................................ 3

*Wright v. Goord*,
  554 F.3d 255 (2d Cir. 2009) .......................................................................................... 1

Plaintiff, Paul Iacovacci, respectfully submits this reply memorandum in further support of his motion for partial summary judgment (Dkt. 294).

## ARGUMENT

In opposing summary judgment, Defendants "must set forth specific facts demonstrating that there is a genuine issue for trial." *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). Defendants cannot defeat summary judgment by resorting to "conclusory statements, conjecture, and inadmissible evidence." *Ridinger v. Dow Jones & Co.*, 651 F.3d 309, 317 (2d Cir. 2011).

## I.   Defendants Cannot Establish Liability on Their Counterclaims

### A.  Breach of Covenant (Second and Third Counterclaims)

Defendants' counterclaims for "breach of covenant" fail because they arise from an employee handbook that expressly *disclaims* the creation of an employment contract. By law, Defendants cannot recover for breach of non-negotiated, unilaterally imposed non-compete and confidentiality provisions in that employee handbook. *See* Mot. at 6-7.

Defendants attempt to overcome this fatal flaw by contending that the handbook somehow imposed contractual obligations *on Iacovacci* but not on Brevet. That is not the law. New York's high court has held that employee handbooks with contract disclaimers are *not* "binding employment agreements" because the "disclaimer prevents the creation of a contract." *Lobosco v. N.Y. Tel. Co./NYNEX*, 751 N.E.2d 462, 462 (N.Y. 2001). Accordingly, where, as here, a contract claim is based on an employee handbook that expressly disclaims creation of an employment contract, the claim should be dismissed. *See, e.g.*, *Leary v. Al-Mubaraki*, 2019 WL 4805849, at *2, 4-5 (S.D.N.Y. Sept. 30, 2019) (applying *Lobosco*).[1]

---

[1] Brevet's citations are inapposite. *See Keystone Fruit Mktg. v. Brownfield*, 2006 WL 1873800, at *9 (E.D. Wash. July 6, 2006) (holding handbook was *not* a contract), *aff'd*, 352 F. App'x 169 (9th Cir. 2009); *Mastercraft Decorators, Inc. v. Orlando*, 356 F. Supp. 3d 259, 269 (W.D.N.Y. 2018) (dismissing contract claim); *Brown v. St. Paul Travelers Cos.*, 331 F. App'x 68, 70 (2d Cir. 2009) (arbitration agreement enforceable where plaintiff was advised of the arbitration

Defendants do not cite any evidence that Iacovacci agreed to be bound by the handbook. The acknowledgement form Iacovacci signed expressly states that it is *not* an employment contract. P-69. Critically absent from Brevet's opposition is any evidence that Iacovacci *agreed to be bound* by the Handbook or any of its provisions. Having failed to create a genuine issue of fact on this gating element of their claim, Brevet cannot defeat summary judgment, and the claim should be dismissed.

### B.     Breach of Duty (Fourth and Fifth Counterclaims)

Monticciolo and Callahan's breach of duty claims are derivative, not direct. *See* Mot. at 7-9. They fail to address this fatal defect and instead argue (at 7) that Iacovacci owed them fiduciary duties under the LLC Agreements. But Defendants' counterclaims allege breaches of duties *to Brevet*, *not Monticciolo and Callahan*: "usurping the corporate opportunities of *Brevet*" "directly competing with *Brevet*" and using *Brevet* documents. *See* Mot. at 8. Tellingly, in their 56.1 Response, Defendants claimed that they were "harmed personally *by the harm to Brevet*." *See* Resp. to P-72. This is a textbook derivative injury.

Callahan and Monticciolo now argue that they were somehow injured *by being sued* in this action and the state-court action. That unpled, unsupported theory cannot be added at this stage and would fail as a matter of law in any event. *See, e.g.*, *Kronenberg v. Katz*, 872 A.2d 568, 609 (Del. Ch. 2004) (granting summary judgment on claim based on being named defendant). Finally, there is no connection *at all* between the alleged breach of duty and this purported harm: Iacovacci's alleged misappropriation did not cause Callahan and Monticciolo to be sued.

---

policy, advised that compliance with it was condition of employment, and had signed separate agreement containing arbitration clause); *Apple Mortg. Corp. v. Barenblatt*, 162 F. Supp. 3d 270, 285 (S.D.N.Y. 2019) (relying on testimony, not handbook); *Miloscia v. B.R. Guest Holdings, LLC*, 942 N.Y.S.2d 484, 486 (N.Y. App. Div. 2012) (employee claim for benefits based on letter agreement); *see also Pryce v. N.Y.C. Transit Auth.*, 2018 WL 6340777, at *3 (N.Y. Sup. Ct. Dec. 5, 2018) (rejecting claim based on handbook).

### C.  Trade Secrets (Sixth, Ninth, and Twelfth Counterclaims)

Brevet's trade secrets claims fail for three independent reasons: (i) Brevet has not identified any trade secret with adequate particularity; (ii) the purported trade secrets Brevet has identified are not protectible; and (iii) Brevet has not shown that Iacovacci actually used any of Brevet's purported trade secrets. *See* Mot. at 10-16.

Brevet's opposition highlights its failure to identify its purported trade secrets with the required specificity.[2] Brevet relies (at 10-11) on the Court's statement at the motion to dismiss stage that Brevet's complaint had identified "the types of documents and information that *can* constitute trade secrets" (emphasis added). But Brevet can no longer rely on pleading-stage allegations. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (unsupported allegations insufficient to avoid summary judgment). And Brevet has not since then identified any actual trade secrets with specificity. Instead, Brevet merely points (at 11) to a laundry list of documents without identifying any actual trade secrets in them. Brevet's 30(b)(6) testimony is no better: Brevet admits (at 13) that this testimony identifies "categories" of trade secrets. Brevet must identify actual, specific trade secrets, not mere "categories." Even Brevet's most concrete efforts fall short: For example, Brevet claims (at 13) that its method of counting vacation days is somehow a trade secret, but *never identifies the method*. Brevet is long past the pleading stage and had a full and fair opportunity to adduce the evidence it needs to survive summary judgment. This level of generality falls far short of what is required to defeat summary judgment on these

---

[2] Attempting to distance itself from its indefensible 30(b)(6) testimony that "anything developed at Brevet is a trade secret" (P-89), Brevet now seeks to rely on a post-discovery affidavit from Mark Callahan. Ex. 114. But that belated and unsupported affidavit is insufficient and cannot substitute for the discovery record evidence on Brevet's purported trade secrets. *Gottlieb v. Cty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (unsupported affidavits do not defeat summary judgment); *Mack v. United States*, 814 F.2d 120, 124 (2d Cir. 1987) (affidavit contradicting prior deposition should be disregarded on motion for summary judgment).

claims. *PaySys Int'l v. Atos Se*, 2016 WL 7116132, at *12 (S.D.N.Y. 2016) (granting summary judgment where plaintiff failed to "carefully delineate precisely what in fact remains secret.").

Moreover, to the extent they are discernible at all, Brevet's purported trade secrets consist of information that is public or generally known. *See* Ex. 25, Librock Report, ¶¶ 20-38; P-100-117. For example, Brevet has alleged that its "Direct Lending Presentation" is a trade secret, but that presentation is a *publicly available document* viewable by the world—a fact that Brevet's opposition entirely ignores. Mot. at 14; P-101; *see Cowan v. City of Mt. Vernon*, 95 F. Supp. 3d 624, 645 (S.D.N.Y. 2015) (claim is abandoned when party opposing summary judgment fails to address argument). Brevet's claim that Iacovacci misappropriated a confidential client list relies (at 14-15) on a document created by a *third party* who was offering to sell it to Iacovacci for $275. *See* Ex. 57; P-93-95.

Brevet's other purported trade secrets fare no better. Brevet has not shown that its trade secrets are secret in the industry, derive value from being secret, or meet the other relevant factors. *See* Mot. at 12-15. Brevet has proffered *no* expert testimony on trade secrets. Brevet argues (at 13) that it was not required to do so and asks the Court to turn a blind eye to the fact that Brevet *refused* to provide evidence of its trade secrets during fact discovery on the express theory that its trade secrets were the subject of expert testimony. P-87-88. Brevet's trade-secret evidence consists principally the unsupported say-so of its 30(b)(6) witness (one of the defendants in this case) and does not come close to satisfying the test for protectible trade secrets. *See* Mot. at 13-14; P-92; *Big Vision Priv. Ltd. v. E.I. DuPont De Nemours & Co*., 1 F. Supp. 3d 224, 259-71 (S.D.N.Y. 2014) (*ipse dixit* testimony of fact witness was not sufficient to sustain trade secrets claim on summary judgment), *aff'd*, 610 F. App'x 69 (2d Cir. 2015).

Further, Brevet also fails to demonstrate that Iacovacci misused any trade secret. *See* Mot. at 16. Indeed, Brevet does not even *try* to show that Iacovacci misused most of its alleged

categories of trade secrets. It identifies no evidence that Iacovacci misused any "methodologies, processes, and strategies pertaining to sourcing, evaluation, diligence, underwriting, structuring, documenting closing, valuing and managing opportunities" (Opp'n at 11). Instead, Brevet refers (at 15) only to purported similarities between certain Brevet documents and certain marketing materials for Iacovacci's new firm. Those documents, however, are the subject of a separate action. *Brevet Holdings v. Enascor*, No. 21-cv-1540 (S.D.N.Y.). To the extent Brevet is now attempting to pursue its claims based on those documents here, it is engaged in impermissible claim-splitting. *See Kanciper v. Suffolk Cty. SPCA, Inc*., 722 F.3d 88, 92 (2d Cir. 2013) (Plaintiffs "generally have no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant"). Moreover, Brevet does not and cannot identify any trade secrets in that handful of documents—indeed, the New York court has held that those documents do not even require filing under seal, and they are *publicly available* to anyone who wants to view them. *See Iacovacci v. Brevet Holdings, LLC*, 159 N.Y.S.3d 674, 675 (N.Y. App. Div. 2022); NYS Dkt. 1203-09, 1249-52, 1291-306.

Finally, Brevet argues (at 8-9) that its unfair competition claim should not be dismissed as duplicative of its other claims. That is not the law. *See* Mot. at 9 (citing cases). In *Data Device Corp. v. W.G. Holt, Inc*., 2020 WL 7024312, at *6 (E.D.N.Y. Nov. 30, 2020), the court dismissed the plaintiff's unfair competition claim as duplicative of its trade secrets and contract claim because they were "based on the same set of facts." That rule applies equally here: Brevet does not identify a single allegation that is unique to its unfair competition claim.[3]

---

[3] Indeed, Brevet's allegations for its unfair competition claim entirely parrot and expressly rely on its other claims. *See* Dkt. 79, Countercls. ¶¶ 60, 99, 101. Brevet cites *Linkco, Inc. v. Fujitsu Ltd*., 230 F. Supp. 2d 492, 501, 503 (S.D.N.Y. 2002), and the cases therein to argue that it can bring an unfair competition claim even without trade secrets, but later cases have held that the language in *Linkco* was dicta and rejected that argument. *Atari, Inc. v. Games, Inc*., 2005 WL 447503, at *3 & n.2 (S.D.N.Y. Feb. 24, 2005), *aff'd*, 164 F. App'x 183 (2d Cir. 2006); *see also*

### D. Tortious Interference (Seventh and Eighth Counterclaims)

Brevet's tortious interference claims fail for three independent reasons. *See* Mot. at 16-19. *First*, Brevet has not met the "high bar" of showing that Iacovacci acted with wrongful means: Brevet relies exclusively on the meritless claims that are the subject of the rest of this motion.

*Second*, Brevet has identified no admissible evidence that Iacovacci's conduct prevented Brevet from entering any transactions it would have otherwise entered. *See Am. Preferred Prescription, Inc. v. Health Mgmt., Inc.*, 678 N.Y.S.2d 1, 5 (N.Y. App. Div. 1998) (summary dismissal of tortious interference claim where "sketchy factual assertions do not demonstrate that plaintiff would have entered into any type of contractual relation with the [third parties] 'but for' defendants' conduct"). Brevet's only cited evidence is self-serving testimony (no documents) that Brevet was purportedly having discussions with potential investors but "believed" those purported discussions stopped because Iacovacci was having parallel discussions. Resp. to P-76 (citing Ex. 6 at 35:13-37:9). Brevet had no prior course of dealing with any of the counterparties Iacovacci supposedly diverted. P-75-76, P-78. And Brevet did not even seek evidence from those potential investors. *Cf. Faldetta v. Lockheed Martin Corp.*, 2000 WL 1682759, at *11 (S.D.N.Y. Nov. 9, 2000) (granting summary judgment where plaintiff's claim relied on conjecture). Once again, we are long past the stage of the case where Brevet can rely on unsupported, self-serving allegations to keep its claims alive.

*Finally*, Brevet's claims fail because tortious interference with business relations and tortious interference with prospective economic advantage are not distinct causes of action. Mot. at 16-17. Defendants now try (at 16) to rewrite their pleading, claiming that despite the

---

*Town & Country Linen Corp. v. Ingenious Designs LLC*, 556 F. Supp. 3d 222, 291 (S.D.N.Y. 2021), *reconsideration denied*, 2021 WL 4892857 (S.D.N.Y. Oct. 19, 2021).

"nomenclature" of their counterclaim, Defendants "did not intend to plead" an interference with

business relations claim. They now ask the Court to convert that claim into one for tortious

interference with contract. But Brevet "may not amend its pleadings in its briefing papers." *Enzo*

*Biochem, Inc. v. Amersham PLC*, 981 F. Supp. 2d 217, 223 (S.D.N.Y. 2013); *see also In re*

*Residential Cap., LLC*, 2012 WL 5386151, at *3 (Bankr. S.D.N.Y. Nov. 1, 2012) (plaintiff could

not add claims in summary judgment papers that were not in complaint: "Simply put, this is

improper"). Moreover, Defendants' attempt (at 17) to rely on new accusations of purported

interference with an employment contract of Brevet consultant Samuel Schuster is contrary to

Defendants' pleading, which was expressly based on a "business relationship between BCM and

each of its *clients or investors*"—not employees. *See* Dkt. 79 ¶ 109 (emphasis added). And

Brevet did *not* identify any purported employment contract with Samuel Schuster in response to

Iacovacci's interrogatory specifically calling for "every business and prospective business

relationship" in which he allegedly interfered. Ex. 126 at 16; *see Haas v. Delaware & Hudson*

*Ry. Co.*, 282 F. App'x 84, 85 (2d Cir. 2008) (affirming preclusion of affidavit that, among other

things, included material not contained in interrogatory responses).[4] In any event, Schuster's

"employment contract" (P-158) cannot support a valid tortious interference claim: Brevet's

allegation is based on Iacovacci's alleged interference in 2016 (Ex. 114 ¶ 7), and Schuster was

not employed by Brevet after 2013. Ex. 13, Schuster Dep. 7:6-19.

## II.  Defendants Have Not Shown Any Damage Caused by Iacovacci

Defendants have not offered *any* admissible evidence of legally cognizable damages—an

independent basis for summary judgment here. *See* Mot. at 19-22. Defendants ignore controlling

authority that lost profits must be "demonstrated with certainty." *Id.* (collecting cases). Instead,

---

[4] *See also* Ex. 203 ¶ 7 (the Parties may use any materials produced in state-court action "for the purpose of litigating" this action, "as though they had been produced in this action").

they make a strawman argument (at 19-20) that they need only show that their claimed lost profits are not "unduly speculative." But Defendants have failed to meet even that standard.

Brevet relies (at 20) on its 30(b)(6) testimony regarding lost profits. But its 30(b)(6) witness could not identify *a single* Brevet investor that Iacovacci diverted from Brevet, speculatively identifying only a handful of *potential* investors or transactions—some of which Brevet had previously *rejected*. P-73, P-75–76, P-78–79, P-82. Moreover, the 30(b)(6) witness could provide *no information* about the size of the purported potential investments, stating that for one, the size of the investment could have been between "25 to hundreds of millions of dollars." P-77; Ex. 6 at 15:8-18, 30:9-22. Having proffered no damages expert, Brevet relies (at 20) on a "Damages Summary" that is inadmissible for multiple reasons, including that it was produced after the close of fact discovery, contains hearsay, and consists of mere speculation. Ex. 54; *cf. New York ex rel. Spitzer v. St. Francis Hosp.*, 94 F. Supp. 2d 423, 428 (S.D.N.Y. 2000) (striking inadmissible evidence in summary judgment declaration).

Brevet cites (at 21) this Court's opinion in *Pacific Controls v. Cummins*, 2021 WL 446725 (S.D.N.Y. 2021), for the proposition that the Court may not "weigh the evidence" because Brevet has produced "ample evidence regarding its damages." But *Cummins* highlights the deficiency in Brevet's purported evidence. There, the plaintiff relied on contemporaneous internal projections to establish future lost profits. *Id.* at 9. Here, Brevet relies on eleven pages of vague and speculative 30(b)(6) testimony, an inadmissible "Damages Summary," and two affidavits that do not support substantiate Brevet's purported damages. *See* Resp. to P-70.

Brevet's other damages arguments likewise fail. Brevet relies on the "limited exception" to the general rule that a plaintiff cannot recover reputational damages for breach of contract because it claims (at 21) that it has "specific business opportunities lost as a result of its diminished reputation"—but Brevet has not identified any opportunities that it actually lost

because of Iacovacci's conduct. *See* Mot. at 18; *AmTrust N. Am., Inc. v. KF&B, Inc.,* 2020 WL 5503479, at *2 (S.D.N.Y. Sept. 11, 2020) (dismissing claims for reputational damages on summary judgment); *TechnoMarine SA v. Jacob Time, Inc.*, 2013 WL 5231471, at *6-7 (S.D.N.Y. July 16, 2013) (granting summary judgment on claim for reputational damages from tortious interference where "plaintiff offered no documentary evidence beyond [witness's] conclusory statement"). Brevet offers no authority that it may recover development costs of its purported trade secrets and no evidence that any proprietary information has diminished in value, much less become entirely worthless. P-100.

Grasping at straws, Brevet contends that even absent proof of actual damages, it can recover nominal damages or injunctive relief. But Brevet has not pled a claim for nominal damages and has not come close to showing any of the prerequisites for injunctive relief. *See Fox v. Bd. of Trs. of SUNY*, 42 F.3d 135, 138 (2d Cir. 1994) (fallback nominal-damages argument did not save claim where complaint contained "absolutely no specific mention" of "nominal damages"); *Marshall v. Switzer*, 900 F. Supp. 604, 615 (N.D.N.Y. 1995) (granting summary judgment on claim for injunctive relief where plaintiff showed no real or immediate threat of future injury).

## III. Brevet's Twenty-Third Affirmative Defense Fails

No legal or factual basis exists for Brevet's twenty-third affirmative defense that Iacovacci' s allegations "arise out of Brevet's regulatory compliance obligation to monitor certain communications and correspondence." Mot. at 22-24.

Brevet does not dispute (and thus concedes) that its twenty-third affirmative defense is not an affirmative defense under Rule 8. *See* Mot. at 22 (undisputed in opposition). Instead, Brevet contends (at 22-23) that Iacovacci's argument is based on "formalistic labels." Not so. As Rule 8 makes clear, "affirmative defense" is not just a formalistic label—it describes a defense

9

that, unlike others, defeats a claim even if all the allegations in the complaint are true. Brevet's twenty-third affirmative defense is not an affirmative defense, and the court should strike it. *See Erickson Beamon Ltd. v. CMG Worldwide, Inc.*, 2014 WL 3950897, at *5 (S.D.N.Y. Aug. 13, 2014) (striking defense where "no question of law" would "allow this defense to succeed, and inclusion of a defense that must fail as a matter of law prejudices the plaintiff because it will needlessly increase the duration and expense of litigation").

Brevet also attempts (at 24-25) to defeat summary judgment by pointing to Defendant Callahan's statement that Brevet hacked the computer "to try to comply with its regulatory record-keeping requirements." That statement does not create genuine dispute of material fact. Brevet's consultant Chief Compliance Officer at the time of the hacking did *not* authorize or even know that Defendants hacked into Iacovacci's home computer, external hard drives, LogMeIn account, or Yahoo! email account, nor did any other compliance personnel. P-34-43. Brevet's expert purports to rely on CFR 275.206(4)-7 (*see* Ex. 140 at 8)—which requires that the Chief Compliance Officer be responsible for administering a regulated entity's compliance policies and procedures. Brevet's new assertion (at 25) that its senior management are "compliance personnel" is contrary to the record and insufficient to defeat summary judgment. *See* Ex. 202 at -955, -956; *Scott v. Harris*, 550 U.S. 372, 380 (2007) (in adjudicating summary judgment, court should not adopt version of facts that "is blatantly contradicted by the record, so that no reasonable jury could believe it").

**CONCLUSION**

For these reasons and those in Plaintiff's opening brief, Plaintiff respectfully requests that the Court grant his motion for partial summary judgment (Dkt. 294).

Dated: June 29, 2022

                                             Respectfully submitted,

                                             /s/ Jason Cyrulnik
                                             Jason Cyrulnik
                                             Paul Fattaruso
                                             Ian M. Dumain
                                             Adina Levine
                                             Mary Kate George
                                             CYRULNIK FATTARUSO LLP
                                             55 Broadway, Third Floor
                                             New York, NY 10006
                                             646 844 2466

                                             *Counsel for Plaintiff, Paul Iacovacci*